## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

IN RE CESSNA 208 SERIES AIRCRAFT    )
PRODUCTS LIABILITY LITIGATION    )
    )    MDL No. 1721
(This Document Relates to All Cases.)    )
    )    Case No. 05-md-1721-KHV-DJW
    )

## <u>PRETRIAL ORDER ON MDL ISSUES</u>

Pursuant to Fed. R. Civ. P. 16(e), a pretrial conference was held in this case on January 21, 2009, before David J. Waxse, U.S. Magistrate Judge.

This pretrial order shall supersede all pleadings and control the subsequent course of this case. It shall not be modified except at the discretion of the transferor courts, by consent of the parties and the court's approval, or by order of the court to prevent manifest injustice. *See* Fed. R. Civ. P. 16(d); D. Kan. Rule 16.2(c).

1.    **APPEARANCES.**

The plaintiffs appeared at the pretrial conference through liaison counsel, Jerome Skinner, and counsel Robert Bodoin, Molly O'Brien and Tom Routh, appearing in person, and through counsel Michael Verna and Scott Gunderson, appearing by telephone. Plaintiff Brown County Financial Services, L.L.C., appeared through counsel Don Swaim, appearing by telephone. The defendant, Cessna Aircraft Co., appeared through liaison counsel, John Nettels and Heather Woodson, and counsel Don Rushing, appearing in person. The defendant, Goodrich Corporation, appeared through counsel Paul Moran, appearing in person, and liaison counsel Craig Meadows and counsel John Sams and Jarod Goff, appearing by telephone.

2.      **NATURE OF THE CASE.**

This multidistrict litigation includes 19 cases involving claims of personal injury,

wrongful death and property damage arising out of seven different accidents involving

Cessna 208B Caravan Aircraft.  The cases involved are:

| Case Name | Individual Case Number | Transferor Court | Date Transferred to MDL | Accident Involved |
|---|---|---|---|---|
| *Ingram, et al., v. Cessna Aircraft Co., et al.* ("*Ingram*") | 05-CV-2531-KHV (D. Kan.) | D. Idaho | 12/7/05 | Bellevue, Idaho; 12/6/04 |
| *Villanueva, et al., v. Cessna Aircraft Co., et al.* ("*Villanueva*") | 05-CV-2534-KHV (D. Kan.) | D. Utah | 12/7/05 | Bellevue, Idaho; 12/6/04 |
| *Morris, et al., v. Cessna Aircraft Co., et al.* ("*Morris*") | 05-CV-2533-KHV (D. Kan.) | N.D. Tex. | 12/7/05 | San Angelo, Texas; 1/24/03 |
| *Fry, et al., v. Cessna Aircraft Co., et al.* ("*Silvey*") | 06-CV-2261-KHV (D. Kan.) | N.D. Tex. | 6/14/06 | Parks, Utah; 11/8/02 |
| *Mountain Bird Inc. v. Goodrich Corporation, et al.* ("*Mountain Bird*")<br><br>*Mountain Bird* was dismissed by the MDL Court on summary judgment.  The appeal is now pending in the Tenth Circuit. | 06-CV-2365-KHV (D. Kan.) | D. Idaho | 9/6/06 | Bellevue, Idaho; 12/6/04 |
| *Allan, et al., v. Cessna Aircraft Co., et al.* ("*Allan*") | 07-CV-2120-KHV (D. Kan.) | S.D.N.Y. | 2/7/07 | Winnipeg, Canada; 10/06/05 |
| *Konovalova, et al,. v. Cessna Aircraft Co., et al.,* ("*Konovalova-KS*") | 07-CV-1363-KHV (D. Kan.) | D. Kan. | 12/3/07 | Moscow, Russia; 10/19/05 |

| Case Name | Individual Case Number | Transferor Court | Date Transferred to MDL | Accident Involved |
|---|---|---|---|---|
| *Konovalova, et al., v. Cessna Aircraft Co., et al.,* (*"Konovalova-NY"*) | 07-CV-10389-SAS (S.D.N.Y.) | S.D.N.Y. | 6/4/08 | Moscow, Russia; 10/19/05 |
| *Smith, et al., v. Cessna Aircraft Co., et al.* (*"Smith"*) | 08-CV-2274-KHV (D. Kan.) | D. Wash. | 6/9/08 | Naches, Washington; 10/7/07 |
| *Jones, et al., v. Cessna Aircraft Co., et al.* (*"Jones"*) | 08-CV-2273-KHV (D. Kan.) | D. Wash. | 6/9/08 | Naches, Washington; 10/7/07 |
| *Rasberry, et al., v. Cessna Aircraft Co., et al.* (*"Rasberry"*) | 08-CV-2275-KHV (D. Kan.) | D. Wash. | 6/9/08 | Naches, Washington; 10/7/07 |
| *Craig, et al., v. Cessna Aircraft Co., et al.* (*"Craig"*) | C08-72RAJ (D. Wash.) | D. Wash. | 6/9/08 | Naches, Washington; 10/7/07 |
| *Elsner, et al., v. Cessna Aircraft Co., et al.* (*"Elsner"*) | C08-135RAJ (D. Wash.) | D. Wash. | 6/9/08 | Naches, Washington; 10/7/07 |
| *P'yanina, et al., v. Cessna Aircraft Co., et al.* (*"P'yanina-NY"*) | 08-CV-2304-KHV (D. Kan.) | S.D.N.Y. | 6/9/08 | Moscow, Russia; 10/19/05 |
| *Atkin, et al., v. Cessna Aircraft Co., et al.* (*"Atkin"*) | C08-355RAJ (D. Wash.) | D. Wash. | 6/23/08 | Naches, Washington; 10/7/07 |
| *Barker, et al., v. Cessna Aircraft Co., et al.* (*"Barker"*) | C08-344RAJ (D. Wash.) | D. Wash. | 6/23/08 | Naches, Washington; 10/7/07 |
| *Schuetze, et al., v. Cessna Aircraft Co., et al.* (*"Schuetze"*) | C08-330RAJ (D. Wash.) | D. Wash. | 6/23/08 | Naches, Washington; 10/7/07 |
| *Abdo, et al., v. Cessna Aircraft Co., et al.* (*"Abdo"*) | C08-390RAJ (D. | D. Wash. | 6/23/08 | Naches, Washington; |

| Case Name | Individual Case Number | Transferor Court | Date Transferred to MDL | Accident Involved |
|---|---|---|---|---|
| | Wash.) | | | 10/7/07 |
| *P'yanina, et al., v. Cessna Aircraft Co., et al.* ("*P'yanina-KS*") | 07-CV-1367-KHV (D. Kan.) | D. Kan. | 7/9/08 | Moscow, Russia; 10/19/05 |

The Washington cases (*Smith*, *Jones*, *Rasberry*, *Craig*, *Elsner*, *Atkin*, *Barker*, *Schuetze* and *Abdo*) were consolidated as *Jones* before transfer to the MDL. They will be referred to collectively as the "Washington cases" below.

An additional case, *O'Brien, et al., v. Cessna Aircraft Company, et al.*, was filed in state court in Nebraska on January 23, 2009, and removed to the United States District Court for the District of Nebraska on January 28, 2009. Case No. 8:09-cv-00040-JFB-TDT. Cessna filed a Notice of Potential Tagalong with the JPML on February 4, 2009. The JPML has not yet entered a conditional or final transfer order and this case is not pending in the MDL at this time.[1]

## 3.    PRELIMINARY MATTERS.

a.    **Subject Matter Jurisdiction.**  In all the cases except *Silvey,* subject matter jurisdiction is invoked under 28 U.S.C. § 1332, and is not disputed.

In *Silvey,* subject matter jurisdiction is invoked under 28 U.S.C. § 1442 and is not disputed.

b.    **Personal Jurisdiction.**  There is no dispute as to personal jurisdiction.

---

[1] This *O'Brien* case is the second case involving the same plaintiffs, Cessna and Goodrich. The first case, *O'Brien, et al., v. Cessna Aircraft Company, et al.*, was filed in state court in Nebraska and removed to the United States District Court for the District of Nebraska on December 5, 2008. Case No. 8:08 Civ. 525. After the JPML entered its conditional transfer order and the plaintiffs filed objections to that order, the *O'Brien* plaintiffs moved to dismiss the case voluntarily. The District of Nebraska granted the motion and dismissed the case without prejudice on January 21, 2009.

4

     **c.**    **Venue.**  The parties stipulate that venue properly rests with the transferor courts.

     **d.**    **Governing Law.**  The parties have been unable to stipulate to the law that governs the substantive issues in each of the individual cases.

**4.**    **STIPULATIONS.**

     **a.**    The following facts are uncontroverted:

          **i.**    The Cessna 208B aircraft involved in each accident was designed, tested, manufactured, marketed and sold by the defendant Cessna Aircraft Company.

     **b.**    Because the cases in the MDL will be remanded to their transferor courts for the remaining individual case discovery, pretrial proceedings and trial, the parties have agreed not to make any stipulations concerning the business records foundation of documents until after remand.

     **c.**    Copies of exhibits may be used during trial in lieu of originals.

     **d.**    Because the cases in the MDL will be remanded to their transferor courts for the remaining individual case discovery, pretrial proceedings and trial, the parties have agreed not to make any stipulations concerning the admission of trial exhibits until after remand.

     **e.**    Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, the parties will not make any stipulations about subpoenas on employee witnesses at this time.  Such stipulations may be considered for each individual case after it is remanded.

**f.**     Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, the parties will not make any stipulations about disclosing upcoming witnesses at this time.  Such stipulations may be considered for each individual case after it is remanded.

## 5.     FACTUAL CONTENTIONS.

The Court has determined that each party's contentions are satisfactory at this stage of the MDL litigation.

### a.     Plaintiffs' and Brown County's Contentions.

Plaintiffs have not agreed to list factual contentions in the individual cases and disagree with defendant's lists both procedurally and substantively.  Discovery in the individual cases is very limited and in some cases has not occurred apart from preliminary paper discovery.  Plaintiffs believe that these individual case issues are outside the scope of these MDL proceedings, premature and should be addressed by each of the Transferor Courts after remand.  Finally, Plaintiffs dispute and disagree with most of the contentions listed by the Defendants as matters of substantive fact and evidence. Plaintiffs will be able to list contentions in the individual actions after discovery is completed in each Transferor Court.

**i.**     The Cessna 208B aircraft, its various components and manuals are dangerous and defective when used for their intended purpose in known icing conditions.

**ii.**     The pneumatic deicing system as manufactured by defendant Goodrich Corporation is dangerous and defective when used for its intended purpose.

iii.    The defendants Cessna Aircraft Company and Goodrich Corporation
were negligent in the design, redesign, diagnosing, testing, certification,
manufacture and technical support of the Cessna 208B aircraft and its
pneumatic deicing system respectively.

iv.    The defendants Cessna Aircraft Company and Goodrich Corporation
failed to disclose, misrepresented, withheld and/or otherwise concealed
known defects and safety issues relating to the Cessna 208B aircraft.

v.    Cessna misrepresented, withheld and/or otherwise concealed
material facts concerning the condition, qualities and characteristics of the
208B model aircraft, and Cessna concealed vital information from plaintiffs
and the public at large that would have revealed the dangerous
susceptibility of the 208B aircraft to loss and control after encountering
icing conditions.  Cessna made such misrepresentations with the intent that
owners and operators of the 208B would rely upon them and those owners
and operators did rely upon them, which caused plaintiffs' injuries and/or
damages.  Such conduct constitutes common-law fraud, fraudulent
misrepresentation and/or negligent misrepresentation which caused
plaintiffs' damages.

vi.    Defendant Cessna Aircraft Company's conduct from 1984 to the
present constituted fraud.

vii.    Defendant Cessna Aircraft Company's conduct from 1984 to the
present was wanton, willful, reckless and in total disregard for the lives and
safety of plaintiffs' decedents thereby constituting punitive conduct.

viii.    Cessna Aircraft Company failed to meet the standards of a
reasonable aircraft manufacturer in testing, certifying, manufacturing and
providing technical support to the owners and operators of Cessna 208B
aircraft.

ix.    Goodrich Corporation failed to meet the standards of a reasonable
aircraft component manufacturer in the design, testing, certification,
manufacture and technical support of the pneumatic deicing system
incorporated into the Cessna 208B aircraft.

x.    The Aircraft Flight Manual, Pilot Operating Handbook, other
instruction manuals and documents published by defendant Cessna Aircraft
Company are dangerous and defective for their intended purpose and

7

negligently failed to disclose the risks of operating the Cessna 208B aircraft in icing conditions.

**xi.**     The certification of the Cessna 208B aircraft pursuant to Federal Aviation Regulations and by virtue of Delegated Option Authorization was fraudulently obtained, involved misrepresentations of fact and law and violated Federal Aviation Regulations.

**xii.**     The Cessna 208B aircraft is not airworthy by virtue of violations of Federal Aviation Regulations, violation of its own certification basis and the failure of the defendant Cessna Aircraft Company to disclose serious safety defects in the aircraft.

**xiii.**     As a designer, manufacturer, marketer, supplier and/or seller of the aircraft, Cessna owed a duty of reasonable care to users of the aircraft and other persons whom Cessna should have known to be in danger by the aircraft's probable use.  The defects and unusually dangerous condition of the aircraft were a producing cause of the damages sustained by all the plaintiffs for which Cessna is strictly liable.  Cessna designed, manufactured, supplied and or sold the Cessna 208B model aircraft, including without limitation its various components and manuals, in a condition and for uses that were contrary to the condition in which the aircraft was advertised, marketed and sold and for which the aircraft was suitable for use.  Cessna breached express and implied warranties to plaintiffs and such breaches were a producing cause of the injuries to all of the plaintiffs which Cessna is liable.

**xiv.**     The defendant Cessna Aircraft Company is liable for negligence per se for the knowing and deliberate violation of Federal Aviation Regulations.

**xv.**     At all times relevant to this lawsuit, Goodrich designed, manufactured, marketed, supplied and/or sold the deicing system used in the 208B aircraft.  As a designer, manufacturer, marketer, supplier and/or seller of the pneumatic deicing system, Goodrich owed a duty of reasonable care to users of the deicing system and other persons whom Goodrich should have known to be endangered by the deicing system's probable use.  Goodrich, through its agents, servants and/or representatives, was negligent and negligent *per se* in, among other things, failing to properly design, redesign, install, diagnose, repair, maintain and/or manufacture the deicing system, and/or in failing to warn of defects and/or dangerous propensities of the deicing system.  The negligent acts and/or omissions of Goodrich,

8

through its agents, servants and/or representatives, were a proximate cause of the accidents involved in this litigation and the subsequent injuries and wrongful deaths of plaintiffs and plaintiffs' decedents for which Goodrich is liable.

**xvi.**    Additionally and/or alternatively, at all times relevant to this lawsuit, Goodrich designed, manufactured, marketed, supplied and/or sold the deicing system used in the 208B aircraft in a manner which rendered the aircraft and its deicing system defective and unreasonably dangerous and not fit for their intended and reasonable foreseeable purposes.  The defects and unreasonable condition of the aircraft and its deicing system were a producing cause of the accidents involved in this litigation and the subsequent injuries and wrongful deaths of plaintiffs and plaintiffs' decedents for which Goodrich is strictly liable.

**xvii.**    Additionally and/or alternatively, at all times relevant to this lawsuit, Goodrich designed, manufactured, supplied and/or sold the deicing system used in the 208B aircraft, including without limitation its various components and manuals, in a condition and for uses that were contrary to the condition in which the deicing system used in the aircraft was advertised, marketed and sold and for which the deicing system used in the aircraft was suitable for use.  Goodrich breached express and implied warranties to plaintiffs, and such breaches were a producing cause of the accidents involved in this litigation and the subsequent injuries and wrongful deaths of plaintiffs and plaintiffs' decedents for which Goodrich is liable.

**xviii.**    Additionally and/or alternatively, at all times relevant to this lawsuit, Goodrich has been aware of the problems associated with Cessna Caravan icing crashes but has failed to take the appropriate action to disclose its knowledge to pilots, regulatory officials and to the public.  Goodrich has, in concert with Cessna, misrepresented and/or attempted to conceal the true nature and severity of Caravan icing dangers, including the unusual propensity of the Caravan to accumulate ice in flight and crash.  Goodrich has, in concert with Cessna, misrepresented and/or failed to disclose that its deicing system and the procedures recommended and taught by Cessna and FlightSafety may not be appropriate and may be inadequate when a Caravan accumulates ice in flight.  Goodrich made such misrepresentations and/or nondisclosures with the intent that plaintiffs rely on them and plaintiffs did rely on them, which cause plaintiffs' injuries and/or damages.  Such conduct constitutes common-law fraud, fraudulent misrepresentation

9

and/or negligent misrepresentation, which caused plaintiffs' damages for which Goodrich is liable.

**xix.**     The conduct of the defendants as set forth above was a probable cause of the accidents which resulted in the death and injury claims brought by the plaintiffs.

**xx.**     The conduct of defendants caused each of the plaintiffs and plaintiffs' decedents to suffer compensatory and non-compensatory damages which have been pled individually.

**b.     Defendant Cessna's Contentions.**

Although some case-specific discovery has been done, discovery is not complete in any of the individual cases.  Cessna has set forth its contentions as known at this point in discovery, but reserves the right to add to or modify the contentions in the individual cases in the transferor courts after remand.

***Villanueva, Ingram* and *Mountain Bird***

1.     Pilot Fred Villanueva ("Villanueva") crashed a Cessna 208B Caravan aircraft (Part 135 commercial cargo flight) on December 6, 2004, about seven miles south of Bellevue, Idaho, at approximately 10:20 a.m.

2.     Villanueva and one passenger, Ray Ingram ("Ingram"), were killed in the crash and the aircraft was destroyed.  Both were employees of Salmon Air.

3.     Ingram, a fully qualified pilot himself, was returning to his home in nearby Salmon, Idaho.

4.     The aircraft was owned by Salmon Air, leased by Mountain Bird and was operating as a cargo carrier under contract with United Parcel Service at the time of the crash.

5.     The aircraft bore airframe serial number 208B0866 and was designed and manufactured under Type Certificate A37CE pursuant to the authority of the Federal Aviation Administration.

6.     The flight originated from Salt Lake City, Utah, about one hour and fifteen minutes prior to the accident and was destined for Friedman Memorial (SUN), Hailey, Idaho.

7.     The aircraft was approximately nine miles short of the runway at SUN at the time of the accident.

8.     Pilot Villanueva was heading in the wrong direction just before the crash.

9.     Pilot Villanueva failed to maintain adequate air speed, lost control and caused the aircraft to crash.

10.     Pilot Villanueva exceeded the recommended weight for flight into known icing conditions.

11.     Pilot Villanueva failed to follow his employer's guidelines for flight into known icing conditions on the day of the accident.

12.     The sole cause of the crash was Pilot Villanueva's negligence.

13.     The NTSB reported the probable cause of the accident was Pilot Villanueva's failure to maintain aircraft control while on approach for landing in icing conditions.

14.     The NTSB also reported that the Pilot's inadequate airspeed was a factor.

15.     Pilot Villanueva was very inexperienced in this aircraft, had never encountered severe weather conditions while flying it before, and was likely not even aware of the aircraft's deicing boots and equipment.

16.     Plaintiff Mountain Bird failed to properly train and supervise Villanueva.

17.     Cessna denies that it was responsible in any way for the accident or Plaintiffs' injuries.

18.     Cessna developed, designed, tested and manufactured a safe aircraft.

19.     The aircraft, including its deicing components, was designed, tested and manufactured in accordance with the technical knowledge and established scientific literature existing at the time of manufacture.

20.     The aircraft met or exceeded all government standards.

21.     The aircraft, including its deicing system, is neither defective nor unreasonably dangerous.

11

22.     The aircraft was carefully designed, tested and manufactured by Cessna.

23.     The aircraft was properly certified by the FAA for flight into known icing conditions through normal procedures after extensive analysis and flight tests.

24.     The aircraft's Pilot Operating Handbook contained sufficient instructions and warnings relating to the operation of the aircraft in icing conditions.

25.     Cessna denies that it breached any express or implied warranties.

26.     Cessna denies that it made any statements that were fraudulent in any way.

27.     Mountain Bird's claims are barred by Idaho's economic loss doctrine.

*Morris*

1.     The accident which is the subject of this lawsuit occurred on January 24, 2003, near Ducote Airpark in Texas.  The C208B aircraft, serial number 044, registration N544FE (the 'Aircraft') was owned by Federal Express; and was being operated by John Morris and Stephen Fleck for purposes of Fleck giving Morris a company line check flight.  Morris was in the left pilot seat and Fleck was in the right pilot seat.  There were no passengers on board.  The flight originated at Mathis Field in San Angelo and flew for approximately 1.5 hours before crashing.  The crew flew in the immediate vicinity of Mathis Field and did not report encountering icing conditions at any time.

About 10 minutes before the crash, the aircraft flew an approach to the airport, descended to below 25 feet above the runway, and slowed to about 65 knots indicated airspeed.  It then accelerated, climbed to about 1700 feet above the ground and then the crew flew it to the Ducote Airpark.  The approach to Mathis field and the flight to Ducote Airpark was conducted in clear air, clear of all clouds or visible moisture.  Neither Morris or Fleck reported encountering icing conditions or accumulating any ice on the aircraft during this period of the flight.

The crew attempted a simulated engine failure on approach to the Ducote Airpark, as part of the line check ride for Morris.  The aircraft was seen by witnesses to be descending below 200-300 feet as it approached the Ducote runway, at which time it was seen to roll first to the left and then to the right, then back to the left before it struck the ground.  FAA and NTSB investigators determined that the left wingtip of the Aircraft had dragged through a plowed field for over 200 feet, before the aircraft struck a berm, a fence line and a power line.  At this point, the aircraft was in a nearly 90 degree 'knife-edge' attitude.  No other part of the aircraft made contact with the plowed field.  Upon impacting the berm, the fence and power line, the aircraft cart-wheeled on its nose and ended up on its back in the adjacent field.  Both Morris and Fleck were injured.

12

2.    Aircraft icing played no role in the causation of this accident; the accident was caused solely by the combined negligence of Morris and Fleck.

3.    Morris and/or Fleck were negligent in that they lost control of the aircraft and caused it to crash.  In particular, they were negligent in the following:

a.    They attempted a simulated engine failure maneuver at an altitude too low to permit safe recovery before ground impact.

b.    They failed to properly coordinate control of the aircraft and the engine to assure that the maneuver would be safely terminated before impact with the ground.

c.    They failed to take proper steps to recover from the simulated engine failure before the aircraft impacted the ground.

d.    As the check pilot, Fleck failed to properly monitor Morris' actions in negligently performing the simulated engine failure emergency procedure and allowed Morris to crash the airplane.

e.    Morris and/or Fleck lost control of the aircraft and crashed it.

4.    Morris and Fleck were engaged in a joint venture or joint enterprise, and as such the negligence of each of them will be imputed to the other.

5.    The Aircraft and its components, specifically its de-icing systems, were properly and safely designed, manufactured and sold in all respects by Cessna.  The Aircraft was not defective in any respect, and it was not negligently designed, manufactured or sold by Cessna.  The accident was not caused by any defective or deficient conditions of the aircraft.  Cessna denies that it is liable for the accident.

a.    The Aircraft de-icing system was not defective, and did not cause the accident or plaintiffs' damages.

b.    The instructions and warnings which accompanied the aircraft were not defective, and did not cause the accident or plaintiffs' damages

6.    The Aircraft complied with and met all terms and conditions of the express warranty which accompanied sale of the Aircraft, at the time the Aircraft was sold and delivered to Morris and Fleck's employer Federal Express.  Cessna did not breach any term or condition of any express warranty which was applicable to the Aircraft.

13

7.     The Aircraft was at all times merchantable and was fit for its intended purpose.  Cessna did not breach any implied warranty which may have been applicable to the Aircraft.

8.     The Aircraft was properly certificated by the FAA under Type Certificate A37CE, in accordance with FARs.  The aircraft complied with all applicable federal certification and airworthiness requirements at the time it was sold and delivered to FedEx.

    a.     The Aircraft was qualified for FAA certification under Cessna's Delegated Option Authority ("DOA").

    b.     All testing and representations made to the FAA under Cessna's DOA were made in compliance with applicable FARs, and were accurate, correct and true.

    c.     The Aircraft met all applicable federal aviation safety standards and specifications at the time of its certification by the FAA, and at the time of its sale and delivery to FedEx.

    d.     The FAA certificated the Aircraft, including certification for flight into known icing conditions.  As such, the Aircraft was determined to be safe for use by the public in the national airspace system.

9.     Cessna denies that it fraudulently reported or represented testing results to the FAA in order to obtain type certification of the 208B aircraft, and in fact correctly conducted all testing and inspection of the design and manufacture of the 208B aircraft, and accurately and truthfully reported same to the FAA.  However, under any circumstances, plaintiffs do not have standing to bring a claim against Cessna for alleged fraud on the FAA.  A claim of fraud on the FAA is reserved solely to the federal government.

10.     Cessna did not make any false representation of fact to plaintiffs, FedEx, or to any other person as regards the Aircraft or its safe operation, including specifically the Aircraft's capabilities to operate into known icing conditions.

11.     The standards of care to be applied to determine whether or not the design of the aircraft and its components are negligent or defective are reserved exclusively to the federal government, and particularly to the FAA which is charged with regulation of all aspects of aviation safety.  As such any comparable state law standards of care are preempted and may not be applied to plaintiffs' claims in this case.

14

12.     As type certificated by the FAA, the Aircraft design was determined to have complied with the mandatory safety standards and regulations applicable to aircraft, as adopted and promulgated by the FAA.

13.     As type certificated by the FAA, and pursuant to the airworthiness certificate issued to the aircraft by the FAA, the Aircraft was determined to have satisfied the requirements for and to have received pre-market approval by the FAA.

14.     The sole causes of the accident and plaintiffs' damages are the combined negligence, and comparative fault of Morris and Fleck.

15.     No conduct or action on the part of Cessna in any way caused the accident and Cessna is not liable for plaintiffs' damages.

### Silvey

1.     The accident which is the subject of this lawsuit occurred on November 8, 2002, when Cessna 208B, s/n 971, registration N514DB (the"Aircraft") crashed near Parks, AZ killing Wade Silvey and three other occupants.  Silvey was the corporate pilot and sole employee of Brown County Financial Services ("BCFS"), the titled owner of the aircraft.  Silvey was the designated pilot in command for the flight, pursuant to FAA Regulations (FARs), and as such was responsible for overall safe operation of the flight. Another of the occupants, Robert Fry (who was the manager of BCFS) was seated in the left pilot seat, (sometimes referred to as the 'command' pilot seat), and was also operating the aircraft as a pilot.  Silvey was in the right pilot seat, but also had responsibility for flying the aircraft.  The aircraft crashed because Silvey, and/or Fry while under Silvey's supervision, failed to maintain control of the aircraft, and caused it to plunge out of control from 15,000 feet to its impact with the ground.

2.     Silvey failed to properly plan and safely execute the flight, and his negligence was a proximate cause of the accident.  In particular, Silvey:

a.     Planned the flight into forecast instrument flight (IFR) and icing conditions, when an alternate route was available which avoided such conditions

b.     Failed to properly configure the aircraft for flight into icing conditions.

c.     Placed Fry in the left pilot seat and permitted Fry to fly the aircraft, even though Fry was not qualified to fly in IFR conditions, and had no experience flying in icing conditions.  Also, the de-icing equipment controls are located on the left side of the aircraft where Silvey could not reach to activate them.

      d.     Conducted flight training of Fry at critical times in the flight.

      e.     Continued to fly and further climb into icing conditions after encountering some ice.

      f.     Continuously used the autopilot to fly the aircraft, even after reporting that he had encountered some light icing conditions.

      g.     Allowed the airspeed to decrease below recommended and mandatory minimums during the final eight minutes of the flight.

      h.     Failed to take reasonable and available alternative action to maintain mandatory minimum safe flying airspeed prior to the final loss of control.

      i.     Allowed the aircraft airspeed to decrease to the point where he lost control of the aircraft and it began an uncontrolled descent from 15,000 feet. Silvey also failed to regain control of the aircraft before impact with the ground.

3.     Silvey and BCFS illegally operated the aircraft on this flight as transportation for compensation or hire, as those terms are defined by the FAR's. The regulations were violated in several respects, and this conduct proximately caused the accident:

      a.     BCFS failed to obtain the required certificate for operation in air commerce.

      b.     BCFS did not have the required certificate or the necessary operations, maintenance or training manuals

      c.     Silvey was not qualified to operate the aircraft in air commerce

      d.     The aircraft was not qualified to operate in air commerce.

      e.     Fry was not qualified to operate the aircraft, or to even occupy a pilot seat, in a flight in air commerce.

      f.     Silvey's lack of training and his failure to properly manage control of the cockpit directly lead to the loss of control and the accident.

4.     The Aircraft and its components, specifically its de-icing systems, were properly and safely designed, manufactured and sold in all respects by Cessna. The Aircraft was not defective in any respect, and it was not negligently designed, manufactured or sold by Cessna. The accident was not caused by any defective or deficient conditions of the aircraft. Cessna denies that it is liable for the accident.

      a.     The Aircraft de-icing system was not defective, and did not cause the accident or plaintiffs' damages.

      b.     The instructions and warnings which accompanied the aircraft were not defective, and did not cause the accident or plaintiffs' damages

5.     The Aircraft complied with and met all terms and conditions of the express warranty which accompanied sale of the Aircraft, at the time the Aircraft was sold and delivered to BCFS.  Cessna did not breach any term or condition of any express warranty which was applicable to the Aircraft.

6.     The Aircraft was at all times merchantable and was fit for its intended purpose.  Cessna did not breach any implied warranty which may have been applicable to the Aircraft.

7.     The Aircraft was properly certificated by the FAA under Type Certificate A37CE, in accordance with FAR's.  The aircraft complied with all applicable federal certification and airworthiness requirements at the time it was sold and delivered to BCFS.

      a.     The Aircraft was qualified for FAA certification under Cessna's Delegated Option Authority ("DOA").

      b.     All testing and representations made to the FAA under Cessna's DOA were made in compliance with applicable FAR's, and were accurate, correct and true.

      c.     The Aircraft met all applicable federal aviation safety standards and specifications at the time of its certification by the FAA, and at the time of its sale and delivery to BCFS.

      d.     The FAA certificated the Aircraft, including certification for flight into known icing conditions.  As such, the Aircraft was determined to be safe for use by the public in the national airspace system.

8.     Cessna did not make any false representation of fact to plaintiffs' decedent Silvey, BCFS, or to any other person as regards the Aircraft or its safe operation, including specifically the Aircraft's capabilities to operate into known icing conditions.

9.     The standards of care to be applied to determine whether or not the design of the aircraft and its components are negligent or defective are reserved exclusively to the federal government, and particularly to the FAA which is charged with regulation of all aspects of aviation safety.  As such any comparable state law standards of care are preempted and may not be applied to plaintiffs' claims in this case.

17

10.     As type certificated by the FAA, the Aircraft design was determined to have complied with the mandatory safety standards and regulations applicable to aircraft, as adopted and promulgated by the FAA.

11.     As type certificated by the FAA, and pursuant to the airworthiness certificate issued to the aircraft by the FAA, the Aircraft was determined to have satisfied the requirements for and to have received pre-market approval by the FAA.

12.     Brown County's claims for damages are barred by the Economic Loss doctrine under Texas law.

13.     The sole causes of the accident and plaintiffs' damages are the combined negligence, negligence per se, and comparative fault of Silvey, Fry and BCFS.

14.     No conduct or action on the part of Cessna in any way caused the accident and Cessna is not liable for plaintiffs' damages.

### Allan

1.     The pilot negligently operated the aircraft in an overweight state in that the weight of the cargo on board was greater than that which the aircraft is permitted to operate.

2.     The pilot negligently supervised and/or failed to supervise the loading of the cargo into the aircraft.

3.     The pilot negligently operated the aircraft improperly in that the cargo on board was improperly distributed on the aircraft, creating an imbalanced state which interfered with its proper operation.

4.     The pilot negligently failed to conduct an appropriate pre-flight inspection for ice formation on the aircraft.

5.     The pilot negligently failed to obtain a proper pre-flight weather briefing.

6.     The pilot negligently failed to employ appropriate in-flight procedures by failing to maintain appropriate air speed.

7.     The pilot negligently failed to employ appropriate in-flight procedures by failing to maintain appropriate altitude.

8.     The pilot failed to employ appropriate in-flight procedures by failing to attempt to land the aircraft in the closest available landing area.

18

9.     The pilot experienced, if any, only moments of conscious fear of impending injury or death prior to crashing the aircraft.

10.    The pilot's survivors did not sustain pecuniary damages as a result of her death.

11.    The plaintiff is not a proper party and/or lacks capacity to bring an action on behalf of the estate or individually.

### Konovalova and P'yanina cases

1.     During the evening hours of November 19, 2005, Gennady P'yanin, a Russian citizens with a Russian pilot's license, flew a Cessna model 208B airplane with six passengers aboard from Chertovitskoye Airport in Voronezh, an industrial city in Russia, to Domodedova Airport in Moscow, Russia.

2.     Oleg Gun'kin, also a Russian citizen with a Russian pilot's license, served as P'yanin's co-pilot on the Voronezh-to-Moscow flight.

3.     The six passengers aboard the flight were two Russian businessmen (Dmitry Anishchev and Igor Olshansky), their bodyguards (Vasily Votovovich Sidirov and Lasko) and two women identified as translators (Nadezhda Lvovna Baldaeva and Irina N. Konovalova).  The six passengers were apparently returning to Moscow after a hunting trip near Voronezh.

4.     Plaintiffs in the *P'yanina* cases are Emma P'yanina, individually, as personal representative of the estate of her husband, Gennady P'yanin, and as mother and guardian of Mr. P'yanin's minor children; and Irina Gun'kina, as personal representative of the estate of her husband, Oleg Gun'kinn, and as mother and guardian of Mr. Gun'kin's minor children.

5.     Plaintiffs in the *Konovalova* cases are Mikhail Konovalov, individually and as personal representative of the estate of Irina N. Konovalova; Marina Konovalova, Sergey Nikolaevich Savkin, DSS (a minor), by his father and next friend Sergey Nikolaevich Savkin; Vera Aglyamovna Baldaeva, individually and as personal representative of the estate of Madezhda Lvovna Baldaeva; and Nadezhda Vasilievna Sidirova, individually and as personal representative of the estate of  Vasily Viktovovich Sidirov.

6.     About 30 minutes before undertaking the Voronezh-to-Moscow flight, P'yanin received a weather briefing (at about 8:40 p.m. local time) in which he was advised of forecast cumulonimbus clouds, including moderate to heavy icing and turbulence in clouds, along his intended route of travel.

7.      Because the flight was at night with inclement weather forecast en route, it was under the positive control of Russian air traffic controllers.

8.      During their approach to the Domodedova airport, while still in contact with approach controllers, P'yanin and Gun'kin lost control of the airplane and crashed about 18 nautical miles southeast of the Moscow airport, killing all aboard.  The accident occurred at about 10:20 p.m. local time.

9.      P'yanin and Gun'kin were employees of Avcom/Evolga A.V.V. at the time of the accident.

10.     The accident was investigated by Russia's Interstate Aviation Committee (the "MAK"), the Russian governmental department responsible for investigating aviation accidents.  The MAK was assisted by local police officials, the U. S. National Transportation Safety Board, the Federal Aviation Administration, and a representative of Cessna.

11.     The airplane carried airframe serial number 208B01052 and was designed and manufactured by Cessna under Type Certificate A37CE pursuant to the authority of the Federal Aviation Administration.  The airplane was registered in Aruba, bearing registration number P4-OIN.

12.     The airplane was equipped with both a cockpit voice recorder (CVR) and a flight data recorder (FDR).

13.     Russian accident investigators recovered from the wreckage the voice and data recordings from the CVR and the FDR.

14.     Russian accident investigators reviewed and interpreted the voice and data recordings, and, in the case of the cockpit voice recording, translated from the Russian to English.

15.     The cockpit voice recordings indicate that both P'yanin and Gun'kin were aware that, as they descended toward the Domodedova Airport during their approach, they were flying through icing conditions for which the Cessna 208B was not certified to fly.

16.     The cockpit voice recordings indicate that P'yanin told the approach controllers at Domodedova Airport that the icing conditions were less severe than what he was actually encountering so that he would be permitted to continue with his approach to the airport.

17.     The flight data recorder indicates that P'yanin and Gun'kin kept the airplane's autopilot engaged while flying in icing conditions.

18.     The flight data recorder indicates that P'yanin and Gun'kin allowed the airplane's airspeed to deteriorate below the safe minimum airspeed for flying in icing conditions.

19.     P'yanin failed to maintain adequate air speed, lost control and caused the aircraft to crash.

20.     Although P'yanin was an experience military pilot, he had only 90 hours flight time in the Cessna 208B before the accident.

21.     Although Gun'kin was an experienced military pilot, he had only about 50 hours flight time in the Cessna 208B before the accident.

22.     The sole cause of the crash was the negligence of P'yanin and/or Gun'kin.

23.     Avcom/Evolga A.V.V. failed to properly train and supervise P'yanin and Gun'kin.

24.     Although P'yanin and Gun'kin obtained flight training for the Cessna 208B at one of FlightSafety International's training centers in Wichita, much of that training was received without benefit of a Russian translator.  Neither P'yanin or Gun'kin are proficient in English.

25.     Cessna denies that it was responsible in any way for the accident or the injuries decedents' sustained.

26.     Cessna developed, designed, tested and manufactured the Cessna 208B as safe airplane.

27.     The Cessna 208B, including its deicing components, was designed, tested and manufactured in accordance with the technical knowledge and established scientific literature existing at the time of manufacture.

28.     The Cessna 208B met or exceeded all government standards.

29.     The Cessna 208B, including its deicing system, is neither defective nor unreasonably dangerous.

30.     The Cessna 208B aircraft was carefully designed, tested and manufactured by Cessna.

31.     The Cessna 208B was properly certified by the FAA for flight into known icing conditions through normal procedures after extensive analysis and flight tests.

32.     The Cessna 208B's Pilot Operating Handbook contained sufficient instructions and warnings relating to the operation of the aircraft in icing conditions.

33.     Cessna denies that it breached any express or implied warranties.

34.     Cessna denies that it made any statements that were fraudulent in any way.

### Washington cases

Cessna is unable to provide compete factual contentions as to this accident because case-specific fact discovery relating to this accident has only recently begun. However, based on Cessna's initial investigation and the limited discovery conducted to date, the following factual contentions are believed to be accurate:

The Naches accident occurred at approximately 7:59 p.m. on the evening of October 7, 2007, in mountainous terrain about 45 miles west of Yakima, Washington. The flight originated near Boise, Idaho, where the pilot and passengers had been attending a skydiving meet. The intended destination was the aircraft's home base airport in Shelton, Washington, approximately 351 miles away. The crash site was 267 nautical miles from the departure point.  At the time of this flight, the pilot was prohibited by the FAA from carrying passengers for hire on cross-country flights of more than 50 nautical miles, or at night, and the aircraft operator was not certified to carry passengers for hire.

The aircraft involved in the accident had been modified for skydiving.  At the time of the accident, the aircraft had a placard in the cockpit warning that it was not certified for flight into known icing conditions.  The aircraft's owner and operator had removed required components of the anti-ice/de-ice system, and these modifications made it illegal for the pilot to operate the aircraft in known or suspected icing conditions.

The aircraft was originally scheduled to leave the Boise area at approximately 4:00 p.m. on the day of the accident (a Sunday), but the pilot delayed the departure for several hours such that nearly all of the flight occurred after dark. The pilot did not file an instrument flight plan, meaning that the aircraft was legally required to remain clear of clouds and therefore outside any areas where most types of ice could form.  The pilot also failed to file a VFR (Visual Flight Rules) flight plan.  The pilot likely did not meet the minimum legal requirements for piloting an aircraft at night or in the clouds.

Much of the flight was conducted at an altitude higher than 12,000 feet, such that the pilot's judgment, reaction time, and vision were impaired by hypoxia (oxygen starvation) at the time of the accident.

Shortly before the accident, the aircraft made several tight turns, descended approximately 2,000 feet, leveled off and made several more tight turns, then descended

22

to the ground at a rapid rate of speed. The crash site is in a remote mountainous area.

At the time it left Cessna's hands, the accident aircraft met all applicable FAA requirements and did not have any design or manufacturing defects that contributed to this accident.  Cessna provided all appropriate warnings and notices. The accident was caused not by any deficiency in the aircraft or its systems, but rather by critical errors in judgment by the pilot, exacerbated by his lack of training and experience and the foreseeable effects of hypoxia.

### c.    Defendant Goodrich's Contentions.

Goodrich has not agreed to list factual contentions in the individual cases. Goodrich believes it is more appropriate to list factual contentions after Pre Trial proceedings in each individual case after discovery has been completed in the Transferor Courts.

Goodrich Corporation designs and fabricates certain components of ice protection systems that are used on a variety of aircraft, manufactured by a number of different companies.  Goodrich Corporation designed, manufactured, and/or supplied certain components of the ice protection system used on the Cessna Caravan 208B, including the pneumatic boots, the timers and the valves.  Many of the components supplied by Goodrich for use on the Caravan 208B, such as the valves and timers, are standard components that are used on other aircraft.   The pneumatic boots themselves are also used on other aircraft, thought the size of the deicing boots is customized for the particular aircraft in accordance with specifications and data provided by the airframe manufacturer, which in the case of the 208B was Cessna.  In order to estimate the size of a prototype de-icing boot, Goodrich may be asked to perform an icing impingement analysis.  Goodrich performed such an analysis for the 208B based on airfoil, airspeed, altitude, and angle of attack data supplied by Cessna.  The ultimate decision on size, location and configuration of the de-icing boot is made by the airframe manufacturer.

Goodrich provided prototype pneumatic de-icing boots to Cessna for flight testing on the Caravan 208B.  Goodrich did not participate in the flight testing of the aircraft or in-flight performance testing of the pneumatic boots.  Following flight testing and final approval by Cessna on the configuration of the boots and the ice protection system on the Cessna 208B, Goodrich began to manufacture and supply various components used on the 208B, including pneumatic boots, valves and a timer.

Goodrich denies that any components it has supplied for use on any of the 208B aircraft involved in any accident at issue in this matter were defectively designed, manufactured, or marketed.   The de-icing system on the Caravan is designed for use in Part 25, Appendix C conditions.  Goodrich denies that the ice protection system on the

208B is unreasonably dangerous or defective when the aircraft is operated in accordance with the Approved Flight Manual.  Goodrich performed its icing impingement analysis on the 208B correctly and in accordance with the accepted methodology available in 1984 and 1986.  The boot size proposed by Goodrich was and is reasonable and sufficient to meet the requirements of operation in Part 25, Appendix C conditions.  Goodrich denies all other allegations directed toward it that Plaintiffs have listed in their list of contentions.

      **d.**    **Defendant Brown County Financial's Contentions.**  Brown County is no longer a defendant.

**6.**    **THEORIES OF RECOVERY.**

      **a.**    **List of Plaintiffs' and Brown County's Theories of Recovery.**[2]

Plaintiffs, subject to changes that may occur after determinations in the Transferor Courts after choice of law, and other evidentiary motions are resolved, state that the theories in these cases are listed as follows:

**<u>PLAINTIFFS' AND BROWN COUNTY'S CLAIMS AGAINST CESSNA</u>**

***Ingram*, *Villanueva* and *Mountain Bird***

    1. Strict liability
    2. Negligence
    3. Breach of warranty
    4. Wrongful death
    5. Fraud

***Morris***

    1. Negligence
    2. Negligence per se
    3. Strict products liability
    4. Strict products liability -- market defect
    5. Strict products liability -- design defect
    6. Strict products liability -- manufacturing defect

---

[2]    Brown County is only a party in the *Silvey* case.

7.  Breach of express warranty
8.  Breach of implied warranty of merchantability
9.  Breach of implied warranty of fitness for a particular purpose
10.  Fraud
11.  Entitlement to exemplary damages
12.  Punitive conduct

**Silvey**

1.  Negligence
2.  Negligence per se
3.  Strict products liability
4.  Strict products liability -- market defect
5.  Strict products liability -- design defect
6.  Strict products liability -- manufacturing defect
7.  Breach of express warranty
8.  Breach of implied warranty of merchantability
9.  Breach of implied warranty of fitness for a particular purpose
10.  Fraud
11.  Negligent misrepresentation
12.  Joint enterprise liability
13.  Joint venture
14.  Conspiracy
15.  Wrongful death
16.  Entitlement to exemplary damages

**Allan, Konovalova-KS, Konovalova-NY, P'yanina-KS and P'yanina-NY**

Plaintiffs state that their theories of recovery in these cases may be substantially changed by choice of law motions arising out of these accidents which occurred in foreign nations.  Plaintiffs will address these issues after remand and as required by each of the transferor courts.

**Allan**

The causes of action currently pled in *Allan* are:

1.  Strict products liability
2.  Negligence
3.  Breach of warranty
4.  Fraud
5.  Punitive damages

25

*Konovalova and P'yanina cases*

The causes of action currently pled in *Konovalova-KS*, *Konovalova-NY*, *P'yanina-KS* and *P'yanina-NY* are:

1. Strict liability
2. Negligence
3. Breach of warranty
4. Fraud
5. Punitive damages

*Washington cases*

1. Product liability under the Washington State Product Liability Act (First Claim for Relief) [3]

**b.   Essential Elements of  Plaintiff's Theories of Recovery.**  Plaintiffs assert that they cannot state or list the elements of any of the causes of action in the individual actions at this time.  This would require assumptions to be made about the resolution of numerous choice of law motions in each case with the possibility of many factual considerations from numerous states and foreign nations.  Plaintiffs suggest that this exercise is unnecessary, overly burdensome and would be mere speculation prior to remand.  Plaintiffs reserve the right to address this issue with each Transferor Court as required after remand.

The Court has determined that plaintiffs will not be required to list what they believe to be the essential elements of their theories of recovery at this stage of the MDL litigation.

---

[3] The Court dismissed plaintiffs' fraud and punitive damages claims (Third Claim for Relief) in its Memorandum and Order of February 5, 2009.  Doc. 740.

Subject to the court's determination of the law that applies to this case, Cessna believes that, in order to prevail on their theories of recovery, plaintiffs have the burden of proving the following essential elements:

### *Villanueva, Ingram* and *Mountain Bird*

1.   Strict liability, negligence and breach of warranty.  In order to prove *any claim* for product liability under Idaho law, the plaintiff has the burden of proving each of the following propositions:

(1)   The defendant is, or was during the relevant time in question, a "manufacturer" of the product;

(2)   The product was defective and unreasonably dangerous;

(3)   The defect existed when the product left the defendant's control;

(4)   The availability of a safer feasible alternative design at the time of manufacture;

(5)   The defect was a proximate cause of injury to the plaintiff; and

(6)   The nature and extent of the injuries, the elements of damages, and the amount thereof.

*See Puckett v. Oakfabco, Inc.*, 132 Idaho 816, 979 P.2d 1174 (Idaho 1999); *Toner v. Lederle Lab.,* 112 Idaho 328, 732 P.2d 297 (Idaho 1987); *Nepanuseno v. Hansen*, 140 Idaho 942, 104 P.3d 984 (Idaho Ct. App. 2004); Restatement (2d) of Torts, § 402A.  *See also Oats v. Nissan Motor Company,* 126 Idaho 162, 879 P.2d 1095 (Idaho 1994) (holding when a plaintiff brings a non-privity breach of warranty action against a manufacturer or seller to recover personal injuries allegedly sustained as a result of a defective product, that action is one for strict liability in tort . . . .")

A component of Plaintiffs' negligence and strict liability claims involves the alleged failure to warn.  In a failure to warn case, the plaintiff has the burden of proving each of the following propositions:

(1)   The defendant sold/manufactured the product;

(2)   The defendant knew or should have known that danger to users could result from a particular use of the product;

(3)   The defendant failed to give adequate warning of such danger;

(4)   The failure to give adequate warning was a proximate cause of injury to the plaintiff; and

(5)   The nature and extent of the injuries, the elements of damage, and the amount thereof.

27

*See id.; Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421 (Idaho 1974).

    2.  Wrongful death.  Under Idaho's Wrongful Death Statute:

> When the death of a person is caused by the wrongful act or
> neglect of another, his or her heirs or personal representatives
> on their behalf may maintain an action for damages against
> the person causing the death, or in case of the death of such
> wrongdoer, against the personal representative of such
> wrongdoer, whether the wrongdoer dies before or after the
> death of the person injured. If any other person is responsible
> for any such wrongful act or neglect, the action may also be
> maintained against such other person, or in case of his or her
> death, his or her personal representatives. In every action
> under this section, such damages may be given as under all
> the circumstances of the case as may be just.

Idaho Code Ann. § 5-311.  Under this statute, heirs include: (a) those persons who would
be entitled to succeed to the property of the decedent . . . .; and (b) the decedent's spouse,
children, stepchildren, parents, and, when partly or wholly dependent on the decedent for
support or services, any blood relatives and adoptive brothers and sisters.  *Id.*  To sustain
an action for damages an heir must prove that the wrongful act or negligence of the
defendant caused the injury or resulting death.  *Turpen v. Granieri*, 133 Idaho 244, 985
P.2d 669 (Idaho 1999).

    3.  Fraud.  Plaintiffs have the burden of proving each of the following propositions
by clear and convincing evidence:

    (1)    That the defendant stated a fact to the plaintiff;

    (2)    The statement was false;

    (3)    The statement was material;

    (4)    The defendant either knew the statement was false or was
unaware of whether the statement was true at the time the
statement was made.

    (5)    The plaintiff did not know that the statement was false;

    (6)    The defendant intended for the plaintiff to rely upon the
statement and act upon it in a manner reasonably contemplated;

    (7)    The plaintiff did rely upon the truth of the statement;

    (8)    The plaintiff's reliance was reasonable under all the
circumstances;

    (9)    The plaintiff suffered damages proximately caused by reliance
on the false statement; and

> (10)    The nature and extent of the damages to the plaintiff, and the amount thereof.

IDJI 4.6 – fraud issues; *see Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 134 Idaho 84, 996 P.2d 303 (Idaho 2000); *Watts v. Krebbs*, 131 Idaho 616, 962 P.2d 387 (Idaho 1998); *Magic Lantern Prods. Inc. v. Dolsot*, 126 Idaho 805, 892 P.2d 480 (Idaho 1995); *see also, Witt v. Jones*, 111 Idaho 477, 722 P.2d 474 (Idaho 1986); *Umphrey v. Sprinkel*, 106 Idaho 700, 682 P.2d 1247 (Idaho 1983); *Faw v. Greenwood*, 101 Idaho 387, 613 P.2d 1338 (Idaho 1980); *Smith v. King*, 100 Idaho 331 597 P.2d 217 (Idaho 1979).

### *Morris*

1.  Negligence.  The required elements under Texas law are:

    1.    Existence of a legal duty;

    2.    Defendant breached that duty;

    3.    The plaintiff's damages were proximately caused by the defendant's breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).  Proximate cause has two elements: cause in fact and foreseeability.  *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).  Cause in fact is defined as "the act or omission was a substantial factor in bringing about the injury, and without it harm would not have occurred." *Id.* (citing *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973)).  Foreseeability means that "the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Id.* (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985)).

2.  Negligence per se.  The required elements under Texas law are:

    1.    Plaintiff belongs to class of person the statute was designed to protect and plaintiff's injuries are of the type the statute was designed to prevent;

    2.    Statute is one for which tort liability may be imposed when violated;

    3.    Defendant violated statute without excuse; and

    4.    Defendant's act or omission proximately caused plaintiff's injury.

*See* El *Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987); *Southern Pac. Co. v. Castro,* 493 S.W.2d 491, 497 (Tex. 1973) (liability for an unexcused violation of statute).

The statute which the defendant allegedly violated must specifically protect against the type of injuries suffered by the plaintiff and the plaintiff must be a member of the class that the statute was designed to protect. *Perry v. S.N*., 973 S.W.2d 301, 305 (Tex. 1998); *Nixon v. Mr. Prop. Mgmt*., 690 S.W.2d 546, 549 (Tex. 1985); *Moughon v. Wolf*, 576 S.W.2d 603, 304 (Tex. 1978).

     3.  Strict products liability.  Texas law requires the following elements:

        1.     The product is defective;

        2.     The product reached the consumer without substantial change in its condition from the time it was originally sold;

        3.     The defect rendered the product unreasonably dangerous; and

        4.     The defect caused injury to the user.

*See McKisson v. Sales Affiliates, Inc*., 416 S.W.2d 787, 789 (Tex.1967) (adopting Restatement (Second) of Torts, Section 402A).  The Supreme Court has also listed the elements as:

        1.     Placing the product into the stream of commerce;

        2.     Such that the product was in a defective or unreasonably dangerous condition; and

        3.     There is a causal connection between the plaintiff's damages and the product's defective or unreasonably dangerous condition.

*Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex.1978).  To determine whether a product is unreasonably dangerous, both the utility of the product and the risk involved in its used must be weighed together.  *Hernandez v. Tokai Corp*., 2 S.W.3d 251, 257 (Tex. 1999): *Allen v. W.A. Virnau & Sons*, 28 S.W.3d 226, 232 (Tex. App.— Beaumont 2000, pet. denied).

     4.  Strict products liability -- market defect.  Texas law requires the following elements:

        1.     In addition to strict product liability, the plaintiff must also demonstrate that:

            i.     Defendant knew or should have known of a risk to the product's user;

      ii.      Defendant breached its duty to warn plaintiff of the risk;

      iii.     Lack of an adequate warning rendered the product unreasonably dangerous or defective; and

      iv.     Defect was a producing cause of plaintiff's injuries.

*Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 834 (Tex. 1986); *Bristol-Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex. 1978).

    5. Strict products liability -- design defect.  Texas law requires the following elements:

      1.     In addition to strict product liability, the plaintiff must also demonstrate that:

      i.      A safer alternative design existed; and

      ii.     The defect was a producing cause of the plaintiff's injuries.

Tex. Civ. Prac. & Rem. Code 82.005(a); *Allen v. W.A. Virnau & Sons*, 28 S.W.3d 226, 232 (Tex. App.—Beaumont 2000, pet. denied).  The term "safer alternative design" is defined as a product design other than the one actually used that in "reasonable probability would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility" and "was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge."  Tex. Civ. Prac. & Rem. Code 82.005(b).  However, a product is not unreasonably dangerous as a matter of law if there are no safer alternatives.  *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995).  "Texas law does not require a manufacturer to destroy the utility of his product in order to make it safe."  *Id.*  Additionally, an advancement or improvement in technology does render a product design defective.  *State Indus. v. Corbitt*, 925 S.W.2d 304, 308 (Tex. App.—Houston [1st Dist.] 1996, no writ).  "A manufacturer must consider the materials available at the time the product is designed and make the best possible choice."  *Id.*

    6. Strict products liability -- manufacturing defect.  Texas law requires that:

      1.     In addition to strict product liability, the plaintiff must also demonstrate that:

      i.      The product deviated from its specifications or planned output in a manner that renders the product unreasonably dangerous;

      ii.     This defect existed at the time the product left the possession of the defendant; and

      iii.    The defect was a producing cause of the injury.

*Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 41-43 (Tex. 2007).

7. Breach of express warranty.  Texas law requires the following elements:

    1.     The defendant sold or leased goods to the plaintiff;

    2.     Defendant made a representation to plaintiff about the title, quality or characteristics of the goods by:

      i.     Affirmation of fact;

      ii.     Promise;

      iii.    Description; or

      iv.    Display of sample or model

    3.     The representation became part of the basis of the bargain

    4.     The goods did not comply with the representation (i.e., breached the warranty);

    5.     The plaintiff notified the defendant of the breach; and

    6.     The plaintiff suffered injury

Tex. Bus. & Com. Code §2.313.  *See also American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997); *Harris Packaging Corp. v. Baker Concrete Constr. Co.*, 982 S.W.2d 62, 66 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), disapproved on other grounds, 251 S.W.3d 55, 62 (Tex. 2008); *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 361 (Tex. App.—Corpus Christi 1994, no writ); *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 587 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.)).  Tex. Bus. & Com. Code §2.607(c)(1) requires that the plaintiff notify the defendant of the breach of an express warranty, and Tex. Bus. & Com. Code §§2.714, 2.175 require that the plaintiff have suffered an injury as a result of the breach of warranty in order to recover on this cause of action.  *See also Crosbyton*, 875 S.W.2d at 361; *Morris*, 735 S.W.2d at 587.

8. Breach of implied warranty of merchantability.  Texas law requires proof of the following elements:

1.      The defendant, a merchant, sold goods to the plaintiff;

2.      The goods were not merchantable;

3.      The plaintiff notified the defendant of the breach; and

4.      The plaintiff suffered injury.

Tex. Bus. & Com. Code §2.314, cmt. 13.  The requirement the plaintiff notify the defendant of the breach of the warranty is found in Tex. Bus. & Com. Code §2.607(c)(1).  Additionally, the damages suffered by the plaintiff must have been proximately caused by the defendant's alleged breach of the warranty.  *Signal Oil & Gas Co. v. Universal Oil Products*, 572 S.W.2d 320, 328 (Tex. 1978).

Under the UCC, in order for goods to be merchantable, they must:

1.      Pass without objection in the trade under the contract description;

2.      (in the case of fungible goods) Be of fair average quality within the description;

3.      Be fit for the ordinary purposes for which such goods are used;

4.      Run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved;

5.      Be adequately contained, packaged, and labeled as the agreement may require; and

6.      Conform to the promises or affirmations of fact made on the container or label if any.

To pass without objection in the trade, the goods must be of comparable quality to other goods used and sold in that line of trade.  *See Harris Packaging Corp. v. Baker Concrete Constr. Co*., 982 S.W.2d 62, 65-66 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), *disapproved on other grounds*, 251 S.W.3d 55, 62 (Tex. 2008).  Goods are unfit for their ordinary purposes when there is some defect in the goods and/or the goods are not adequate in some manner.  *Plas-Tex, Inc. v. U.S. Steel Corp*., 772 S.W.2d 442, 444 (Tex. 1989).

9.  Breach of implied warranty of fitness for a particular purpose.  Texas law requires proof that:

1.      Defendant sold goods to plaintiff;

2.      Defendant had knowledge that plaintiff was:

    i.      Buying the goods for a particular purpose, and

    ii.     Relying on defendant's skill or judgment to select goods fit for that purpose;

3.      Defendant delivered goods that were unfit for plaintiff's particular purpose;

4.      Plaintiff notified defendant of the breach; and

5.      Plaintiff suffered injury.

Tex. Bus. & Com. Code §2.314, cmt. 13; §2.315 & cmts; *see also Nobility Homes, Inc. v. Shivers*, 557 S.W.2d 77, 82-83 (Tex. 1977); *Harris Packaging Corp. v. Baker Concrete Constr. Co*., 982 S.W.2d 62, 67 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).  The requirement the plaintiff notify the defendant of the breach of the warranty is found in Tex. Bus. & Com. Code §2.607(c)(1).  Additionally, the damages suffered by the plaintiff must have been proximately caused by the defendant's alleged breach of the warranty. *Signal Oil & Gas Co. v. Universal Oil Products*, 572 S.W.2d 320, 328 (Tex. 1978).  The "particular purpose" for which the plaintiff buys the goods may not be ordinary; it must be a purpose for which the goods are not customarily used.  See *JCW Elecs., Inc. v. Garza*, 176 S.W.2d 618, 631 (Tex.App.—Corpus Christi 2005), *overruled on other grounds*, 257 S.W.3d 201 (Tex. 2008).

10.  Fraud.  Under Texas law, the following elements must be proved by plaintiffs:

1.      Defendant made a representation to the plaintiff;

2.      The representation was material;

3.      The representation was false;

4.      When the defendant made the representation, the defendant:

    i.      Knew the representation was false, or

    ii.     Made the representation recklessly, as a positive assertion, and without knowledge of its truth;

5.      Defendant made the representation with the intent that the plaintiff act on it;

6.      Plaintiff relied on the representation; and

      7.      The representation caused injury to the plaintiff.

*E.g., Johnson v. Brewer & Pritchard*, PC, 73 S.W.3d 193, 211 n. 45 (Tex. 2002); *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001); *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co*., 51 S.W.3d 573, 577 (Tex. 2001); *Insurance Co. of N. America v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Johnson & Higgins v. Kenneco Energy, Inc*., 962 S.W.2d 507, 524 (Tex. 1998).  "Material" in the context of a fraudulent representation has been defined as a representation to which "a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question."  *American Med. Int'l v. Giurintano*, 821 S.W.2d 331, 338 (Tex. App.—Houston [14th Dist.] 1991, no writ).

      There is some debate in Texas as to whether a plaintiff's reliance on the defendant's representation must have been justified in order to support a fraud cause of action.  The Texas Supreme Court has held that reliance in the fraud context does not require a plaintiff to have exercised due diligence in determining whether the truth of the defendant's statement.  *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1983).  However, the Court has also noted that "in cases not involving representations made to induce a specific party, the reliance element may need to include "actually and justifiably relied upon the representation."  *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co*., 51 S.W.3d 573, 577-80 (Tex. 2001) (emphasis added); *see also Texas First National Bank v. Ng*, 167 S.W.3d 842, 856 n.24 (Tex. App.—Houston [14th Dist.] 2005, pet. granted, judgm't vacated & remanded by agr.).

      11.    Entitlement to exemplary damages and punitive conduct.  Texas law requires:

      1.      Plaintiff must prove by clear and convincing evidence that

      2.      The harm results from:

            i.      Fraud;

            ii.     Malice; or

            iii.    Gross Negligence.

See Tex. Civ. Prac. & Rem. Code 41.003(a).  Exemplary or punitive damages may only be awarded where the jury awarded damages, other than nominal, to the plaintiff, and the jury was unanimous in its finding of liability and the amount of exemplary damages.  Tex. Civ. Prac. & Rem. Code 41.003(d); 41.004(a).  Exemplary damages may not be awarded where the plaintiff elects to have its damages multiplied under another statute.  Tex. Civ. Prac. & Rem. Code 41.004(b).

"Malice" is defined as "a specific intent by the defendant to cause substantial injury or harm to the claimant." Tex. Civ. Prac. & Rem. Code 41.001(7).  The Texas Supreme Court has defined "gross negligence" as involving two elements: (1) an objective view from the defendant's standpoint as to whether the act (or omission) involved "an extreme degree of risk, considering the probability and magnitude of the potential harm to others"; and (2) the defendant is required to have had actual and subjective awareness of the risks involved, but nonetheless chose to act in the manner in which it did "in conscious indifference to the rights, safety, or welfare of others."  *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).  The Court also defined "extreme risk" as "the likelihood of serious injury to the plaintiff."  *Id*.  "Actual awareness" is defined as an understanding but lack of care of the possible peril, as demonstrated by the defendant's acts or omissions.  *Id*.

***Silvey***

    1.  Negligence.  Texas law requires proof of:

        1.    Existence of a legal duty;

        2.    Defendant breached that duty;

        3.    The plaintiff's damages were proximately caused by the defendant's breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).  Proximate cause has two elements: cause in fact and foreseeability.  *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992).  Cause in fact is defined as "the act or omission was a substantial factor in bringing about the injury, and without it harm would not have occurred."  *Id*. (citing *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973)).  Foreseeability means that "the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others."  *Id*.  (citing *Nixon v. Mr. Prop. Mgmt. Co*., 690 S.W.2d 546, 549-50 (Tex. 1985)).

    2.  Negligence per se.  Texas requires proof of the following elements:

        1.    Plaintiff belongs to class of person the statute was designed to protect and plaintiff's injuries are of the type the statute was designed to prevent;

        2.    Statute is one for which tort liability may be imposed when violated;

        3.    Defendant violated statute without excuse; and

36

4.      Defendant's act or omission proximately caused plaintiff's injury.

*See El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987) (liability for an unexcused violation of statute); *Southern Pac. Co. v. Castro*, 493 S.W.2d 491, 497 (Tex. 1973) (same).  The statute which the defendant allegedly violated must specifically protect against the type of injuries suffered by the plaintiff and the plaintiff must be a member of the class that the statute was designed to protect.  *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 549 (Tex. 1985); *Moughon v. Wolf*, 576 S.W.2d 603, 304 (Tex. 1978).

3.  Strict products liability.  Texas law requires proof of the following elements:

1.      The product is defective;

2.      The product reached the consumer without substantial change in its condition from the time it was originally sold;

3.      The defect rendered the product unreasonably dangerous; and

4.      The defect caused injury to the user.

*McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex.1967) (adopting Restatement (Second) of Torts, Section 402A).  The Supreme Court has also listed the elements as:

1.      Placing the product into the stream of commerce;

2.      Such that the product was in a defective or unreasonably dangerous condition; and

3.      There is a causal connection between the plaintiff's damages and the product's defective or unreasonably dangerous condition.

*Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 376 (Tex.1978).  To determine whether a product is unreasonably dangerous, both the utility of the product and the risk involved in its used must be weighed together.  *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 257 (Tex. 1999): *Allen v. W.A. Virnau & Sons*, 28 S.W.3d 226, 232 (Tex. App.— Beaumont 2000, pet. denied).

4.  Strict products liability -- market defect.  Texas law requires:

1.    In addition to strict product liability, the plaintiff must also demonstrate that:

>  i.      Defendant knew or should have known of a risk to the product's user;
>  ii.     Defendant breached it's duty to warn plaintiff of the risk;
>  iii.    Lack of an adequate warning rendered the product unreasonably dangerous or defective; and
>  iv.     Defect was a producing cause of plaintiff's injuries.

*Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 834 (Tex. 1986); *Bristol-Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex. 1978).

5.  Strict products liability --design defect.  Texas law requires:

1.    In addition to strict product liability, the plaintiff must also demonstrate that:

>  i.      A safer alternative design existed; and
>  ii.     The defect was a producing cause of the plaintiff's injuries.

Tex. Civ. Prac. & Rem. Code 82.005(a); *Allen v. W.A. Virnau & Sons*, 28 S.W.3d 226, 232 (Tex. App.—Beaumont 2000, pet. denied).  The term "safer alternative design" is defined as a product design other than the one actually used that in "reasonable probability would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility" and "was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge."  Tex. Civ. Prac. & Rem. Code 82.005(b).  However, a product is not unreasonably dangerous as a matter of law if there are no safer alternatives.  *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995).  "Texas law does not require a manufacturer to destroy the utility of his product in order to make it safe."  *Id*.  Additionally, an advancement or improvement in technology does render a product design defective.  *State Indus. v. Corbitt*, 925 S.W.2d 304, 308 (Tex. App.—Houston [1st Dist.] 1996, no writ).  "A manufacturer must consider the materials available at the time the product is designed and make the best possible choice."  *Id*.

6.  Strict products liability -- manufacturing defect.  Texas law requires that:

     1.      In addition to strict product liability, the plaintiff must also demonstrate that:

          i.      The product deviated from its specifications or planned output in a manner that renders the product unreasonably dangerous;

          ii.      This defect existed at the time the product left the possession of the defendant; and

          iii.      The defect was a producing cause of the injury.

*Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 41-43 (Tex. 2007).

     7.  Breach of express warranty.  The elements required by Texas law are that:

     1.      The defendant sold or leased goods to the plaintiff;

     2.      Defendant made a representation to plaintiff about the title, quality or characteristics of the goods by:

          i.      Affirmation of fact;
          ii.      Promise;
          iii.      Description; or
          iv.      Display of sample or model

     3.      The representation became part of the basis of the bargain

     4.      The goods did not comply with the representation (i.e., breached the warranty);

     5.      The plaintiff notified the defendant of the breach; and

     6.      The plaintiff suffered injury

Tex. Bus. & Com. Code §2.313.  *See also American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997); *Harris Packaging Corp. v. Baker Concrete Constr. Co.*, 982 S.W.2d 62, 66 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), disapproved on other grounds, 251 S.W.3d 55, 62 (Tex. 2008); *Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 361 (Tex. App.—Corpus Christi 1994, no writ); *Morris v. Adolph Coors Co.*, 735 S.W.2d 578, 587 (Tex. App.—Fort Worth 1987, writ ref'd n.r.e.)).  Tex. Bus. & Com. Code §2.607(c)(1) requires that the plaintiff notify the defendant of the breach of an express warranty, and Tex. Bus. & Com. Code §§2.714, 2.175 require that the plaintiff

have suffered an injury as a result of the breach of warranty in order to recover on this cause of action.  See also *Crosbyton*, 875 S.W.2d at 361; *Morris*, 735 S.W.2d at 587.

8.  Breach of implied warranty of merchantability.  Texas law requires the following elements:

1.      The defendant, a merchant, sold goods to the plaintiff;

2.      The goods were not merchantable;

3.      The plaintiff notified the defendant of the breach; and

4.      The plaintiff suffered injury.

Tex. Bus. & Com. Code §2.314, cmt. 13.  The requirement the plaintiff notify the defendant of the breach of the warranty is found in Tex. Bus. & Com. Code §2.607(c)(1). Additionally, the damages suffered by the plaintiff must have been proximately caused by the defendant's alleged breach of the warranty.  *Signal Oil & Gas Co. v. Universal Oil Products*, 572 S.W.2d 320, 328 (Tex. 1978).

Under the UCC, in order for goods to be merchantable, they must:

1.      Pass without objection in the trade under the contract description;

2.      (in the case of fungible goods) Be of fair average quality within the description;

3.      Be fit for the ordinary purposes for which such goods are used;

4.      Run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved;

5.      Be adequately contained, packaged, and labeled as the agreement may require; and

6.      Conform to the promises or affirmations of fact made on the container or label if any.

To pass without objection in the trade, the goods must be of comparable quality to other goods used and sold in that line of trade.  See *Harris Packaging Corp. v. Baker Concrete Constr. Co.*, 982 S.W.2d 62, 65-66 (Tex. App.—Houston [1st Dist.] 1998, pet. denied), disapproved on other grounds, 251 S.W.3d 55, 62 (Tex. 2008).  Goods are unfit

40

for their ordinary purpose(s) when there is some defect in the goods and/or the goods are not adequate in some manner.  *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989).

       9.  Breach of implied warranty of fitness for a particular purpose.  Texas law requires proof of the following:

      1.      Defendant sold goods to plaintiff;

      2.      Defendant had knowledge that plaintiff was:

            i.      Buying the goods for a particular purpose, and
            ii.     Relying on defendant's skill or judgment to select goods fit for that purpose;

      3.      Defendant delivered goods that were unfit for plaintiff's particular purpose;

      4.      Plaintiff notified defendant of the breach; and

      5.      Plaintiff suffered injury.

Tex. Bus. & Com. Code §2.314, cmt. 13; §2.315 & cmts; *see also Nobility Homes, Inc. v. Shivers*, 557 S.W.2d 77, 82-83 (Tex. 1977); *Harris Packaging Corp. v. Baker Concrete Constr. Co.*, 982 S.W.2d 62, 67 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).  The requirement the plaintiff notify the defendant of the breach of the warranty is found in Tex. Bus. & Com. Code §2.607(c)(1).  Additionally, the damages suffered by the plaintiff must have been proximately caused by the defendant's alleged breach of the warranty.  *Signal Oil & Gas Co. v. Universal Oil Products*, 572 S.W.2d 320, 328 (Tex. 1978).  The "particular purpose" for which the plaintiff buys the goods may not be ordinary; it must be a purpose for which the goods are not customarily used.  *See JCW Elecs., Inc. v. Garza*, 176 S.W.3d 618, 631 (Tex.App.—Corpus Christi 2005), overruled on other grounds, 257 S.W.3d 201 (Tex. 2008).

       10.  Fraud.  Texas law requires the following elements to prove fraud:

      1.      Defendant made a representation to the plaintiff;

      2.      The representation was material;

      3.      The representation was false;

4.   When the defendant made the representation, the defendant:

   i.   Knew the representation was false, or
   ii.   Made the representation recklessly, as a positive
        assertion, and without knowledge of its truth;

5.   Defendant made the representation with the intent that the plaintiff
     act on it;

6.   Plaintiff relied on the representation; and

7.   The representation caused injury to the plaintiff.

*E.g., Johnson v. Brewer & Pritchard, PC*, 73 S.W.3d 193, 211 n. 45 (Tex. 2002); *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001); *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001); *Insurance Co. of N. America v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Johnson & Higgins v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998).  "Material" in the context of a fraudulent representation has been defined as a representation to which "a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *American Med. Int'l v. Giurintano*, 821 S.W.2d 331, 338 (Tex. App.—Houston [14th Dist.] 1991, no writ).

There is some debate in Texas as to whether a plaintiff's reliance on the defendant's representation must have been justified in order to support a fraud cause of action.  The Texas Supreme Court has held that reliance in the fraud context does not require a plaintiff to have exercised due diligence in determining whether the truth of the defendant's statement.  *Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex. 1983).  However, the Court has also noted that "in cases not involving representations made to induce a specific party, the reliance element may need to include "actually and justifiably relied upon the representation." *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577-80 (Tex. 2001) (emphasis added); *see also Texas First National Bank v. Ng,* 167 S.W.3d 842, 856 n.24 (Tex. App.—Houston [14th Dist.] 2005, pet. granted, judgm't vacated & remanded by agr.).

   11.  Negligent misrepresentation.  Texas law requires proof of the following elements:

1.   Defendant made a representation to plaintiff in the course of
     defendant's business or in a transaction in which the defendant had a
     pecuniary interest;

42

2.      Defendant supplied false information for the guidance of others;

3.      Defendant did not exercise reasonable care or competence in obtaining or communicating the information;

4.      Plaintiff justifiably relied on the representation; and

5.      Defendant's negligent misrepresentation proximately caused plaintiff's injury.

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999); *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) ((adopting Restatement (Second) of Torts § 552 (1977), tort of negligent misrepresentation); *Johnson v. Baylor Univ.*, 188 S.W.3d 296, 302 (Tex. App.—Waco 2006, pet. denied).

12.   Joint enterprise liability.  Texas law requires proof that**:**

1.      Defendant and other persons/parties concerned were engaged in a joint enterprise because they had:

     i.      An agreement – express or implied;

     ii.      A common purpose to be carried out by the enterprise;

     iii.      A community of pecuniary interest in that common purpose; and

     iv.      An equal right to direct and control the enterprise.

2.      A member of the joint enterprise committed a tort against the plaintiff while acting within the scope of the enterprise.

*St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2002); *Texas DOT v. Able*, 35 S.W.3d 608, 613 (Tex. 2000); *Aluminum Chems. v. Bechtel Corp.*, 28 S.W.3d 64, 67 (Tex. App.—Texarkana 2000, no pet.); *Greg Lair, Inc. v. Spring*, 23 S.W.3d 443, 448 (Tex. App.—Amarillo 2000, pet. denied).  In *Wolff*, the Texas Supreme Court specifically noted that "a community of pecuniary interest among the members of the group" does not have the same meaning as "a common business or pecuniary interest."  *Wolff*, 94 S.W.3d at 527.

13. Joint venture. Under Texas law, to establish that a joint venture or partnership existed among the named plaintiffs, the court must consider whether the plaintiffs:

| | | |
|---|---|---|
| i. | Received or had a right to receive a share of the profits from the business: | |
| ii. | Expressed an intent to be partners in the business; | |
| iii. | Participated or had a right to participate in the control of the business; | |
| iv. | Shared or agreed to share the business' losses or the liability by third parties against the business; | |
| v. | Contributed or agreed to contribute money or property to the business; | |
| vi. | Co-owned property; | |
| vii. | Shared or had a right to share the gross returns or revenues from the business; or | |
| viii. | Owned mineral property under a joint-operating agreement. | |

Tex. Bus. Org. Code 152.052. Where a partnership or joint venture is found to exist, the partnership and the partners are vicariously liable for the wrongful acts of a partner that were performed in the ordinary course of partnership business or with the authority of the partnership that result in loss or injury. Tex. Bus. Org. Code 152.303(a); *Kelsey-Seybold Clinic v. Maclay*, 466 S.W.2d 716, 719 (Tex. 1971).

14. Conspiracy. Texas requires proof that:

1. The defendant was a member of a group of two or more persons;

2. The objection of the group was to accomplish:

| | | |
|---|---|---|
| i. | An unlawful purpose, or | |
| ii. | A lawful purpose by unlawful means; | |

3. The members had a meeting of the minds on the object or course of action;

4. One of the members committed an unlawful overt act to further the object or course of action; and

5. The plaintiff suffered injury as a proximate result of the wrongful act.

*Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005); *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 (Tex. 2001); *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998).

15. Wrongful death. Plaintiffs must prove the following elements under Texas law:

1. Plaintiff is the spouse of the decedent;

2. Defendant is a person or corporation;

3. Defendant's wrongful act caused the death of the decedent;

4. Decedent would have been entitled to bring an action for the injury if he had lived; and

5. Plaintiff suffered actual injury.

Tex. Civ. Prac. & Rem. Code §§71.001-004, 71.010; *Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex. 1998); *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 511 (Tex. 1995); and *Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 404 (Tex. 1993).

16. Entitlement to exemplary damages. Under Texas law,

1. Plaintiff must prove by clear and convincing evidence that

2. The harm results from:

    i. Fraud;

    ii. Malice; or

    iii. Gross Negligence.

45

*See* Tex. Civ. Prac. & Rem. Code 41.003(a).  Exemplary or punitive damages may only be awarded where the jury awarded damages, other than nominal, to the plaintiff, and the jury was unanimous in its finding of liability and the amount of exemplary damages. Tex. Civ. Prac. & Rem. Code 41.003(d); 41.004(a).  Exemplary damages may not be awarded where the plaintiff elects to have its damages multiplied under another statute. Tex. Civ. Prac. & Rem. Code 41.004(b).

"Malice" is defined as "a specific intent by the defendant to cause substantial injury or harm to the claimant."  Tex. Civ. Prac. & Rem. Code 41.001(7).  The Texas Supreme Court has defined "gross negligence" as involving two elements: (1) an objective view from the defendant's standpoint as to whether the act (or omission) involved "an extreme degree of risk, considering the probability and magnitude of the potential harm to others"; and (2) the defendant is required to have had actual and subjective awareness of the risks involved, but nonetheless chose to act in the manner in which it did "in conscious indifference to the rights, safety, or welfare of others."  *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).  The Court also defined "extreme risk" as "the likelihood of serious injury to the plaintiff."  *Id.*  "Actual awareness" is defined as an understanding but lack of care of the possible peril, as demonstrated by the defendant's acts or omissions.  *Id.*

**Allan**

1.  Strict products liability.  Cessna contends that Canada law governs the substantive issues in this case.  Canada does recognize strict products liability.

2.  Negligence.  Plaintiff has the burden of proving that:

(1)   Cessna owed the pilot a duty of care;
(2)   Cessna breached the standard of care;
(3)   plaintiff sustained damages; and
(4)   the accident was caused, in fact and in law, by the Cessna's breach.

*Mustapha v. Culligan of Canada, Ltd.*, 2008 SCC 27 (Canada March 18, 2008).

3.  Breach of warranty.  For plaintiff to establish a claim for breach of an implied warranty, plaintiff has the burden of proving that:

(1)   the aircraft when sold was defective or unfit for its ordinary purpose;
(2)   the defect existed at the time of the sale; and
(3)    the defect was the proximate cause of the accident and

46

damages resulted there from.

*Workman v. AB Electrolux Corp.*, No. 03-4195-JAR, 2005 WL 1896246 (D. Kan. Aug. 8, 2005).

4. Fraud. To establish a claim of fraud, the plaintiff has the burden of proving that Cessna made:

(1)    a knowingly false representation or statement or statements;
(2)    with the intention to deceive the pilot;
(3)    which materially induced the pilot to act (reliance); and
(4)    which proximately caused pilot's damage.

*Brown & Root Services Corp. v. Aerotech Herman Nelson Inc.*, 2002 MBQB 229 (CanLII).

Plaintiff's burden of proof is greater than the balance of probabilities required in negligence cases. *Kucharsky v. Red River Valley Mutual Insurance Co.*, 2002 MBQB 28 (CanLII). The scrutiny is heightened in the sense that the judge must determine whether the evidence is clear and cogent enough to more than just tilt the scales. *Kolesnykov v. ICBC*, 2004 BCSC 173 (CanLII) (British Columbia).

5. Punitive damages. To establish a claim for punitive damages, the plaintiff has the burden of proving that Cessna's acts affecting the pilot were "high-handed, malicious, arbitrary or highly reprehensible misconduct that departs to a marked degree from ordinary standards of decent behaviour." The Court should consider or instruct another fact-finder that:

(1)    Punitive damages are very much the exception rather than the rule,

(2)    imposed only if there has been highhanded, malicious, arbitrary or highly reprehensible misconduct that departs to a marked degree from ordinary standards of decent behaviour.

(3)    Where they are awarded, punitive damages should be assessed in an amount reasonably proportionate to such factors as the harm caused, the degree of the misconduct, the relative vulnerability of the plaintiff and any advantage or profit gained by the defendant,

(4)    having regard to any other fines or penalties suffered by the defendant for the misconduct in question.

(5)    Punitive damages are generally given only where the misconduct would

47

otherwise be unpunished or where other penalties are or are likely to be inadequate to achieve the objectives of retribution, deterrence and denunciation.

(6)     Their purpose is not to compensate the plaintiff, but

(7)     to give a defendant his or her just desert (retribution), to deter the defendant and others from similar misconduct in the future (deterrence), and to mark the community's collective condemnation (denunciation) of what has happened.

(8)     Punitive damages are awarded only where compensatory damages, which to some extent are punitive, are insufficient to accomplish these objectives, and

(9)     they are given in an amount that is no greater than necessary to rationally accomplish their purpose.

(10)    The jury should be told that while normally the state would be the recipient of any fine or penalty for misconduct, the plaintiff will keep punitive damages as a "windfall" (2002 SCC 18 (CanLII) - 5 -) in addition to compensatory damages.

(11)    Judges and juries in our system have usually found that moderate awards of punitive damages, which inevitably carry a stigma in the broader community, are generally sufficient.

*Whiten v. Pilot Insurance Co.*, 1 S.C.R. 595, 2002 SCC 18 (2002).

### *Konovalova and P'yanina cases*

Cessna contends that Russian law governs the substantive issues in these cases.  At this stage, Cessna believes the following provisions of Russian law would govern the types of claims plaintiffs have asserted in their complaints:

### Article 1095. The Bases of Compensation for Harm Caused as the Result of Defects in Goods, Work, or Services

Harm caused to the life, health, or property of a citizen or to the property of a legal person as the result of design, formula, or other defects in goods, work, or services and also as the result of unreliable or insufficient information on goods (or work or services) shall be subject to compensation by the seller or manufacturer of the goods or person doing the work or rendering the services (the performer) regardless of their fault and regardless of whether or not the victim was in contractual relations with them.  The rules provided by the present Article shall be applied only in cases of acquiring the goods (or doing of the work, rendering of services) for consumer purposes and not for their use in entrepreneurial activity.

48

### Article 1096. Persons Liable for Harm Caused as the Result of Defects in Goods, Work, or Services

1.      Harm caused as the result of defects in goods shall be subject to compensation at the choice of the victim by the seller or manufacturer of the goods.

2.      Harm caused as the result of defects in work or services shall be subject to compensation by the persons who have done the work or rendered the service (by their performer).

3.      Harm caused as the result of failure to provide full or reliable information on the goods (or work or services) shall be subject to compensation by the persons indicated in Paragraphs 1 and 2 of the present Article.

### Article 1097. Time Periods for the Compensation for Harm Caused as the Result of Defects in Goods, Work, or Services

1.      Harm caused as the result of defects in goods, work, or services shall be subject to compensation if it has arisen in the course of the established time period of suitability or time period of service of the goods (or work or services), or, if a time period of suitability or time period of service has not been established, in the course of ten years from the day of production of the goods (or work or services).

2.      Regardless of the time of causation harm is subject to compensation if:

- in violation of the requirements of a statute, a time period of suitability or a time period of service was not established; and

- the person to whom the goods were sold, for whom the work was done, or to whom the services were rendered was not warned of the necessary actions upon the expiration of the time period of suitability or the time period of service and the possible consequences in case of failure to take the above-mentioned actions or he was not given full and reliable information on the goods (or work or services).

### Article 1098. Bases for Freeing from Liability for Harm Caused as the Result of Defects in Goods, Work or Services

The seller or manufacturer of the goods or the performer of work or services shall be freed from liability in the case if he proves that the harm arose as the result of force majeure or violation by the consumer of the established rules for use of the goods, the results of work, or services or their storage.

49

Even if a manufacturer is not subject to liability under the products liability provisions quoted above, it would be subject to the general provisions concerning liability for causing harm, as found in Article 1064 of the Civil Code:

### Article 1064. General Bases of Liability for the Causing of Harm

1.      Harm caused to the person or property of a citizen and also harm caused to the property of a legal person shall be subject to compensation in full by the person who has caused the harm.

A statute may place a duty for compensation for harm on a person who is not the person that caused the harm.

A statute or contract may establish a duty for the person who has caused the harm to pay the victim compensation in addition to compensation for the harm.

2.      The person who has caused the harm is freed from compensation for the harm if he proves that the harm was caused not by his fault. A statute may provide for compensation for the harm even in the absence of fault of the person who caused the harm.

3.      Harm caused by lawful actions shall be subject to compensation in the cases provided by a statute.

Compensation for harm may be refused if the harm was caused at the request, or with the consent, of the victim, and the actions of the person who caused the harm  do not violate the moral principles of society.

### *Washington cases*

1.  Product Liability under the Washington State Product Liability Act (First Claim for Relief).  Under Washington law, plaintiffs have the burden of proving the following essential elements by a preponderance of the evidence:

- The subject aircraft is a product under RCW 7.72.010(3).
- Cessna is a manufacturer under RCW 7.72.010(2).
- The subject aircraft was not reasonably safe as designed or manufactured at the time the product left Cessna's control
- The subject aircraft was not reasonably safe because adequate warnings or instructions were not provided with the product/after the product was manufactured.
- Plaintiffs' decedents were killed.
- The unsafe condition of the aircraft was a proximate cause of plaintiffs' decedents'

50

deaths.

WPI 110.20-21; RCW 7.72.030.

**7.     DEFENSES.**

      **a.     List of Defendants' Defenses and Affirmative Defenses.**  Defendant

Cessna asserts the following defenses and affirmative defenses, noting that discovery is

not complete in any of the individual cases:

*Villanueva, Ingram* **and** *Mountain Bird*

    1.    The aircraft was not defective or unreasonably dangerous in any respect when it was placed into the stream of commerce.

    2.    Cessna breached no duties imposed upon it by law.

    3.    Cessna was not negligent in the design, manufacture, testing, instructions as to use, or warnings pertinent to the subject aircraft.

    4.    Cessna breached no warranties, express or implied.

    5.    No action or conduct by Cessna proximately caused Plaintiffs' damages.

    6.    Plaintiffs' claims are barred, in whole or in part, because any damages sustained by Plaintiffs were proximately caused by the conduct of others, including but not limited to Mountain Bird, the pilot(s), Goodrich, and certain non-parties, over whom Cessna had no control, which bars recovery against Cessna or reduces recovery in proportion to the conduct of others. Therefore, the fault of others, whether they are parties or not, must be apportioned at trial.

    7.    Plaintiffs' claims are barred, in whole or in part, or their recovery is limited by the doctrine of assumption of the risk.

    8.    Plaintiffs' claims are barred, in whole or in part, to the extent that the aircraft was not being used in the normal and ordinary way, in a manner recommended by Cessna, or for the purposes for which it was designed, manufactured, and/or sold.

9.    Plaintiffs' claims are barred, in whole or in part, to the extent that the aircraft described in the Complaint underwent substantial alteration, modification, misuse, or abuse at any time after it left Cessna's control.

10.   The aircraft described in the Complaint and alleged to have been designed, engineered, manufactured, and/or sold by Cessna, and all publications associated therewith, complies with the state of the art, all applicable industry standards, governmental laws, regulations, and statutes, and was neither defective nor unreasonably dangerous at the time the aircraft left Cessna's control.

11.   The aircraft described in the Complaint and alleged to have been designed, engineered, manufactured, and/or sold by Cessna was intended for, and sold to, knowledgeable, sophisticated, and informed users over whom Cessna has no control and who were fully informed as to the risks and dangers, if any, associated with the aircraft as well as the precautions, if any, required to avoid such risks and dangers.

12.   Each and every cause of action contained in the Complaint is preempted or barred by federal law, including, but not limited to, the Federal Aviation Act, the General Aviation Revitalization Act, and the Federal Aviation Regulations.

13.   Plaintiffs' claims are barred, in whole or in part, to the extent that Cessna neither designed, engineered, manufactured, nor sold some or all of the components of the aircraft that is alleged to be defective in Plaintiffs' Complaint.

14.   Cessna denies that any express or implied warranty existed or, in the alternative, that any warranty was breached.

15.   Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to notify Cessna of any alleged defect within the applicable warranty period, if any such warranties existed.

16.   To the extent that the claims attempted to be asserted against Cessna are predicated upon breach of warranty or breach of other contractual relationships, the same are barred because neither Plaintiffs nor Plaintiffs' decedent have a contractual relationship, express or implied, with Cessna.

17.   Plaintiffs' claims of breach of warranty are barred because any such warranties were disclaimed or expressly limited.

52

18.     Standards for airworthiness and maintenance of general aviation aircraft are a function reserved solely to the United States government and, in particular, to the Federal Aviation Administration ("FAA"); and, as a matter of law, Cessna cannot be liable for any aircraft component or defect in any aircraft component or part, which complies with applicable federal aviation airworthiness requirements.  The aircraft, at the time it left Cessna's possession, was in full compliance with all applicable federal certification requirements and airworthiness directives.

19.     Plaintiffs or Plaintiffs' decedent did not reasonably rely on any statements and or information alleged to be fraudulent.

20.     The statements or information Plaintiffs allege to be fraudulent are not material facts, nor were the statements or information made with the intent that they would be relied upon.

21.     Mountain Bird's claims are barred by the economic loss doctrine.

*Morris*

1.     Negligence

2.     Comparative Fault/Contributory Negligence

3.     Reduction of Damages

4.     Submission of Responsibility of Prior Settling Parties

5.     Misuse and Abuse of Aircraft Proximately Caused Plaintiff's Damages/Contributory Negligence

6.     Certification of Aircraft Design in Accordance with Mandatory Safety Standards Adopted and Promulgated by the FAA

7.     Aircraft Design Received FAA's Pre-Market Approval and Certification

8.     FAA Preemption of Standards of Care/Standards of Design for General Aviation Aircraft

9.     Preemption of Fraud on the Agency Claims

**MORRIS COUNTERCLAIMS**

10. Comparative Fault of Morris

11. Comparative Fault of Fleck

12. Joint Enterprise Between Morris and Fleck/Negligence of Fleck is Imputed to Morris and Negligence of Morris is Imputed to Fleck

13. Joint Venture Between Morris and Fleck/Wrongful Acts of Fleck are Imputed to Morris and Wrongful Acts of Morris are Imputed to Fleck

*Silvey*

1. Comparative Fault/Negligence

2. Negligence Per Se

3. Negligent Entrustment

4. Liability Under Doctrine of Respondeat Superior

5. Contribution

6. Reduction of Damages

7. Submission of Responsibility of Prior Settling Parties

8. Misuse and Abuse of Aircraft Proximately Caused Plaintiff's Damages/Negligence

9. Certification of Aircraft Design in Accordance with Mandatory Safety Standards Adopted and Promulgated by the FAA

10. Aircraft Design Received FAA's Pre-Market Approval and Certification

11. FAA Preemption of Standards of Care/Standards of Design for General Aviation Aircraft

12. Joint Enterprise

13. Joint Venture

14. Intervening and Superseding Cause

**SILVEY COUNTERCLAIMS**

15.     Negligence of Robert Fry

16.     Negligence Per Se of Robert Fry

17.     Contributory Negligence of Wade Silvey

18.     Contributory Negligence Per Se of Wade Silvey

**SILVEY CROSS CLAIMS**

19.     Negligence of Brown County

20.     Negligence Per Se of Brown County

21.     Negligent Entrustment of Aircraft by Brown County to Robert Fry and
        Wade Silvey

22.     Liability of Brown County Under Doctrine of Respondeat Superior
        Through Negligence of Robert Fry, as Manager of Brown County

*Allan*

1.      The Complaint and each claim contained therein fail to state a claim upon
which relief can be granted.

2.      Plaintiffs' claims are barred or reduced by plaintiffs' contributory and/or
comparative negligence and/or contributory and/or comparative fault.

3.      If plaintiffs have sustained any injuries or damages or incurred any
expenses, such were not caused by this Defendant but were caused in whole or in part by
the acts or omissions of others, whether individual, corporate or otherwise, whether
named or unnamed in the Complaint, and for whose conduct this Defendant is not
responsible.

4.      If plaintiffs have sustained any injuries or damages, such were the result of
intervening or superseding events, factors, occurrences or conditions, which were in no
way caused by this Defendant and for which this Defendant is not liable.

5.      Plaintiffs' claims are barred by plaintiffs' voluntary assumption of the risks
alleged in the Complaint.

6.      Plaintiffs may not recover from this Defendant because the methods,
standards, or techniques of designing, manufacturing and labeling this Defendant's

product complied with and were in conformity with the generally recognized state of the art at the time the products were designed, manufactured and labeled.

7.      Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations or repose.

8.      Plaintiffs' claims are barred, in whole or in part, by the doctrines of laches, waiver, ratification and/or estoppel.

9.      Plaintiffs' purported warranty-based claims are barred by plaintiffs' failure to give proper or timely notice of any claimed breach of warranty.

10.      To the extent plaintiffs' claims relate to this Defendant's advertising, public statements, or other activities protected by the First Amendment to the Constitution of the United States and applicable provisions of the Constitution of the State of New York and Canadian law, such claims are barred.

11.      Plaintiffs' claims are barred, in whole or in part, by plaintiffs' failure to mitigate any damages allegedly sustained.

12.      The allegations of the Complaint purporting to state claims of fraud or misrepresentation are insufficient because they lack the particularity required by Fed. R. Civ. P. 9(b).

13.      Although this Defendant denies that plaintiffs have any viable cause of action, plaintiffs' claims are barred, reduced and/or limited pursuant to applicable statutory and common law regarding limitations of awards, caps on recovery, and setoffs.

14.      Plaintiff's claims for punitive or exemplary damages are barred or reduced by applicable law or statute or, in the alternative, are unconstitutional insofar as they violate the due process protections afforded by the United States Constitution, the excessive fines clause of the Eighth Amendment to the United States Constitution, and other applicable provisions of the United States Constitution and the Constitution of the State of New York or of the Canada and/or its provinces.

15.      Plaintiffs' claims are preempted, in whole or in part, by Federal and/or Canadian laws and regulations, including (without limitation) those governing the sale and/or use of aircraft.

16.      Plaintiff is not in privity of contract with this Defendant and therefore cannot maintain claims for breach of express and/or implied warranty.

17.      The forum selected by plaintiffs is inconvenient and the matter should be dismissed for recommencement in a Canadian Court or transferred to another Federal

Court in the United States, on the basis of *forum non conveniens.*

18.     In the event this Court does not dismiss the case on *forum non conveniens* grounds, it is asserted that this jurisdiction does not have significant enough contacts to warrant retention of jurisdiction over the case because no relevant portion of the occurrence (s) underlying the action occurred in the State of New York.

19.     Plaintiffs seek to recover for the cost of medical care, custodial or rehabilitative services, loss of earnings or other economic loss, and/or mental anguish. Upon information and belief, the cost of such past or future loss or expense was or will be replaced or indemnified in whole or in part, from a collateral source, as that term is defined in CPLR Section 4545.  In the event of an award to plaintiffs in this action, the amount of such award shall be reduced by the amount from any collateral source, as provided by CPLR Section 4545.

*Konovalova and P'yanina cases*

1.     The airplane was not defective or unreasonably dangerous in any respect when it was placed into the stream of commerce.

2.     Cessna breached no duties imposed upon it by law.

3.     Cessna was not negligent in the design, manufacture, testing, instructions as to use, or warnings pertinent to the subject aircraft.

4.     Cessna breached no warranties, express or implied.

5.     No action or conduct by Cessna proximately caused Plaintiffs' damages.

6.     Plaintiffs' claims are barred, in whole or in part, because any damages plaintiffs sustained were caused by the conduct of others, including, but not limited to Gennady P'yanin, Oleg Gun'kin, AVCOM/Evolga, Goodrich, and other non-parties over whom Cessna had no control, and all of which bars plaintiffs' recovery against Cessna or reduces recovery in proportion to the conduct of others.  Therefore, the fault of others, whether they are parties or not, must be apportioned at trial.

7.     Plaintiffs' claims are barred, in whole or in part, or their recovery is reduced or limited by, the doctrine of assumption of the risk.

8.     Plaintiffs' claims are barred, in whole or in part, to the extent the airplane was not being operated in the normal and ordinary way, in a manner recommended by Cessna, or for the purposes for which it was designed, manufactured, and/or sold.

9.      Plaintiffs' claims are barred, in whole or in part, to the extent the airplane underwent substantial alteration, modification, misuse, or abuse at any time after it left Cessna's control.

10.      The airplane alleged to have been designed, engineered, manufactured, and/or sold by Cessna, and all publications associated with the airplane, comply with the state of the art, all applicable industry standards, governmental laws, regulations, and statutes, and was neither defective nor unreasonably dangerous at the time the airplane left Cessna's control.

11.      The airplane alleged to have been designed, engineered, manufactured, and/or sold by Cessna was intended for, and sold to, knowledgeable, sophisticated, and informed users over whom Cessna has no control and who were fully informed of the risks and dangers, if any, associated with the airplane as well as the precautions, if any, required to avoid such risks and dangers.

12.      Each and every cause of action contained in the plaintiffs' complaints are preempted or barred by federal law, including, but not limited to, the Federal Aviation Act, the General Aviation Revitalization Act, and the Federal Aviation Regulations.

13.      Plaintiffs' claims are barred, in whole or in part, to the extent that Cessna neither designed, engineered, manufactured, nor sold some or all of the components of the airplane.

14.      Cessna denies that any express or implied warranty existed or, in the alternative, that any warranty was breached.

15.      Plaintiffs' claims are barred, in whole or in part, because they failed to notify Cessna of any alleged defect within the applicable warranty period, assuming any such warranties existed.

16.      To the extent the claims asserted against Cessna are based on breach of warranty or breach of other contractual relationships, these claims are barred because neither Plaintiffs nor Plaintiffs' decedent have a contractual relationship, express or implied, with Cessna.

17.      Plaintiffs' claims of breach of warranty are barred because any such warranties were disclaimed or expressly limited.

18.      Standards for airworthiness and maintenance of general aviation aircraft are a function reserved solely to the United States government and, in particular, to the Federal Aviation Administration ("FAA"); and, as a matter of law, Cessna cannot be

liable for any aircraft component or defect in any aircraft component or part, which complies with applicable federal aviation airworthiness requirements.  The airplane, at the time it left Cessna's control, complied fully with all applicable federal certification requirements and airworthiness directives.

19.     Plaintiffs or their decedents did not reasonably rely on any statements and or information alleged to be fraudulent.

20.     The statements or information Plaintiffs allege to be fraudulent are not material facts, nor were the statements or information made with the intent that they would be relied upon.

*Washington cases*

1. Some or all of plaintiffs' claims fail to state claim upon which relief can be granted.

2. Plaintiffs' claims are barred, in whole or in part, to the extent they lack capacity to bring this action.

3. Plaintiffs' claims are barred, in whole or in part, to the extent they are not the real parties in interest pursuant to FRCP 17.

4. Plaintiffs have failed to join indispensable parties.

5. Plaintiffs' damages were caused or contributed to by the fault of other persons or entities not acting in concert with Cessna, including but not limited to Kapowsin Air Sports, Ltd., Philip Kibler, and plaintiffs' decedents. Pursuant to RCW 4.22.070, any recovery from Cessna should be reduced in proportion to the degree of fault attributed to those other persons or entities.

6. The subject aircraft as designed and built was in compliance with all then applicable laws and safety regulations, and was state of the art/state of the industry.

7. The Washington plaintiffs' claims are barred, in whole or in part, to the extent that Cessna neither designed, engineered, manufactured, nor sold some or all of the components of the subject aircraft that is alleged to be defective in the Washington plaintiffs' consolidated complaint.

8. Standards for airworthiness and maintenance of general aviation aircraft such as the subject aircraft are a function reserved solely to the United States government and in particular, to the FAA. Cessna cannot be liable for any alleged defect in the

59

subject aircraft or its component parts because the subject aircraft and its
component parts, at the time they left Cessna's possession, complied with all
applicable federal certification requirements and airworthiness directives., and
because these applicable requirements and directives, and other applicable federal
statutes and regulations, pre-empt state law in this field.

9.  Plaintiffs' damages were caused by intervening or superseding causes.

10. Plaintiffs' damages were caused by misuse and/or abuse of the product by persons
or entities other than Cessna and outside Cessna's control.

11. Plaintiffs' claims are barred, in whole or in part, to the extent that the subject
aircraft was not being used in the normal and ordinary way, in a manner
recommended by Cessna, or for the purposes for which it was designed,
manufactured, and/or sold.

12. Plaintiffs' claims against Cessna are barred due to post-manufacture alteration or
modification of the product by persons or entities other than Cessna and outside
Cessna's control.

13. The Washington plaintiffs' claims against Cessna are barred because the
Washington plaintiffs' decedents and/or others failed to observe an open and
obvious danger.

14. The Washington plaintiffs' claims against Cessna are barred by RCW 7.72.060
because the aircraft had exceeded its useful safe life at the time of the accident.

15. The pilot and the owner/operator of the subject aircraft were learned
intermediaries, and warnings to them were sufficient to satisfy any duty to warn
that might have been owed to the Washington plaintiffs' decedents.

16. The pilot and the owner/operator of the subject aircraft failed to heed adequate
warnings.

17. The Washington plaintiffs have failed to mitigate their damages.

18. Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of
waiver, estoppel, and/or laches.

19. The Washington plaintiffs' claims are barred by assumption of risk.

20. The Washington plaintiffs' claims against Cessna are barred because the aircraft,
or its component parts, underwent a substantial change after it left Cessna's
control.

Goodrich believes that it is not appropriate to list its defenses and affirmative defenses to each individual case until such time as discovery and Pre Trial proceedings have been accomplished in the Transferor Courts. Issues as to choice of law that will be decided in the Transferor Courts will greatly affect the defenses and affirmative defenses of Goodrich.   Goodrich incorporates its answers, denials, defenses and affirmative defenses contained in the Answers of Goodrich on file in each individual case.

### b.      Essential Elements of Defendant Cessna's Affirmative Defenses.

The Court has determined that plaintiffs will not be required to list what they

believe to be the essential elements of Cessna's affirmative defenses at this stage of the

MDL litigation.

Subject to the courts' determination of the law that applies to each case, Cessna

believes that, in order to prevail on its affirmative defenses, it has the burden of proving

the following essential elements:

***Villanueva, Ingram* and *Mountain Bird***

1.      Plaintiffs' Negligence.  The defendant has the burden of proof on each of the following propositions:

      a.      The plaintiff was negligent.
      b.      The negligence of the plaintiff was a proximate cause of his own injuries.

*Watson v. Navistar Int'l Transp. Corp.*, 121 Idaho 643 , 827 P.2d 656 (Idaho 1992); IDJI 1.41.4.2.

2.      Negligence of Others. The defendant has the burden of proof on each of the following propositions:

      a.      Another individual or entity was negligent.
      b.      The negligence of the other individual or entity was a proximate cause of the plaintiff's injuries.

IDJI 1.41.4.3; Idaho Code Ann. § 6-1404 to -05 (2008).

61

3.      Assumption of the Risk.  Under the defense that plaintiff had knowledge of the risk as a basis for comparative fault, the defendant has the burden of proving each of the following:

        a.      The user of the product knew of the defective condition and voluntarily used the product anyway; and

        b.      In using the product, the user did not act as an ordinary reasonably prudent person; and

        c.      The use of the product was a proximate cause of the injuries or damages to the plaintiff.

Idaho Code §6-1305(2) (2008).

4.      Product Misuse. Under the defense of product misuse as a basis for comparative fault, the defendant has the burden of proving each of the following:

        a.      The product was not used in a manner expected of a reasonably prudent person likely to use the product under the same or similar circumstances; and

        b.      The misuse was a proximate cause of the injuries or damages to the plaintiff.

Idaho Code § 6-1305(3) (2008).

5.      Product Alteration.  Under the defense of alteration of the product as a basis for comparative fault, the defendant has the burden of proving each of the following propositions:

        a.      A person other than the defendant [changed the design, construction or formula of the product after it left the hands of the defendant] [or changed or removed warnings or instructions that accompanied or were displayed on the product at the time it left the hands of the defendant]; and

        b.      The change was a proximate cause of the injuries or damages of the plaintiff.

Idaho Code §6-1405(4) (2008).

6.      Informed/Sophisticated User.  Under the defense that plaintiff had special knowledge of the risk or was an experienced user as a basis for comparative fault, the defendant has the burden of proving each of the following:

     a.    The user of the product had special knowledge about the product when the product was used and was an experienced user of the product;

     b.    In using the product, the user did not act as an ordinary reasonably prudent person; and

     c.    The use of the product was a proximate cause of the injuries or damages to the plaintiff.

IDJI 10.10.2 (modified) Products liability defense – knowledge of the risk. *Robinson v. Williamsen Idaho Equip. Co.*, 94 Idaho 819 (Idaho 1972).

7.    Compliance with State-of-the-Art/Industry or Governmental Standards. Evidence of compliance with statutes, regulations, and industry standard is relevant in determining whether defendant was negligent in the design of its product or if the product was defective. *See, e.g., Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234, 1242 (Idaho 1986). It is defendant's duty to demonstrate compliance with such statutes, regulations, and industry standards.

8.    Lack of or Disclaimer of Warranties. Defendant bears the burden of demonstrating a lack of, exclusion, or disclaimer of warranties. Idaho Code § 28-2-316 (2008).

9.    Lack of Privity or Contractual Relationship. Defendant bears the burden of demonstrating lack of privity when asserted as an affirmative defense. See, e.g., *Robinson v. Williamsen Idaho Equip. Co.*, 94 Idaho 819 (Idaho 1972).

10.    Defendant bears the burden of showing lack of notice of breach of warranty when asserted as an affirmative defense. *See, e.g.*, *Salmon Rivers Sportsman Camps v. Cessna Aircraft Co.*, 97 Idaho 348 (Idaho 1975).

### *Morris*

1.  Negligence. The elements are:

    1.    Existence of a legal duty;

    2.    A party breached that duty;

    3.    The plaintiffs' damages were proximately caused by the party's breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973).

2.   Comparative Fault/Contributory Negligence.  Under Chapter 33 of the Tex. Civ. Prac. & Rem. Code, the court is required to determine whether each claimant, defendant, settling person, and responsible third party caused or contributed to the harm for which recovery of damages is sought and the percentage of responsibility of each claimant, defendant, settling person, and responsible third party.  Tex. Civ. Prac. & Rem. Code §33.003.

3.   Reduction of Damages.  Under Texas law, where a plaintiff is accorded a percentage of liability, the court shall reduce the defendant's damages by a percentage equal to the claimant's percentage of responsibility.  Tex. Civ. Prac. & Rem. Code §33.012(a).

4.   Submission of Responsibility of Prior Settling Parties.  Where a plaintiff has settled with one or more person prior to a finding of the defendant's liability, the court shall reduce the defendant's damages by the sum of the dollar amount of all settlements. Tex. Civ. Prac. & Rem. Code §33.012(b).

5.   Misuse and Abuse of Aircraft Proximately Caused Plaintiff's Damages/Contributory Negligence.  The elements are:

1.   Existence of a legal duty;

2.   Plaintiffs breached that duty;

3.   The plaintiffs' damages were proximately caused by the plaintiffs' breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973).

6.  Certification of Aircraft Design in Accordance with Mandatory Safety Standards Adopted and Promulgated by the FAA.

1.   In a products liability action against a manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to the claimant caused by a product's design:

2.      If the manufacturer or seller establishes that the product's design complied with mandatory safety standards or regulations adopted and promulgated by the federal government;

3.      Those safety standards or regulations were applicable to the product at the time of manufacture; and

4.      The safety standards or regulations governed the product risk that allegedly caused the harm.

Tex. Civ. Prac. & Rem. Code §82.008(a).

7.  Aircraft Design Received FAA's Pre-Market Approval and Certification.

1.      In a products liability action against a manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to the claimant caused by a product's design:

2.      If the manufacturer establishes that:

i.      The product was subject to pre-market licensing or approval by the federal government or an agency of the federal government;

ii.      The manufacturer complied with all of the government's or agency's procedures and requirements with respect to pre-market licensing or approval; and

iii.      That the product was approved or licensed for sale by the government or agency after full consideration of the product's risks and benefits.

Tex. Civ. Prac. & Rem. Code §82.008(c).

8.  FAA Preemption of Standards of Care.

Plaintiffs' state tort claims are partially preempted to the extent that their claims are predicated on a standard of care different from or in addition to those established for general aviation aircraft manufacturers by the FAA and its regulations. *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 638-39 (1973); *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367-68 (3d Cir.1999).

9.  Preemption of Fraud on the Agency Claims.

65

A plaintiff's state-law fraud-on-the-agency claims conflict with, and are therefore impliedly preempted by, federal law.  *Buckman Company v. Plaintiffs' Legal Committee*, 531 U.S. 341, 349-55 (2001) (discussing a fraud-on-the-agency claim regarding the Food and Drug Administration). State-law fraud-on-the-agency claims inevitably conflict with the agency's responsibility to police fraud consistently with the administration's judgment and objectives.  *Id.*

## MORRIS COUNTERCLAIMS

10.  Negligence of Morris

   1.   Existence of a legal duty;

   2.   Morris breached that duty;

   3.   The plaintiffs' damages were proximately caused by Morris' breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973).

11.  Negligence of Fleck.

   1.   Existence of a legal duty;

   2.   Fleck breached that duty;

   3.   The plaintiffs' damages were proximately caused by Fleck's breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973).

12.  Joint Enterprise Between Morris and Fleck/Negligence of Fleck is Imputed to Morris and Negligence of Morris is Imputed to Fleck.

   1.   Plaintiffs and other persons/parties concerned were engaged in a joint enterprise because they had:

      i.   An agreement – express or implied;

      ii.   A common purpose to be carried out by the enterprise;

      iii.     A community of pecuniary interest in that common purpose; and

      iv.     An equal right to direct and control the enterprise; and

    2.     A member of the joint enterprise committed a tort against the plaintiff while acting within the scope of the enterprise.

*St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2002); *Texas DOT v. Able*, 35 S.W.3d 608, 613 (Tex. 2000); *Aluminum Chems. V. Bechtel Corp*., 28 S.W.3d 64, 67 (Tex. App.—Texarkana 2000, no pet.); *Greg Lair, Inc. v. Spring*, 23 S.W.3d 443, 448 (Tex. App.—Amarillo 2000, pet. denied).  In *Wolff*, the Texas Supreme Court specifically noted that "a community of pecuniary interest among the members of the group" does not have the same meaning as "a common business or pecuniary interest."  *Wolff*, 94 S.W.3d at 527.

    13.  Joint Venture Between Morris and Fleck/Wrongful Acts of Fleck are Imputed to Morris and Wrongful Acts of Morris are Imputed to Fleck.

      1.     In order to establish that a joint venture or partnership existed among the named plaintiffs, the court must consider whether the plaintiffs:

         i.     Received or had a right to receive a share of the profits from the business:

        ii.     Expressed an intent to be partners in the business;

      iii.     Participated or had a right to participate in the control of the business;

      iv.     Shared or agreed to share the business' losses or the liability by third parties against the business;

        v.     Contributed or agreed to contribute money or property to the business;

      vi.     Co-owned property;

     vii.     Shared or had a right to share the gross returns or revenues from the business; or

    viii.     Owned mineral property under a joint-operating agreement.

Tex. Bus. Org. Code 152.052.  Where a partnership or joint venture is found to exist, the partnership and the partners are vicariously liable for the wrongful acts of a partner that

were performed in the ordinary course of partnership business or with the authority of the partnership that result in loss or injury.  Tex. Bus. Org. Code 152.303(a); *Kelsey-Seybold Clinic v. Maclay*, 466 S.W.2d 716, 719 (Tex. 1971).

**Silvey**

    1.  Comparative Fault/Negligence.

        1.     Existence of a legal duty;

        2.     Another party breached that duty;

        3.     The plaintiff's damages were proximately caused by the other party's breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973).

    2.  Negligence Per Se.

        1.     Plaintiff belongs to class of person the statute was designed to protect and plaintiff's injuries are of the type the statute was designed to prevent;

        2.     Statute is one for which tort liability may be imposed when violated;

        3.     A party violated the statute without excuse; and

        4.     A party's act or omission proximately caused plaintiff's injury.

*El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987); *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 549 (Tex. 1985); *Moughon v. Wolf*, 576 S.W.2d 603, 304 (Tex. 1978); *Southern Pac. Co. v. Castro*, 493 S.W.2d 491, 497 (Tex. 1973).

    3.  Negligent Entrustment.

        1.     The owner entrusted its aircraft to another person;

        2.     That person was an unlicensed, incompetent, or reckless operator or pilot;

        3.     The owner knew or should have known the operator or pilot was unlicensed, incompetent or reckless;

4.      The operator or pilot was negligent on the occasion in question; and

5.      The operator or pilot's negligence proximately caused the plaintiff's injury.

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007); *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987); *Williams v. Steves Indus.*, 699 S.W.2d 570, 571 (Tex. 1985); *Newkumet v. Allen*, 230 S.W.3d 518, 522 (Tex. App.—Eastland 2007, no pet.).  While the negligent entrustment cause of action is typically applied to cars and trucks, at least one court has interpreted the term "motor vehicle" to include "all classes of self-propelled vehicles not operating on stationary rails or tracks."  *Slaughter v. Abilene State Sch.*, 561 S.W.2d 789, 792 (Tex. 1977); *see also Newkumet*, 230 S.W.3d at 523 (applying the cause of action to a boat).

4.  Liability Under Doctrine of Respondeat Superior.

1.  Plaintiff was injured as a result of a tort;

2.  The tortfeasor was an employee of the defendant; and

3.  The tort was committed while the employee was acting within the scope of employment, meaning the act was:

    i.      Within the employee's general authority;

    ii.     In furtherance of the defendant's business; and

    iii.    For the accomplishment of the object for which the employee was hired.

*Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998); *DeWitt v. Harris Cty.*, 904 S.W.2d 650, 654 (Tex. 1995).  The right of the employer to control the employee is the primary test for determining the employer-employee relationship.  *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002).

5.  Contribution.

1.  A defendant make seek contribution from another liable defendant where:

    i.      Defendants are jointly and severally liable;

    ii.     Defendant paid more than its percentage of responsibility; and

69

   iii.  Other defendant did not pay its full percentage of responsibility.

Tex. Civ. Prac. & Rem. Code §33.015(a).

 6. Reduction of Damages.

 Where a plaintiff is accorded a percentage of liability, the court shall reduce the defendant's damages by a percentage equal to the claimant's percentage of responsibility. Tex. Civ. Prac. & Rem. Code §33.012(a).

 7. Submission of Responsibility of Prior Settling Parties.

 Where a plaintiff has settled with one or more person prior to a finding of the defendant's liability, the court shall reduce the defendant's damages by the sum of the dollar amount of all settlements.  Tex. Civ. Prac. & Rem. Code §33.012(b).

 8. Misuse and Abuse of Aircraft Proximately Caused Plaintiff's Damages/Negligence.

  1.  Existence of a legal duty;

  2.  A party breached that duty;

  3.  The plaintiff's damages were proximately caused by the party's breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973).

 9. Certification of Aircraft Design in Accordance with Mandatory Safety Standards Adopted and Promulgated by the FAA.

  1.  In a products liability action against a manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to the claimant caused by a product's design:

  2.  If the manufacturer or seller establishes that the product's design complied with mandatory safety standards or regulations adopted and promulgated by the federal government;

  3.  Those safety standards or regulations were applicable to the product at the time of manufacture; and

    4.    The safety standards or regulations governed the product risk that allegedly caused the harm.

Tex. Civ. Prac. & Rem. Code §82.008(a).

10.  Aircraft Design Received FAA's Pre-Market Approval and Certification.

    1.    In a products liability action against a manufacturer or seller, there is a rebuttable presumption that the product manufacturer or seller is not liable for any injury to the claimant caused by a product's design;

    2.    If the manufacturer establishes that:

        i.    The product was subject to pre-market licensing or approval by the federal government or an agency of the federal government;

        ii.    The manufacturer complied with all of the government's or agency's procedures and requirements with respect to pre-market licensing or approval; and

        iii.    That the product was approved or licensed for sale by the government or agency after full consideration of the product's risks and benefits.

Tex. Civ. Prac. & Rem. Code §82.008(c).

11.  FAA Preemption Standards of Care.

Plaintiffs' state tort claims are partially preempted to the extent that their claims are predicated on a standard of care different from or in addition to those established for general aviation aircraft manufacturers by the FAA and its regulations. *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 638-39 (1973); *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367-68 (3d Cir.1999).

12.  Joint Enterprise.

    1.    Plaintiffs and other persons/parties concerned were engaged in a joint enterprise because they had:

        i.    An agreement – express or implied;

        ii.    A common purpose to be carried out by the enterprise;

      iii.      A community of pecuniary interest in that common purpose; and

      iv.      An equal right to direct and control the enterprise; and

2.      A member of the joint enterprise committed a tort which resulted in the plaintiff's injuries while acting within the scope of the enterprise.

*St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2002); *Texas DOT v. Able*, 35 S.W.3d 608, 613 (Tex. 2000); *Aluminum Chems. v. Bechtel Corp.*, 28 S.W.3d 64, 67 (Tex. App.—Texarkana 2000, no pet.); *Greg Lair, Inc. v. Spring*, 23 S.W.3d 443, 448 (Tex. App.—Amarillo 2000, pet. denied).

13. Joint Venture.

1.      In order to establish that a joint venture or partnership existed among the named parties, the court must consider whether the plaintiffs:

      i.      Received or had a right to receive a share of the profits from the business;

      ii.      Expressed an intent to be partners in the business;

      iii.      Participated or had a right to participate in the control of the business;

      iv.      Shared or agreed to share the business' losses or the liability by third parties against the business;

      v.      Contributed or agreed to contribute money or property to the business;

      vi.      Co-owned property;

      vii.      Shared or had a right to share the gross returns or revenues from the business; or

      viii.      Owned mineral property under a joint-operating agreement.

Tex. Bus. Org. Code 152.052, 152.303(a); *Kelsey-Seybold Clinic v. Maclay*, 466 S.W.2d 716, 719 (Tex. 1971).

14. Intervening and Superseding Cause.

1.    In order to avoid liability, the defendant must establish that the intervening and superseding cause:

    i.    Was extra ordinary under the circumstances;

    ii.    Was not foreseeable under normal circumstances; or

    iii.    Was independent or far removed from the defendant's conduct.

*Dew v. Crown Derrick Erectors, Inc.*, 208 S.W.3d 448, 451 (Tex. 2006). Courts will also consider the following factors from the Restatement (Second) of Torts to determine whether an intervening act is a new and independent cause sufficient to relieve a defendant of liability:

- Whether the intervening act brought about harm different from what would have otherwise resulted from the defendant's alleged negligence?

- Whether the consequences of the intervening act appears extraordinary after the event but ordinary or normal during the happening of the event?

- Whether intervening act operated independently of the actor's alleged negligence?

- Whether the intervening act was a result of a third person's negligence or failure to act?

- Whether the intervening act was a result of a third person's wrongful act that subjected the third person to liability?

- How culpable was the wrongful intervening act?

*See Dew*, 208 S.W.3d at 451 n.3; Restatement (Second) of Torts §442 (1965).

**SILVEY COUNTERCLAIMS**

15.  Negligence of Robert Fry.

1.    Existence of a legal duty;

2.    Robert Fry breached that duty;

3.    The plaintiff's damages were proximately caused by Robert Fry's breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973).

16.   Negligence Per Se of Robert Fry.

    1.   Plaintiff belongs to class of person the statute was designed to protect and plaintiff's injuries are of the type the statute was designed to prevent;

    2.   Statute is one for which tort liability may be imposed when violated;

    3.   Robert Fry violated statute without excuse; and

    4.   Roberty Fry's act or omission proximately caused plaintiff's injury.

*El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987); *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 549 (Tex. 1985); *Moughon v. Wolf,* 576 S.W.2d 603, 304 (Tex. 1978); *Southern Pac. Co. v. Castro*, 493 S.W.2d 491, 497 (Tex. 1973).

17.   Contributory Negligence of Wade Silvey.

    1.   Existence of a legal duty;

    2.   Wade Silvey breached that duty;

    3.   The plaintiff's damages were proximately caused by Wade Silvey's breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973).

18.   Contributory Negligence Per Se of Wade Silvey.

    1.   Plaintiff belongs to class of person the statute was designed to protect and plaintiff's injuries are of the type the statute was designed to prevent;

    2.   Statute is one for which tort liability may be imposed when violated;

    3.   Wade Silvey violated statute without excuse; and

    4.   Wade Silvey's act or omission proximately caused plaintiff's injury.

*El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987); *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 549 (Tex. 1985); *Moughon v. Wolf*, 576 S.W.2d 603, 304 (Tex. 1978); *Southern Pac. Co. v. Castro*, 493 S.W.2d 491, 497 (Tex. 1973).

## SILVEY CROSS CLAIMS

19.  Negligence of Brown County.

1.  Existence of a legal duty;

2.  Brown County breached that duty;

3.  The plaintiff's damages were proximately caused by Brown County's breach of duty.

*Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 549-50 (Tex. 1985); *Kerby v. Abilene Christian College*, 503 S.W.2d 526, 528 (Tex. 1973).

20.  Negligence Per Se of Brown County.

1.  Plaintiff belongs to class of person the statute was designed to protect and plaintiff's injuries are of the type the statute was designed to prevent;

2.  Statute is one for which tort liability may be imposed when violated;

3.  Brown County violated statute without excuse; and

4.  Brown County's act or omission proximately caused plaintiff's injury.

*El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987); *Perry v. S.N.*, 973 S.W.2d 301, 305 (Tex. 1998); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 549 (Tex. 1985); Moughon v. Wolf, 576 S.W.2d 603, 304 (Tex. 1978); Southern Pac. Co. v. Castro, 493 S.W.2d 491, 497 (Tex. 1973).

21.  Negligent Entrustment of Aircraft by Brown County to Robert Fry and Wade Silvey.

1.  The owner entrusted its aircraft to another person;

2.  That person was an unlicensed, incompetent, or reckless operator or pilot;

3.     The owner knew or should have known the operator or pilot was unlicensed, incompetent or reckless;

4.     The operator or pilot was negligent on the occasion in question; and

5.     The operator or pilot's negligence proximately caused the plaintiff's injury.

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007); *Schneider v. Esperanza Transmission Co.*, 744 S.W.2d 595, 596 (Tex. 1987); *Williams v. Steves Indus.*, 699 S.W.2d 570, 571 (Tex. 1985); *Newkumet v. Allen*, 230 S.W.3d 518, 522 (Tex. App.—Eastland 2007, no pet.).

22.  Liability of Brown County Under Doctrine of Respondeat Superior Through Negligence of Robert Fry, as Manager of Brown County.

1.     Plaintiff was injured as a result of a tort;

2.     Robert Fry was an employee of the co-defendant; and

3.     The tort was committed while Robert Fry was acting within the scope of employment, meaning the act was:

   i.     Within Robert Fry's general authority;

   ii.    In furtherance of the co-defendant's business; and

   iii.   For the accomplishment of the object for which Robert Fry was hired.

*Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998); *DeWitt v. Harris Cty.*, 904 S.W.2d 650, 654 (Tex. 1995); see also *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002).

24.  Liability of Brown County Under Doctrine of Respondeat Superior Through Negligence of Wade Silvey, as Pilot in Command and Employee of Brown County.

1.     Plaintiff (or cross-plaintiff) was injured as a result of a tort;

2.     The tortfeasor was an employee of the defendant; and

3.     The tort was committed while the employee was acting within the scope of employment, meaning the act was:

   i.     Within the employee's general authority;

76

      ii.      In furtherance of the defendant's business; and

      iii.     For the accomplishment of the object for which the employee was hired.

*Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998); *DeWitt v. Harris Cty.*, 904 S.W.2d 650, 654 (Tex. 1995).  The right of the employer to control the employee is the primary test for determining the employer-employee relationship.  *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 542 (Tex. 2002).

***Allan***

1.  Failure to state a claim upon which relief may be granted.

      Subject to the Court's determination of the law that applies to this case, defendants believe that, in order to prevail on this affirmative defense, defendants have the burden of proving the following essential elements:

      a.     That the law of Manitoba does not recognize an action in strict products liability.

      b.     That the proximate causes of the accident are one or more of the following: the pilot negligently operated the aircraft in an overweight state in that the weight of the cargo on board was greater than that which the aircraft is permitted to operate; the pilot negligently supervised and/or failed to supervise the loading of the cargo into the aircraft; the pilot negligently operated the aircraft improperly in that the cargo on board was improperly distributed on the aircraft, creating an imbalanced state which interfered with its proper operation; the pilot negligently failed to conduct an appropriate pre-flight inspection for ice formation of the aircraft; the pilot negligently failed to obtain a proper pre-flight weather briefing; the pilot negligently failed to employ appropriate in-flight procedures by failing to maintain appropriate air speed; the pilot negligently failed to employ appropriate in-flight procedures by failing to maintain appropriate altitude; and the pilot failed to employ appropriate in-flight procedures by failing to attempt to land the aircraft in the closest available landing area.

2.  Contributory and/or comparative negligence or fault.

      Subject to the Court's determination of the law that applies to this case, defendants believe that, in order to prevail on this affirmative defense, defendants have the burden of proving the ratio of plaintiff's fault relative to the overall fault, if any, assigned to plaintiff and defendants combined.  *See Rudd v. Hamiota FeedLot Ltd.*, 2006 MBQB 22 (CanLII).  *See* Fatal Accidents Act, C.C.S.M. c. F50 (Manitoba)

3.  Plaintiffs damages were caused in whole or in part by the acts or omissions of others.

Subject to the Court's determination of the law that applies to this case, defendants believe that, in order to prevail on this affirmative defense, defendants have the burden of proving the following essential elements: that the actions of a third party or third parties were the proximate cause of the pilot's damages and the ratio of such third party's or parties' fault relative to the overall fault, if any, assigned to third parties, plaintiff and defendants combined.

4.  Plaintiffs' damages were caused by superseding events not caused by defendant.

Subject to the Court's determination of the law that applies to this case, defendants believe that, in order to prevail on this affirmative defense, defendants have the burden of proving the following essential elements: that the accident was caused by intervening or superseding events, factors, occurrences which were in no way caused by Cessna and for which Cessna is not liable.

5.  Plaintiffs' claims are barred by the pilot's voluntary assumption of the risks.

Subject to the Court's determination of the law that applies to this case, Cessna believes that, in order to prevail on this affirmative defense, defendants have the burden of proving the following essential elements:  that the pilot knew and fully understood or should have known the and fully understood that an accident might occur if the pilot: did not adhere to proper pre-flight procedure relating to inspecting for ice formation on the aircraft; did not adhere to adhere to appropriate in-flight procedure relating to known icing conditions and/or emergency situations; operated the aircraft overweight and/or with the cargo distributed in the aircraft improperly and/or in an unbalanced state; failed to obtain accurate information regarding the weather conditions in which the pilot was to operate, the  weight of the cargo carried onboard the aircraft and/or the distribution of that cargo**.**

6.  State of the art.

Subject to the Court's determination of the law that applies to this case, Cessna believes that, in order to prevail on this affirmative defense, defendants have the burden of proving that the aircraft, its de-icing system and Cessna's education and instruction relating to proper operation of the aircraft in known icing conditions complied with and were in conformity with the generally recognized state of the art at the time the aircraft was designed, manufactured and at the time the information relating to operation of the aircraft was supplied by Cessna to the pilot.

7.  Statute of limitations defense as to plaintiff's breach of warranty claim.

Subject to the Court's determination of the law that applies to this case, Cessna believes that, in order to prevail on this affirmative defense, defendants have the burden of proving that the aircraft was purchased and delivered by Cessna more than three years

before the date of the accident. K.S.A. 60-512.

8. Laches, waiver, ratification and/or estoppel.

Subject to the Court's determination of the law that applies to this case, Cessna believes that, in order to prevail on this affirmative defense, defendants have the burden of proving the following essential elements: that elected plaintiff applied for and received the remedy of Worker's Compensation benefits. Sec. 72, The Manitoba Public Insurance Corporation Act, R.S.M. 1987, c. P215.

9. Plaintiff failed to give proper notice of breach of warranty.

Plaintiffs' purported warranty-based claims are barred by plaintiffs' failure to give proper or timely notice of any claimed breach of warranty in that plaintiff did not notify Cessna of an alleged breach of warranty until after the statute of limitations had extinguished plaintiff's right to bring an action on any express or implied warranty.

10. Plaintiff's claims may not be based on Cessna's responses to governmental inquiry.

Subject to the Court's determination of the law that applies to this case, Cessna believes that, in order to prevail on this affirmative defense, Cessna has the burden of proving that statements relied on by plaintiff in support of plaintiff's fraud claim were made in response to governmental inquiry and as such are protected from forming the basis of plaintiff's claim.

11. Plaintiff failed to mitigate damages.

Subject to the Court's determination of the law that applies to this case, Cessna believes that, in order to prevail on this affirmative defense, defendants have the burden of proving that plaintiff had avenues of compensation available which plaintiff chose not to pursue, resulting in a set-off in favor of defendants of damages sustained by plaintiff for which defendants are liable, if any.

12. Plaintiff failed to plead fraud with particularity.

The allegations of the Complaint purporting to state claims of fraud or misrepresentation are insufficient because they lack the particularity required by Federal Rule of Civil Procedure 9(b).

13. Plaintiffs' claims are barred, reduced and/or limited due to applicable statutory and common law regarding limitations of awards, caps on recovery, and setoffs.

Subject to the Court's determination of the law that applies to this case, Cessna believes that, in order to prevail on this affirmative defense, defendants have the burden

of proving that plaintiffs' claims are subject to statutory and common law regarding limitations of awards, caps on recovery, and setoffs.  *See* Fatal Accidents Act, C.C.S.M. c. F50 (Manitoba); *Whiten v. Pilot Insurance Co.*, 1 S.C.R. 595, 2002 SCC 18 (2002).

14.  Plaintiffs' punitive damages claims must be dismissed or reduced.

Subject to the Court's determination of the law that applies to this case, Cessna believes that, in order to prevail on this affirmative defense, defendants have the burden of proving that plaintiffs' claims for punitive or exemplary damages are barred or reduced by applicable law or statute or, in the alternative, are unconstitutional insofar as they violate the due process protections afforded by the United States Constitution, the excessive fines clause of the Eighth Amendment to the United States Constitution, and other applicable provisions of the United States Constitution and the Constitution of the State of New York or of the Canada and/or its provinces.  *See Whiten v. Pilot Insurance Co.*, 1 S.C.R. 595, 2002 SCC 18; *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003).

15.  Plaintiffs' claims are preempted, in whole or in part, by law.

Plaintiffs' state tort claims are partially preempted to the extent that their claims are predicated on a standard of care different from or in addition to those established for general aviation aircraft manufacturers by the FAA and its regulations.  *City of Burbank v. Lockheed Air Terminal Inc.*, 411 U.S. 624, 638-39 (1973); *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367-68 (3d Cir.1999).  A plaintiff's state-law fraud-on-the-agency claims conflict with, and are therefore impliedly preempted by, federal law.  *Buckman Company v. Plaintiffs' Legal Committee*, 531 U.S. 341, 349-55 (2001) (discussing a fraud-on-the-agency claim regarding the Food and Drug Administration). State-law fraud-on-the-agency claims inevitably conflict with the agency's responsibility to police fraud consistently with the administration's judgment and objectives.  *Id*.

16.  *Forum non conveniens.*

The forum selected by plaintiffs is inconvenient and the matter should be dismissed for recommencement in a Canadian Court or transferred to another Federal Court in the United States, on the basis of *forum non conveniens.*

18.  Plaintiff may not recover for expenses for which she has been reimbursed.

Plaintiffs seek to recover for the cost of medical care, custodial or rehabilitative services, loss of earnings or other economic loss, and/or mental anguish.  In the event of an award to plaintiffs in this action, the amount of such award shall be reduced by the amount from any collateral source.

### *Konovalova and P'yanina cases*

Cessna contends Russian law will govern the substantive issues in these cases. Because the parties do not yet know which claims will survive under Russian law and what the required elements of the surviving claims are, Cessna is unable to state the elements of its defenses at this time.

### *Washington cases*

1.  Failure to State a Claim.

- Plaintiffs can prove no set of facts, consistent with the complaint, which would justify recovery.

FRCP 12((b)(6); *San Juan County v. No New Gas Tax*, 160 Wash.2d 141, 157 P.3d 831 (2007)

2.  Real Parties in Interest.

- Plaintiffs' decedents are not the persons who will be entitled to the fruits of the action, if successful.

FRCP 17(a), *American Triticale, Inc. v. Nytco Services, Inc.*, 664 F.2d 1136, 1141 (9th Cir. 1981); *Northwest Independent Forest Mfrs. v. Department of Labor and Industries*, 899 P.2d 6, 10-11 (Wash. App. 1995).

3.  Fault of Others.

- Other persons or entities not acting in concert with Cessna, including but not limited to Kapowsin Air Sports, Ltd., Philip Kibler, and plaintiffs' decedents, had a duty or obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks;
- Those persons or entities breached those duties;
- The breach was a proximate cause of the plaintiffs' decedents' deaths; and
- The plaintiffs suffered legally compensable damages.

RCW 4.22.070.

4.  State of the Art.

- Cessna's product complied with applicable laws, technologies, customs in the aviation industry, governmental and nongovernmental standards.

RCW 7.72.050(1)

5.  Federal Pre-emption.

- The aircraft and its component parts, at the time they left Cessna's possession, complied with all applicable federal certification requirements and airworthiness directives.
- The FAA preempts the entire field of aviation safety from state and territorial regulation.

*Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007)

6.  Intervening/Superseding Cause.

- Even if Cessna was negligent, the sole proximate cause of plaintiffs' deaths was a later independent intervening act of one of the other defendants, one of plaintiffs' decedents, or the act of a person or entity not a party to this action.
- Cessna, in the exercise of ordinary care, could not reasonably have anticipated that later independent intervening act.

WPI 15.05

7.  Misuse of Product.

- Other persons or entities not acting in concert with Cessna, including but not limited to Kapowsin Air Sports, Ltd., Philip Kibler, and plaintiffs' decedents, misused or abused the product, or used the product in a manner not foreseeable to Cessna.
- That misuse or abuse of the product was a proximate cause of the plaintiffs' decedents' deaths.

REST 3d TORTS-PL § 2, comment p; RCW 4.22.015

8.  Normal and Ordinary Use.

- Other persons or entities not acting in concert with Cessna, including but not limited to Kapowsin Air Sports, Ltd., Philip Kibler, and plaintiffs' decedents, were not using the product in a normal, ordinary way or in a manner foreseeable to Cessna.
- That abnormal use of the product was a proximate cause of plaintiffs' decedents' deaths.

REST 3d TORTS-PL § 2, comment p.

    9.  Alteration/Modification.

- Other persons or entities not acting in concert with Cessna, including but not limited to Kapowsin Air Sports, Ltd., Philip Kibler, and plaintiffs' decedents, altered or modified the product in a manner not foreseeable to Cessna.
- That alteration or modification of the product was a proximate cause of the plaintiffs' decedents' deaths.

REST 3d TORTS-PL § 2 comment p, 17 comment c

    10.  Open and Obvious Danger.

- Other persons or entities not acting in concert with Cessna, including but not limited to Kapowsin Air Sports, Ltd., Philip Kibler, and plaintiffs' decedents, failed to exercise ordinary care by failing to observe an open and obvious danger.
- This breach of the standard of care was a proximate cause of the plaintiffs' decedents' deaths

RCW 4.22.070, WPI 10.01, WPI 11.01

    11.  Safe Useful Life.

- The subject aircraft had exceeded its safe useful life at the time of the accident.

RCW 7.72.060

    12.  Learned Intermediaries.

- The pilot and the owner/operator of the subject aircraft were learned intermediaries, and warnings to them were sufficient to satisfy any duty to warn that might have been owed to the Washington plaintiffs' decedents.

WPI 110.03 and comments

    13.  Failure to Heed Warnings.

- The pilot and the owner/operator of the subject aircraft failed to heed adequate warnings.
- Other persons or entities not acting in concert with Cessna, including but not

limited to Kapowsin Air Sports, Ltd., Philip Kibler, and plaintiffs' decedents, failed to exercise ordinary care by failing to heed adequate warnings.

- This breach of the standard of care was a proximate cause of the plaintiffs' decedents' deaths

RCW 4.22.070, WPI 10.01, WPI 11.01

    14.    Failure to Mitigate.

- Plaintiffs failed to exercise ordinary care to avoid or minimize new and increased damages.

WPIC 33.01; RCW 4.22.015; Cox v. Keg Restaurants U.S., Inc., 86 Wn. App. 239, 244, 935 P.2d 1377 (1997).

    15.    Waiver.

- Plaintiffs' decedents intentionally relinquished a known right.

*Mutual of Enumclaw Ins. Co. v. USF Ins. Co.,* 191 P.3d 866 (Wash. 2008)

    16.  Assumption of Risk.

- Plaintiffs' decedents knew of the specific risk associated with the flight from Star to Shelton in the subject aircraft, understood its nature, voluntarily chose to accept the risk by taking the flight, and expressly or impliedly consented to relieve Cessna of a duty of care owed to them in relation to the flight.

WPI 13.03

    17.  Substantial Change.  Subject to the court's determination of the law that applies to this case, the parties agree that, in order to prevail on this affirmative defense, defendant has the burden of proving the following essential elements:

- The subject aircraft underwent a substantial change in its condition after leaving Cessna's control.

*Padron v. Goodyear Tire & Rubber Co.*, 34 Wash. App. 473, 476, 662 P.2d 67 (1983); *Bich v. General Elec. Co.*, 27 Wash. App. 25, 29, 614 P.2d 1323 (1980); Restatement (Second) of Torts § 402A(1)(b), and comment p (1965).

## 8.   FACTUAL ISSUES.

Plaintiffs believe that there is insufficient discovery in individual cases and that a listing of factual issues in each case would be premature and too speculative prior to remand and the completion of discovery in the Transferor Courts.  Plaintiffs reserve the right to provide this information as required by each Transferor Court after remand. Following are the factual issues plaintiffs contend are "common" to the MDL cases:

**a.**   Did the Cessna Aircraft Company comply with all applicable Federal Aviation Regulations, standards of industry, statutes and directives in the design, testing, manufacture, marketing, sale and technical support of the aircraft.

**b.**   Did Goodrich Corporation comply with all applicable Federal Aviation Regulations, standards of industry, statutes and directives in the design, testing, manufacture, marketing, sale and technical support pneumatic deicing boot system on the aircraft.

**c.**   Was the design of the Cessna 208B aircraft and its operating procedures in compliance with regulations and standards for an aircraft certified for operation in icing conditions.

**d.**   Was the deicing system designed, manufactured and sold by the Goodrich Corporation safe and effective for use on an aircraft certified to operate in known icing conditions.

**e.**   What, if any, regulations, statutes and advisory documents apply to the Cessna 208B aircraft.

**f.**   Was each accident aircraft appropriately certified and airworthy for operating in known icing conditions.

**g.**   Did Cessna misstate or act with fraudulent intent in the certification, testing, marketing, disclosure of known safety issues, pilot training and handling and cure of the known artificial stall warning system defect.

**h.**    Did Airworthiness Directives issued by the Federal Aviation Administration in 2005, 2006 and 2007 result in limitations on the operating envelope of the aircraft which effectively changed the certification basis of the 208B.

     **i.**     Are there simple, physical, aerodynamic relationships recognized in the aviation industry that allow the useful and reasonable comparison of the Cessna 208B aircraft to other present day aircraft.

     **j.**     Was the defendant Cessna's conduct from 1984 to the present willful, wanton, reckless or in total disregard of the lives and safety of plaintiffs' decedents.

     **k.**     Did the defendant Cessna misrepresent or fail to disclose the capability of the aircraft in icing conditions.

     **l.**     Did pilots and owners and operators of the Cessna 208B rely upon Cessna's misrepresentations, omissions and failures to disclose known safety defects.

     **m.**     Was the conduct of either defendant a probable cause of any of the accidents in the litigation.

     **n.**     How many Cessna 208B aircraft accidents have occurred in known icing conditions since 1986.

     **o.**     What changes to the Cessna 208B aircraft or its operating procedures have been required by FAA order and/or FAA advice and suggestion.

     **p.**     What factual information relevant to product defect, negligence, fraud, breach of warranty and punitive conduct is found in the FAA, NTSB and other government administrative documents which have been identified in this litigation.

     **q.**     Was the 208B aircraft safe for flight into known icing conditions.

     **r.**     Was the 208B aircraft dangerous and defective with operation in icing conditions.

     Defendant Cessna believes the issues are specific to each individual case. Because case-specific discovery in the individual cases is still ongoing, these lists of issues are necessarily preliminary. At this time, Cessna believes that the following material issues will need to be resolved at the trial of each of the individual cases if summary judgment is not granted:

### *Villanueva, Ingram* **and** *Mountain Bird*

     1.     Whether the subject aircraft, including its deicing system, was defective

and/or unreasonably dangerous.

2.      Whether Cessna was negligent in the design, manufacture, and testing of the aircraft.

3.      Whether the aircraft was properly certified for flight into known icing conditions.

4.      Whether Cessna provided adequate instructions and warnings relating to the operation of the aircraft in icing conditions.

5.      Whether the aircraft, at the time it left Cessna's possession, was in full compliance with all applicable federal certification requirements and airworthiness directives.

6.      Whether the cause of the accident was the fault of Villanueva, Ingram, Mountain Bird, Cessna, and/or Goodrich.

7.      Whether Plaintiffs Villanueva, Ingram, and/or Mountain Bird were comparatively negligent.

8.      Whether any warranties existed; and if so, whether such warranties were breached.

9.      Whether Cessna made any statements that were fraudulent to Plaintiffs Ingram and Villanueva.

10.      The nature and extent of Plaintiffs' damages, if any.

***Morris***

1.      <u>Negligence</u>

1.1.      Was the C208B aircraft (the "Aircraft") designed, manufactured or marketed negligently by Cessna, as alleged in Paragraphs 7, 8 and 9 of the Second Claim for Relief of Plaintiffs' Amended Complaint (the "Complaint")?

1.2.      Was any alleged negligence of Cessna a proximate cause of the accident and plaintiffs' alleged damages?

2.      <u>Strict Product Liability</u>

2.1.    Was the Aircraft defective, unreasonably dangerous or not fit for its intended and foreseeable purposes as alleged in paragraphs 8, 9, and 10 of the First Claim for Relief of plaintiffs' Complaint?

2.2.    That Cessna did not service, repair or maintain the Aircraft as alleged in paragraph 8 of the First Claim for Relief of plaintiffs' Complaint?

2.3.    Were any alleged defects in the Aircraft the proximate cause of the accident and plaintiffs' alleged damages?

3.    Breach of Warranty

3.1.    Was any express warranty in effect at the time of the accident?

3.2.    Did Cessna breach any express or implied warranty with respect to the condition of the Aircraft which, as alleged in paragraphs 7, 8, 9, and 10 of the Third Claim for Relief of plaintiffs' Complaint?

3.3.    Was any alleged breach of warranty a proximate cause of the accident and plaintiffs' alleged damages?

4.    Fraud

4.1.    Was any representation in 'charts' used in Cessna's Winter Operations Update training as alleged in paragraphs 10, 11, 12, 13, 14, and 15 of plaintiffs' Fourth Claim for Relief, a misrepresentation of material fact in view of:

4.1.1.   Was the information intended to be presented as fact to be relied on by pilots in operation of the Aircraft?

4.1.2.   Even if relied on was the information "dangerous, life threatening or irresponsible?"

4.1.3.   Did the information appear in the Pilot Operating Handbook used by Morris and Fleck, which is the required operating guide which pilots must follow?

4.1.4.   Was either Morris or Fleck aware of the information presented in the charts?

4.1.5.   Did Morris or Fleck actually rely on the information contained in the charts in the conduct of the accident flight?

4.1.6.   Was any reliance on the information in the 'charts' a proximate cause of the accident?

88

4.2.    Did Cessna obtain C208B FAA certification for flight into known icing conditions by misrepresenting material facts to the FAA regarding its flight test results, as regards requirements pursuant to 14 CFR 23, or the specifications set forth in 14 CFR 25, Appendix C?

4.2.1.   Was Cessna required to measure and report cloud droplet size, as alleged in paragraph 16 of the Fourth Claim for Relief?

4.2.2.   Did Cessna test cloud liquid water content in accordance with 14 CFR 25, Appendix C, contrary to allegations in paragraph 16 of the Fourth Claim for Relief?

4.2.3.   Did Cessna properly calculate equivalent periods of exposure by measurement of icing exposure distances in accordance with 14 CFR 25, Appendix C, contrary to allegations in paragraph 16 of the Fourth Claim for Relief?

4.3.    Did Cessna misuse its DOA authority to fraudulently obtain FAA certification for the Aircraft by misrepresenting the results of its icing flight tests of the model C208B aircraft, as alleged in paragraph 16 of the Fourth Claim for Relief?

5.    <u>Comparative Fault/Negligence</u>

5.1.    Were John Morris ("Morris") and Steven Fleck ("Fleck") negligent in their operation of the Aircraft at relevant times during the accident flight, as alleged in paragraph 51 of Cessna's Answer to Morris' and Fleck's Complaint (the "Answer")?

5.2.    Was Morris' and Fleck's negligence proximate causes of the accident or plaintiffs' damages?   If so, what percentage of fault is to be apportioned to Morris and to Fleck?

5.3.    Were Morris and Fleck engaged in a joint enterprise for their mutual business benefit in planning and conduct of the accident flight as alleged in paragraph 56 of Cessna's Answer?  If so, should the negligence of each of them be imputed to the other?

6.    <u>Certification of C208B Design in Accordance with Mandatory Safety Standards Adopted and Promulgated by the Federal Aviation Administration</u>

6.1    As alleged in paragraphs 57 and 58 of Cessna's Answer, did the design and certification of the Aircraft comply with Type Certification standards specified by the FAA, and did the Aircraft receive pre-market approval from the FAA? (Section 82.008 (a) and (c) of the Texas Civil Practice and Remedies Code.)

6.2.    As alleged in paragraph 55 of Cessna's Answer, did Cessna's design and manufacture of the Aircraft comply with FAA standards for design of general aviation aircraft (14 CFR 23), and was the Aircraft type certificated by the FAA as being in compliance with all applicable federal aviation safety and airworthiness requirements?

6.3.    Was the Aircraft in compliance with all federal certification and airworthiness requirements applicable to the Aircraft at the time it was sold and delivered to Morris and Fleck's employer, Federal Express?

7.    <u>Damages</u>

7.1.    The nature and extent of plaintiff's damages.

*Silvey*

1.    <u>Negligence</u>

1.1.    Was the C208B aircraft (the "Aircraft") designed, manufactured or marketed negligently by Cessna, as alleged in Paragraph 15 of plaintiffs' Second Amended Original Petition (the "Petition")?

1.2.    Was any alleged negligence of Cessna a proximate cause of the accident and plaintiffs' alleged damages?

2.    <u>Strict Product Liability</u>

2.1.    Was the Aircraft defective and unreasonably dangerous or not fit for its intended and foreseeable purposes as alleged in Paragraph 16 of plaintiffs' Petition?

2.2.    Were any alleged defects in the Aircraft the proximate cause of the accident and plaintiffs' damages?

3.    <u>Breach of Warranty</u>

3.1.    Did Cessna breach any express or implied warranty with respect to the condition of the Aircraft at the time it was sold and delivered to Silvey's employer, Brown County Financial Services, as alleged in Paragraph 17 of plaintiffs' Petition?

3.2.    Were any alleged breaches of warranties a proximate cause of the accident and plaintiffs' alleged damages?

4.    <u>Fraud and Misrepresentation</u>

4.1    Did Cessna misrepresent, withhold or otherwise conceal material facts regarding the Aircraft, as alleged in Paragraph 18 of plaintiffs' Petition?

4.2    Was any such alleged misrepresentation or concealment of material fact a proximate cause of the accident or plaintiffs' damages?

5.    <u>Partnership, Joint Venture or Conspiracy</u>

5.1.    Were Cessna and Flight Safety International engaged in any partnership or joint venture, as alleged in Paragraph 19 of plaintiffs' Petition?

5.2.    Did Cessna, Flight Safety International and Goodrich act together in any conspiracy as alleged in Paragraph 38 of Silvey's Petition?

6    <u>Comparative Fault/Negligence</u>

6.1.    Was Wade Silvey ("Silvey") negligent in his operation of the Aircraft at relevant times during the accident flight, as alleged in Paragraphs 4.1 and 4.2 of Cessna's answer, counterclaims and cross-claims to Silvey's Petition (the "Answer")?

6.2    Was Silvey negligent and negligent per se for operating the Aircraft on the accident flight in "transportation for hire" and in air commerce in violation of 49 USC 44711(a)(5), 14 CFR 119.33(b), and in breach of 14 CFR 135 as alleged in Paragraphs 5.2 of Cessna's Answer?

6.3    Was Silvey's negligence and/or negligence per se a proximate cause of the accident or plaintiffs' damages?   If so, what percentage of fault is to be apportioned to Silvey?

6.4.    Was Robert Fry ("Fry") negligent and/or negligent per se in supervising the conduct of the flight and in operating the Aircraft during the accident flight, as alleged in Paragraph 6.4 of Cessna's Answer?

6.5.    Was Fry's negligence and/or negligence per se a proximate cause of the accident or plaintiffs' damages?  If so, what apportionment of fault should be attributed to Fry?

6.6.    Was Brown County Financial Services ("BCFS") negligent and/or negligent per se for operating the Aircraft on the accident flight in "transportation for hire" and in air commerce, as alleged in Paragraphs 6.2 and 6.3 of Cessna's Answer?

91

6.7.    Was BCFS's negligence and/or negligence per se a proximate cause of the accident or plaintiffs' damages?  If so, what apportionment of fault should be attributed to BCFS?

6.8.    Were Silvey, Fry and BCFS engaged in a joint enterprise for their mutual business benefit in planning and conduct of the accident flight as alleged in Paragraph 4.11 of Cessna's Answer?  If so, should the negligence of each of them be imputed to the others?

7.    <u>Certification of C208B Design in Accordance with Mandatory Safety Standards Adopted and Promulgated by the Federal Aviation Administration</u>

7.1.    As alleged in Paragraphs 4.9 and 4.10 of Cessna's Answer, did the design and certification of the Aircraft comply with type certification standards specified by the FAA, and did the Aircraft receive pre-market approval from the FAA?   (Section 82.008 (a) and (c) of the Texas Civil Practice and Remedies Code.)

7.2.    As alleged in Paragraphs 4.7 and 4.8 of Cessna's Answer, did Cessna's design and manufacture of the Aircraft comply with FAA standards for design of general aviation aircraft (14 CFR 23), and was the Aircraft type certificated by the FAA as being in compliance with all applicable federal aviation safety and airworthiness requirements?

7.3.    Was the Aircraft in compliance with all federal certification and airworthiness requirements applicable to the Aircraft at the time it was sold and delivered to BCFS?

8.    <u>Intervening Cause</u>

8.1    Was the accident caused by a superseding, intervening cause, in that the flight encountered icing conditions outside the specified certification limits as defined in 14 CFR 25, Appendix C?

9.    <u>Damages</u>

9.1    The nature and extent of plaintiff's damages.

*Allan*

1.      Whether the pilot operated the aircraft in an overweight state in that the weight of the cargo on board was greater than that which the aircraft is permitted to operate.

2.      Whether the pilot supervised and/or failed to supervise the loading of the cargo into the aircraft.

3.      Whether the pilot operated the aircraft improperly in that the cargo on board was improperly distributed on the aircraft, creating an imbalanced state which interfered with its proper operation.

4.      Whether the pilot failed to conduct an appropriate pre-flight inspection for ice formation on the aircraft.

5.      Whether the pilot failed to obtain a proper pre-flight weather briefing.

6.      Whether the pilot failed to employ appropriate in-flight procedures by failing to maintain appropriate air speed.

7.      Whether the pilot failed to employ appropriate in-flight procedures by failing to maintain appropriate altitude.

8.      Whether the pilot failed to employ appropriate in-flight procedures by failing to attempt to land the aircraft in the closest available landing area.

9.      Whether the pilot experienced any conscious fear of impending injury or death prior to crashing the aircraft.

10.     Whether the pilot's survivors sustained any pecuniary damages as a result of the pilot's death.

11.     Whether the plaintiff is a proper party and/or lacks capacity to bring an action on behalf of the estate or individually.

12.     Whether the aircraft was defective in that it was not fit for flight in known icing conditions.

13.     Whether information and documentation released by Cessna to aircraft operators relating to the operation of the aircraft was accurate and, if not so, whether Cessna knew that that they were inaccurate.

*Konovalova and P'yanina cases*

1.      Whether the airplane, including its deicing system, was defective and/or unreasonably dangerous.

2.      Whether Cessna was negligent in the designing, manufacturing, and testing of the airplane.

3.      Whether the airplane was properly certified for flight into known icing conditions.

4.      Whether Cessna provided adequate instructions and warnings to pilots about flying the airplane in icing conditions.

5.      Whether the airplane, at the time it left Cessna's possession, complied with all applicable federal certification requirements and airworthiness directives.

6.      Whether the cause of the accident was the fault of P'yanin, Gun'kin, AVCOM/Evolga, Cessna, Goodrich and/or other as yet unidentified persons or parties.

7.      Whether P'yanin, Gun'kin, and/or AVCOM/Evolga were comparatively negligent.

8.      Whether any warranties existed; and, if so, whether such warranties were breached.

9.      Whether Cessna made any statements to P'yanin or Gun'kin that were false or fraudulent.

10.     The nature and extent of plaintiffs' damages, if any.

*Washington cases*

1.      Whether the incident aircraft was modified such that it was not approved for flight into known icing conditions.

2.      Whether the aircraft experienced in-flight icing conditions that caused or contributed to the accident.

3.      Whether the incident was caused by pilot error, caused by inexperience, lack of training, poor pre-flight planning, poor in-flight decisionmaking, or hypoxia.

4.      Whether the subject aircraft was reasonably safe as designed and manufactured under RCW 7.72.030.

5.      Whether Cessna provided adequate instructions and warnings under RCW 7.72.030 (1)

6.      Whether the subject aircraft was properly certified in compliance with FAA requirements.

## 9.      LEGAL ISSUES.

Plaintiffs believe that the many numerous choice of law motions that will necessarily arise after remand in individual cases must be resolved before the legal issues relating to individual cases can be resolved.  Individual case discovery which is limited and incomplete will also affect this list.  Plaintiffs reserve the right to provide this information as required by each Transferor Court after remand.  Following are the legal issues plaintiffs contend are "common" to the MDL cases:

**a.**      Did the Cessna Aircraft Company comply with its obligations and the legal requirements attendant to the FAA granting Cessna Delegated Option Authorization.

**b.**      Was Cessna's certification and testing of the 208B in compliance with industry standards and applicable regulations, statutes and advisories.

**c.**      Whether the defendant Cessna Aircraft Company acted as a reasonably prudent aircraft manufacturer in the design, development, testing, certification, marketing, sale and ongoing technical support of the Cessna 208B aircraft.

**d.**      Whether the Cessna 208B aircraft met the legally required "similarity test" based upon comparison to the Cessna 208 aircraft at the time of its certification and testing.

**e.**      Whether the defendant Goodrich Corporation acted as a reasonably prudent aircraft component manufacturer in the design, development, testing, certification, marketing, sale and ongoing technical support of the pneumatic deicing boots installed on the Cessna 208B aircraft.

**f.**     Whether the Cessna 208B aircraft is unreasonably dangerous and defective and operated for its intended purpose, flight into known icing conditions, as defined by FAR Part 25 Appendix C.

**g.**     Whether the pneumatic deicing system installed on the Cessna 208B aircraft is unreasonably dangerous and defective when operated for its intended purpose, the removal of in-flight ice from the protected surfaces of the Cessna 208B aircraft.

**h.**     Whether the violation of Federal Aviation Regulations (FAR's) constitutes a defect or evidence of a defect in a product's liability action involving a commercially certified aircraft.

**i.**     Whether violation of FAR's which are incorporated into an aircraft's certification basis renders an individual aircraft or an aircraft model defective and unairworthy.

**j.**     Whether the violation of FAR's discovered during an aircraft's operational history is both a failure to meet and a failure to maintain the aircraft's mandatory certification basis which constitutes negligence per se.

**k.**     Whether certification of the Cessna 208B aircraft with its component pneumatic deicing system is a valid, affirmative defense in a case where plaintiffs have pled not only product defect, but negligence and breach of warranty.

**l.**     Whether an Airworthiness Directive ("AD") or other mandatory, applicable government order relating to operations, procedures or limitations imposed by the aircraft certification basis changes that certification basis as a matter of law.

Defendant Cessna believes that the issues are specific to each individual case. Because case-specific discovery in the individual cases is still ongoing, these lists of issues are necessarily preliminary. At this time, Cessna believes that the following are the significant legal or evidentiary issues that will need to be resolved by either the MDL court or the court in the individual cases, whether on summary judgment motion or at trial:

96

*Villanueva, Ingram* **and** *Mountain Bird*

    1.     Whether Plaintiffs' claims are preempted by federal law.

    2.     Whether evidence of other Caravan accidents should be excluded.

    3.     Whether Plaintiffs' claims for breach of warranty are contractual and privity is required.

    4.     Whether evidence of subsequent de-icing designs/modifications to this model aircraft, such as the TKS system, is admissible at trial.

*Morris*

    1.     <u>Section 82.008, Texas Civil Practice and Remedies Code</u>

    1.1.    That Section 82.008(a) of the TCPRC applies to plaintiffs' allegations of Negligence, Breach of Warranty and Strict Product Liability as alleged in the First, Second and Third Claims for Relief of plaintiffs' Complaint.  This Section establishes a presumption that Cessna may not be liable for any injury caused by some aspect of the design of the Aircraft, where Cessna has demonstrated that the design complied with mandatory safety standards and regulations adopted and promulgated by the  Federal Aviation Agency.

    1.2.    That Section 82.008(c) of the TCPRC applies to plaintiffs' allegations of Negligence, Breach of Warranty and Strict Product Liability as alleged in First, Second and Third Claims for Relief of the plaintiffs' Complaint.  This Section establishes a presumption that Cessna may not be liable for any injury caused by some aspect of the design of the Aircraft, where Cessna has demonstrated that the Aircraft was subject to pre-market licensing or approval by the Federal Aviation Agency, and that Cessna complied with all of the FAA's requirements for such approval and that the Aircraft was approved by the FAA.

    2.     <u>FAA Preemption of Standards of Care/Standards of Design for General Aviation Aircraft</u>

    2.1.    That as alleged in paragraph 55 of Cessna's Answer, the standards for design of general aviation aircraft are a function reserved solely to the FAA.  Accordingly, design standards established by FAA regulations are preemptive of any other common law or statutory standard, and must be the

standards applied to plaintiffs' claims of negligence, breach of warranty and strict products liability.

3      Fraud as to a Certificating Federal Agency is a Claim Reserved to the Agency

3.1.    That pursuant to the doctrine set forth in (cite to Buckman case), individuals may not state a claim for fraud alleged to have been committed on a certificating agency as regards false representations of material facts made to the agency to obtain federal certification of a product.  That claim is preserved exclusively to the agency, in this case the FAA.  (full citation for Buckman)

4.     Punitive Damages Claim

4.1.    That as alleged in the Fifth Claim for Relief, plaintiffs' complaint fails to state a claim upon which relief can be granted.  In particular the Fifth Claim for Relief does not sufficiently identify the specific conduct for which exemplary damages may be recovered under Chapter 41 of the Texas Civil Practices and Remedies Code.

*Silvey*

1.     Section 82.008, Texas Civil Practice and Remedies Code

1.1.    That Section 82.008(a) of the TCPRC applies to plaintiffs' allegations of Negligence, Negligence per se, Breach of Warranty and Strict Product Liability as alleged in paragraphs 15, 16, 17, 18 and 19 of plaintiffs' Petition.  This Section establishes a presumption that Cessna may not be liable for any injury caused by some aspect of the design of the Aircraft, where Cessna has demonstrated that the design complied with mandatory safety standards and regulations adopted and promulgated by the Federal Aviation Agency.

1.2.    That Section 82.008(c) of the TCPRC applies to plaintiffs' allegations of Negligence, Negligence per se, Breach of Warranty and Strict Product Liability as alleged in paragraphs 15, 16, 17, 18 and 19 of plaintiffs' Petition.  This Section establishes a presumption that Cessna may not be liable for any injury caused by some aspect of the design of the Aircraft, where Cessna has demonstrated that the Aircraft was subject to pre-market licensing or approval by the Federal Aviation Agency, and that Cessna complied with all of the FAA's requirements for such approval and that the Aircraft was approved by the FAA.

2.      <u>FAA Preemption of Standards of Care/Standards of Design for General Aviation Aircraft</u>

2.1.    That as alleged in paragraphs 4.7 and 4.8 of Cessna's Answer, the standards for design of general aviation aircraft are a function reserved solely to the FAA.  Accordingly, design standards established by FAA regulations are preemptive of any other common law or statutory standard, and must be the standards applied to plaintiffs' claims of negligence, negligence per se, warranty and strict products liability.

3.      <u>Breach of Federal Aviation Regulations Constitutes Negligence per se</u>

3.1.    That any breach of 49 USC 44711(a)(5), 14 CFR 119.33(b), or 14 CFR 135 by Silvey, BFCS or Fry which is found to have proximately caused or contributed to the accident constitutes negligence per se, in that Silvey, as an occupant of the Aircraft, was a member of the public intended to be protected by the referenced statutes or regulations, notwithstanding that it may be his violation of the statute or regulation which caused the accident.

### *Allan*

1.      Whether the plaintiff is a proper person to prosecute a civil action in New York State on behalf of the pilot's Estate and individually.

2.      Whether the law of the Manitoba province of Canada, the New Brunswick Province of Canada or the law of Kansas should be applied to some or all of plaintiff's claims.

3.      Whether, for those claims to be decided pursuant to Canadian law, the action is to be tried as a bench trial.

4.      Whether plaintiff's acceptance of other benefits available in Canada bars plaintiff from obtaining damages herein.

5.      Whether pursuant to Canadian law the pilot is ultimately responsible for the manner in which cargo is loaded on the aircraft.

6.      Whether Cessna's post-accident recommendations for modifications to the aircraft the type of which is in issue in this action are admissible at trial.

7.      Whether any or all of plaintiff's claims are barred as preempted.

8.      Whether plaintiff can at trial establish a *prima facie* case of fraud.

9.      Whether plaintiff can at trial establish a *prima facie* case supporting plaintiff's claim for punitive damages.

***Konovalova and P'yanina cases***

1.      Whether plaintiffs' claims are preempted by federal law.

2.      Whether evidence of other Caravan accidents should be excluded.

3.      Whether Plaintiffs' claims for breach of warranty are contractual and privity is required.

4.      Whether evidence of subsequent de-icing designs/modifications to this model aircraft, such as the TKS system, is admissible at trial.

5.      Whether evidence of the NTSB's findings in connection with the accident are admissible at trial.

6.      Whether expert witnesses may rely on the NTSB's findings in connection with the accident.

7.      Whether Russian substantive law will apply to plaintiffs' claims.

***Washington cases***

1.      Whether FAA certification of the Cessna 208B is an absolute defense to plaintiffs' product liability claims.

2.      Whether Cessna's alleged misconduct related to certification of the aircraft and related to pilot training proximately caused plaintiffs' alleged damages.

## 10.   DAMAGES.

### a.   Plaintiff's Damages.

The present proceedings have been limited to the discovery and pre-trial management of common issues of liability as defined by the orders of this MDL Court. Individual case discovery, including damages discovery for each of the nineteen Plaintiffs' decedents has been largely delayed until remand to the transferor courts of original filing. Consequently choice of law issues with respect to compensatory, non-economic, immediate, exemplary, and punitive damages have not been raised or resolved. The determination, forecast and expert testimony necessary to establish individual damages has not even begun.

In light of the above, Plaintiffs jointly reserve their objection to the requested statement of damages in this pre-trial order and further reserve the right to amend, specify and change all aspects of this damages estimate upon the completion of discovery, the resolution of applicable choice of law issue and in conformity with the orders of the transferor courts after remand.

States and other jurisdictions which may determine damages according to their laws include: Texas; Utah; Idaho; Washington State; New York; Kansas; Ohio; Manitoba, Canada; Nova Scotia, Canada; and the Russian Federation.

Damages in each individual case may include:

- **Economic Damages** may be defined under the various state laws as: loss of earnings, loss of earnings capacity, loss of anticipated earnings, loss of inheritance, loss of accumulations, loss of benefits, loss of services and/or loss of the enjoyment of life.
- **Non-Economic Damages** may be defined under the various state laws as: loss of society and companionship, loss of comfort, loss of care, protection and companionship, loss of love, loss of the guidance of a parent, loss of the love care and affection of a child, loss of consortium and/or the loss of training, care and guidance.
- **Exemplary Damages and/or Punitive Damages** may be defined under the various state laws as: damages to punish a tortfeasor for conduct that is beyond negligence and is willful, wanton, reckless, and grossly negligent or which represents behavior and conduct done with a total disregard for the lives and safety of the victims.
- **Immediate Damages** may be defined under the various state laws as fixed damages such as, funeral bills, the costs of final arrangements, transportation and medical expenses incurred after injury but before the decedent's passing.

**1. Damages for the wrongful death of FRED VILLANUEVA:**
- Economic
- Non-Economic
- Exemplary or Punitive
- Immediate Damages
- Total Damages sought:          $14,000,000.00

**2. Damages for the wrongful death of RAYMOND J. INGRAM:**
- Economic
- Non-Economic
- Exemplary or Punitive
- Immediate Damages
- Total damages sought:          $17,500,000.00

101

**3.  Damages for the wrongful death of NANCY CHASE ALLAN:**
- Economic
- Non-Economic
- Exemplary or Punitive
- Immediate Damages
- Total damages sought:      $5,000,000.00

**4.  Damages for the wrongful death of IRINA N. KONOVALOVA:**
- Economic
- Non-Economic
- Exemplary or Punitive
- Immediate Damages
- Total Damages sought:      $7,500,000.00

**5.  Damages for the wrongful death of VASILY V. SIDIROV:**
- Economic
- Non-Economic
- Exemplary or Punitive
- Immediate Damages
- Total damages sought:      $5,000,000.00

**6.  Damages for the wrongful death of NADEZHDA L. BALDAEVA:**
- Economic Damages
- Non-Economic
- Exemplary or Punitive
- Immediate Damages
- Total damages sought:      $5,000,000.00

**7.  Damages for the wrongful death of GENNADY VIKTOROVICH P'YANIN:**
- Economic Damages
- Non-Economic
- Exemplary or Punitive
- Immediate Damages
- Total damages sought:      $7,500,000.00

**8.  Damages for the wrongful death of OLEG BORISOVICH GUN'KIN:**
- Economic Damages
- Non-Economic
- Exemplary or Punitive
- Immediate Damages
- Total damages sought:      $7,500,000.00

**9.  Damages for the wrongful death of WADE SILVEY:**
-   Economic Damages
-   Non-Economic
-   Exemplary or Punitive
-   Immediate Damages
-   Total damages sought :      $12,000,000.00 (compensatory)
                                          $5,000,000.00 (punitive)

**10.** Damages for the wrongful death(s) of Ralph Abdo, Landon Atkin, Michelle Barker, Casey Craig, Cecil Elsner, Bryan Jones, Hollie Rasberry, Jeff Ross and Andrew Smith cannot be estimated or forecast at the present time and will be prepared as a supplement to this Pre-Trial Order as required by the transferor courts after remand.

Plaintiffs' counsel believes that each of the nine Plaintiffs' claims arising out of the Naches, Washington Caravan 208B accident on October 7, 2007 will have total compensatory damages loss in excess of $7,000,000.00 and may have significant punitive damages recovery at trial.[4]

**11. Personal injury damages claims of JOHN and ROSE MORRIS:**
-   Medical Expenses
-   Physical and Emotional Pain and Suffering
-   Total Permanent Physical Disability
-   Loss of Earnings Potential
-   Loss of Consortium, husband and wife
-   Loss of Enjoyment of Life
-   Punitive Damages
-   Total damages sought:      $ 25,000,000.00 (compensatory)
                                          $10,000,000.00 (punitive)

**12. Personal injury damage claims of STEPHEN and DIANE FLECK:**
-   Medical Expenses
-   Physical and emotional Pain and Suffering
-   Partial Temporary Disability
-   Loss of Earnings
-   Loss of Consortium of Husband and Wife
-   Punitive Damages

---

[4]Plaintiffs' punitive damages claim has been dismissed.  Memorandum and Order of February 5, 2009.  Doc. 740.  Plaintiffs will file a motion for reconsideration of this Order within the time proscribed by the local rules.

-       Total Damages sought:       $10,000,000.00 (compensatory)
                                    $ 5,000,000.00 (punitive)

**13.  Property Damage Claims (loss of aircraft) of BROWN COUNTY FINANCIAL:**
-       Damages $1.7 million

The above figures in each case are damages forecast as of the date of this MDL Pre-Trial Order which do not reflect choice of law motion practice, completed discovery and are not to be construed as demands for settlement.

Cessna objects to the generality of plaintiffs' damages information and requests the Court to require plaintiffs to produce more specific damages figures for each case. Plaintiffs' suggestion that they are unable to provide such information because *defendants* have not yet completed damages discovery is without merit.  Information regarding the extent of plaintiffs' damages is within the knowledge, possession and control of plaintiffs.

Plaintiffs object to the language above and further object to providing further more detailed damage information at this time. Memorandum and Orders such as Doc. 740 which struck punitive and fraud claims from the Naches, Washington cases on February 5, 2009 is the best example of the futility of this request at this time.  That Order demonstrates that motion practice and choice of law determinations that have not even been raised can rapidly change the information that would need to be cited to accomplish Cessna's degree of desired detail. It is premature, speculative and futile. Further it makes unnecessary work at a time when motion practice is filling substantially all of the parties time.

**b.      Defendant Cessna's Damages.**

None claimed.

104

      **c.**      **Defendant Goodrich's Damages.**

      None claimed.

      **d.**      **Defendant Brown County Financial's Damages.**

      Brown County is no longer a defendant.

**11.**      **NON-MONETARY RELIEF REQUESTED, IF ANY.**

      None.

**12.**      **AMENDMENTS TO PLEADINGS.**

      None.

**13.**      **DISCOVERY.**

      Under the scheduling order and any amendments, all discovery to be done in the MDL was to have been completed by November 21, 2008.  Cessna believes that MDL discovery is complete.  Plaintiffs believe that discovery is incomplete, in that: 1) the question of the deposition of Steve McNew has not been resolved; 2) plaintiffs' Motion to Compel with respect to the proposed Service Bulletin tool has not been resolved; and 3) all parties continue to recognize that responsibility to supplement previously propounded discovery.

      Case specific discovery in any particular case may continue after that case is remanded to the transferor court.

      Unopposed discovery may continue in the MDL after the deadline for completion of discovery so long as it does not delay the briefing of or ruling on dispositive motions, or other pretrial preparations.  Under these circumstances, the parties may conduct

discovery beyond the deadline for completion of discovery in the MDL if all parties are in agreement to do so, but the court will not be available to resolve any disputes that arise during the course of this extended discovery.  Plaintiffs believe that this court should consider ongoing discovery disputes that are noted above as incomplete, if it is necessary to prevent manifest injustice.

## 14.   WITNESSES AND EXHIBITS.

**a.    Final Witness and Exhibit Disclosures Under Rule 26(a)(3).**  Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, this Court will not set a deadline for final witness and exhibit disclosures pursuant to Fed. R. Civ. P. 26(a)(3)(A).  The transferor courts may set those deadlines for each individual case after it is remanded.

**b.    Objections.**  Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, this Court will not set a deadline for objections under Fed. R. Civ. P. 26(a)(3)(B).  The transferor courts may set these deadlines for each individual case after it is remanded.

**c.    Marking and Exchange of Exhibits.**  Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, this Court will not set out procedures and deadlines for the marking and exchange of exhibits. The transferor courts may set those deadlines for each individual case after it is remanded.

      **d.**    **Designations of Deposition Testimony.**

         **(1)**    <u>**Written Depositions.**</u>  Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, this Court will not set a deadline and procedures for deposition designations, objections and counter designations.  The transferor courts may set those deadlines and procedures for each individual case after it is remanded.

         **(2)**    <u>**Videotaped Depositions.**</u>  Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, this Court will not set a deadline and procedures for videotaped deposition designations, objections and counter designations.  The transferor courts may set those deadlines and procedures for each individual case after it is remanded.

**15.**    **MOTIONS.**

      **a.**    **Pending Motions.**

         **i.**    Motion for Separation of the Issue of Airworthiness Pursuant to Fed. R. Civ. P. 42(b) by plaintiffs (*all MDL cases*, Doc. 604, filed 10/17/08)

         **ii.**    Motion in Limine to Exclude NTSB Reports and Related Documents by Cessna (*all MDL cases*, Doc. 640, filed 12/3/08)

         **iii.**    Motion in Limine to Exclude Expert Testimony of Peter H. Hildebrand by Cessna, joined by Goodrich (*all MDL cases*, Doc. 658, filed 12/22/09)

         **iv.**    Motion in Limine to Exclude Testimony of William D. Waldock by Cessna, joined by Goodrich (*all MDL cases*, Doc. 661, filed 12/28/08)

         **v.**    Motion to Strike NTSB General Counsel's Letter Dated 10/14/08 by plaintiffs (*all MDL cases*, Doc. 664, filed 12/30/08)

vi.      Motion to Lift Protective Order as to Certain Cessna Documents by plaintiffs (*all MDL cases*, Doc. 669, filed 1/5/09)

vii.     Motion in Limine to Exclude Testimony of William R. Twa, Jr. by Cessna, joined by Goodrich (*all MDL cases*, Doc. 674, filed 1/6/09)

viii.    Motion in Limine to Exclude Testimony of Douglas R. Herlihy by Cessna, joined by Goodrich (*all MDL cases*, Doc. 698, filed 1/26/09)

ix.      Motion in Limine to Exclude Testimony of William J. Rieke by Cessna, joined by Goodrich (*all MDL cases*, Doc. 700, filed 1/26/09)

x.       Motion in Limine to Exclude FAA Documents by Cessna (*all MDL cases*, Doc. 707, filed 1/26/09)

xi.      Motion for Leave to File Documents Under Seal by plaintiffs (*all MDL cases*, Doc. 717, filed 1/29/09)

xii.     Motion for Partial Summary Judgment Against Brown County Financial Services, L.L.C. by Cessna, joined by Goodrich (*Silvey*, Doc. 718, filed 1/30/09)

xiii.    Motion In Limine To Preclude Expert Testimony Faulting Goodrich For The Allegedly Defective Design Of The Cessna Caravan 208B by Goodrich (*all MDL cases*, Doc. 721, filed 1/30/09)

xiv.     Motion in Limine to Exclude Testimony of Alan Strudler by Cessna, joined by Goodrich (*all MDL cases*, Doc.722, filed 1/30/09)

xv.      Motion in Limine to Exclude Testimony of Ronald O. Stearman by Cessna, joined by Goodrich (*all MDL cases*, Doc. 724, filed 1/30/09)

xvi.     Motion in Limine to Exclude Testimony of Edward W. Holmes by intervenor plaintiff Silvey (*all MDL cases*, Doc. 729, filed 1/30/09)

xvii.    Motion for Summary Judgment on Issue of Airworthiness by plaintiff Abdo (*all MDL cases*, Doc. 731, filed 1/30/09)

xviii.   Motion in Limine to Exclude "Common Issue" Experts Nelson, Barnett, Holmes, Selig and McFall by plaintiff Abdo (*all MDL cases*, Doc. 733, filed 1/30/09)

      **b.**    **Additional Pretrial Motions.**

        **i.**    Plaintiffs will file a motion for reconsideration of Memorandum and Order of February 5, 2009 (Doc. 740).

The dispositive motion deadline for motions to be filed in the MDL, as established in the scheduling order and any amendments, is **January 30, 2009**.  Dispositive motions may also be filed in the individual cases in the transferor courts following remand.

Consistent with the scheduling order filed earlier in this case, the arguments and authorities section of briefs or memoranda submitted in connection with all further motions or other pretrial matters shall not exceed 30 pages, absent an order of the court.

      **c.**    **Motions Regarding Expert Testimony.**  Consistent with the scheduling order filed earlier in this case, all motions to exclude testimony of expert witnesses pursuant to Fed. R. Evid. 702-705, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), or similar case law to be filed in the MDL, shall be filed by **January 30, 2009**.  Motions to exclude the testimony of expert witnesses may also be filed in the individual cases in the transferor courts following remand.

      **d.**    **Motions in Limine.**  All motions in limine, other than those challenging the propriety of an expert witness, may be filed in the individual cases in the transferor courts following remand.

**16.**    **TRIAL.**

These cases will be remanded to the transferor courts for trial.

17.     **SETTLEMENT.**

a.     **Status of Settlement Efforts.**  Plaintiffs and Defendants have participated in mediation and in settlement discussions.  The parties will continue these discussions now and after remand in the individual cases and/or in a mutually agreeable collective format.

18.     **FURTHER PROCEEDINGS AND FILINGS.**

a.     **Status and/or Limine Conference.**   Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, this Court will not set a status and/or limine conference.  The transferor courts may set such conferences for each individual case after it is remanded.

b.     **Trial Briefs.**  Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, this Court will not set a deadline for trial briefs.  The transferor courts may set such a deadline for each individual case after it is remanded.

c.     **Voir Dire.**  Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, this Court will not set out the procedures for voir dire or any deadlines related to voir dire.  The transferor courts may set out those procedures and deadlines for each individual case after it is remanded.

d.     **Jury Instructions.**  Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, this Court will not

110

set a deadline or procedures for jury instructions.  The transferor courts may set those deadlines for each individual case after it is remanded.

## 19.   OTHER.

     **a.**     **Conventionally Filed Documents.**  Because the cases in the MDL will be remanded to their transferor courts for the remaining pretrial proceedings and trial, this Court will not set out requirements for the service of conventionally-filed documents. The transferor courts may set out such requirements for each individual case after it is remanded.

     **b.**     **Miscellaneous.**

     The following orders shall apply:

     (i)     All discovery on individual case issues may continue until remand and after remand until the court on remand determines that it should be concluded.  (Doc. 463.)

     (ii)     Discovery taken in the MDL, including written discovery and depositions, may be used by any party to any case which has been or is in the future transferred to the MDL.  (Doc. 463.)

     (iii)     No party in any case currently pending in the MDL or which is transferred to the MDL in the future shall repeat written discovery or depositions which have already been done in the MDL.  Parties in cases currently pending in the MDL or which are transferred to the MDL in the future may propound written discovery or take additional depositions of the same witnesses, limited to new matters only.  (Doc. 463.)

(iv)   Expert disclosures made in the MDL on "common MDL issue" expert witnesses shall be binding in all cases currently pending in the MDL and in cases which are transferred to the MDL in the future.  (Doc. 463.)  Plaintiffs do not agree that cases filed after the date of this pretrial order should be bound by the expert disclosures made in the MDL, inasmuch as those Plaintiffs and their representative counsel will not have been of record or consenting to the disclosures made while their case was an "MDL" case.

(v)   "Common MDL issue" expert witnesses are those who are reasonably expected to offer testimony or opinions on the following:  (a) design, testing, certification, manufacture, or operation of the Cessna Caravan 208 series aircraft or its components,[5] (b) aircraft performance during icing conditions, (c) corporate risk management, (d) corporate organization, (e) response to product claim issues, and (f) statistical and trend analysis on aircraft accident data.  Doc. 291.[6]

(vi)   The current or former employees of a defendant corporation shall not be considered defendants' "common issue" experts and are therefore excluded from disclosure and discovery as expert witnesses in the MDL.  Doc. 243.  However,

---

[5]   For example, all experts retained by plaintiffs to offer testimony or opinions on aircraft certification; the Delegation Option Authorization system; aircraft aerodynamics; aircraft design; warnings, including format, location and content of placards and information contained in the aircraft Pilot's Operating Handbook/Airmen's Flight Manual; flight testing, anti-ice and de-icing system design, testing, and performance; and flight into known icing (FIKI) certification.

[6]   See April 24, 2007 Discovery Order (Doc. 208) and Stipulated Order on Disclosure and Discovery of Expert Witnesses in the MDL Proceedings (Doc. 243).

defendant's employees, if called in an individual case to offer expert opinions, must be disclosed and identified as expert witnesses in individual cases after remand as any other expert witness would be.

(vii)   Expert witnesses expected to offer opinions or testimony on issues unique to each individual accident and not listed in paragraph (v) above shall be disclosed and made available for discovery after the cases have been remanded from the MDL to the transferor districts.  Such "case specific" experts will include those offering testimony or opinions on pilot performance; accident reconstruction; weather; accident aircraft maintenance; system performance, including engine and deicing system performance; accident investigation; crew resource management; human factors; economics and accounting (damages); medicine; and psychology.  (Doc. 243.)

(viii)   Summary judgment motions, as well as motions to exclude testimony of expert witnesses, evidentiary and other individual motions may also be filed in the individual cases in the transferor courts following remand.  Doc. 463.

(ix)   The MDL Plaintiffs may use the depositions taken of Cessna employees in *Cox v. Cessna Aircraft Co.*, Case No. CV-04-525019 (Court of Common Pleas, Cuyahoga County, Ohio); *O'Neill v. Cessna Aircraft Co.*, Case No. CV-03-974 (Circuit Court of Jefferson County, Alabama) and *Fry v. Cessna Aircraft Co.*, Case No. 67-199130-03 (District Court, Tarrant County, Texas) (collectively, the "Designated Cases") as if taken in the MDL.  (Doc. 146.)

113

(x)     Plaintiffs will not be permitted to re-depose those Cessna employees already deposed in the Designated Cases, except on matters which have arisen since the dates of their depositions in the Designated Cases.  (Doc. 146.)

(xi)    The parties have not waived any objections to any questions asked at the depositions in the Designated Cases, whether as to form or otherwise, and the parties may raise any objections to the admissibility of the testimony in the depositions at the trials of the MDL actions.  (Doc. 146.)

(xii)   Nothing in paragraphs (ix) through (xii) limits the parties' ability to call witnesses at trial whether or not a witness was previously deposed.  (Doc. 146.)

20.     POSSIBLE ADJUSTMENT OF DEADLINES BY TRIAL JUDGE.

Not applicable.

IT IS SO ORDERED.

Dated this 25th day of February, 2009, at Kansas City, Kansas.


s/ Kathryn H. Vratil
Kathryn H. Vratil, Chief Judge
U.S. District Court, District of Kansas

114

| SUMMARY OF DEADLINES AND SETTINGS | |
|---|---|
| Event | Deadline/Setting |
| Extended deadline to complete any remaining discovery (if applicable) | To be determined by transferor judge after remand |
| Mediation/settlement conference (if applicable) | N/A |
| Dispositive motions (e.g., summary judgment) | 1/30/09 |
| Motions challenging admissibility of expert testimony | 1/30/09 |
| Trial | To be determined by transferor judge after remand |
| Status and/or limine conference (if presently set) | To be determined by transferor judge after remand |
| Final witness & exhibit disclosures | To be determined by transferor judge after remand |
| Objections to final witness & exhibit disclosures | To be determined by transferor judge after remand |
| Exhibits marked | To be determined by transferor judge after remand |
| Deposition testimony designated | To be determined by transferor judge after remand |
| Objections to deposition designations, along with any counter-designations | To be determined by transferor judge after remand |
| Objections to counter-designations of deposition testimony | To be determined by transferor judge after remand |
| Submission of disputed deposition designations to trial judge | To be determined by transferor judge after remand |
| Motions in limine | To be determined by transferor judge after remand |
| Briefs in opposition to motions in limine | To be determined by transferor judge after remand |
| Proposed jury instructions | To be determined by transferor judge after remand |

| | |
|---|---|
| Objections to proposed jury instructions | To be determined by transferor judge after remand |
| Preliminary sets of proposed findings of fact and conclusions of law in bench trials | To be determined by transferor judge after remand |