**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: CESSNA 208 SERIES AIRCRAFT ) <br> PRODUCTS LIABILITY LITIGATION ) <br> ) <br> ) <br> (This Document Relates To All Cases) ) <br> _____ ) | MDL No: 1721 <br><br> Case No: 05-md-1721-KHV |

**MEMORANDUM AND ORDER**

This matter involves several air disasters involving the Cessna 208 Series aircraft. Plaintiffs filed suit against Cessna Aircraft Company and Goodrich Corporation seeking damages for personal injuries and wrongful death. The Judicial Panel on Multidistrict Litigation ("MDL Panel") later transferred the various actions to this Court for consolidated pretrial proceedings. This matter is before the Court on <u>Cessna Aircraft Company's Motion In Limine To Exclude NTSB Reports And Related Documents</u> (Doc. #640) filed December 3, 2008. For reasons stated below, the Court sustains Cessna's motion.[1]

**Factual Background**

Plaintiffs allege product liability claims on behalf of themselves and the estates of decedents. In particular, plaintiffs allege that ice accumulation on the Cessna 208 Caravan aircraft was a factor in various crashes. Plaintiffs allege that Cessna and Goodrich negligently designed and/or manufactured the de-icing system on the aircraft. Plaintiffs also allege that Cessna breached express and implied warranties and fraudulently disclosed data about the aircraft certification.

---

[1] In addition, plaintiffs seek to strike a letter from the general counsel for the National Transportation Safety Board ("NTSB") which Cessna included as an exhibit to its memorandum in support of its motion in limine. See <u>Plaintiffs' Motion To Strike National Transportation Safety Board General Counsel's Letter Dated October 14, 2008</u> (Doc. #664) filed December 30, 2008. Because the Court need not consider the letter to resolve the pending motion in limine, the Court overrules plaintiffs' motion to strike as moot.

## **Analysis**

When civil actions involving one or more common questions of fact are pending in different districts, the MDL Panel may transfer such cases to any district for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). At or before the conclusion of such pretrial proceedings, the MDL Panel must remand each action so transferred to the district from which it was transferred unless it shall have been previously terminated. Id. The statute essentially charges that before the MDL Panel transfers a case back to the original court, the transferee court must get it "trial-ready." Solis v. Lincoln Elec. Co., No. 04-cv-17363, 2006 WL 266530, at *3 (N.D. Ohio Feb. 1, 2006). The Supreme Court has emphasized that a district court conducting MDL pretrial proceedings has no authority to transfer the cases to itself under Section 1404(a), but instead – upon completion of consolidated pretrial proceedings – must remand any remaining actions to their originating courts for trial. Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 34-35 (1998).

Part of this Court's duty to get cases "trial-ready" includes evidentiary rulings on common issues. The purpose of a motion in limine is to aid the trial process by enabling the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." United States v. Cline, 188 F. Supp.2d 1287, 1291 (D. Kan. 2002) (quoting Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996)) (further citations omitted). Pretrial rulings often may save time at trial, as well as save the parties time, effort and cost in trial preparation. See Cline, 188 F. Supp.2d at 1291. The Court recognizes that in many cases, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context. See Sperberg v. Goodyear

Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975) (though in limine rulings can save time, cost, effort and preparation, court usually better situated during trial to assess evidence); Rettiger v. IBP, Inc., No. 96-4015-SAC, 1999 WL 318153, at *2 (D. Kan. 1999) (court almost always better situated during actual trial to assess value and utility of evidence).

Here, in all cases, plaintiffs intend to introduce as evidence or have witnesses testify about (1) NTSB Safety Recommendation A-04-64 through A-04-67 dated December 15, 2004; (2) NTSB Most Wanted Transportation Safety Improvements 2004, 2005 and 2006 ("Most Wanted Lists"); and (3) NTSB Icing Assessment, Cessna 208, dated April 15, 2004.[2] Cessna seeks to exclude these NTSB documents. In an effort to provide guidance before trial, the Court makes the following tentative findings and rulings. These rulings are subject to evidence which the parties present at trial and further legal argument at trial.

Federal law prohibits the use of an NTSB report. See 49 U.S.C. § 1154(b). In particular, "[n]o part of a report of the Board, related to an accident or an investigation of an accident, may be admitted into evidence or used in a civil action for damages resulting from a matter mentioned in the report." Id. By regulation, the NTSB defines a "board accident report" as a "report containing the Board's determinations, including the probable cause of an accident, issued either as a narrative report or in a computer format ("briefs" of accidents)." 49 C.F.R. § 835.2. By regulation, the NTSB notes that under Section 1154(b), "no part of a Board accident report may be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such reports." Id. The NTSB, however, does not object to admission in litigation of "factual accident reports," i.e.

---

[2] All of the documents are related. The Safety Recommendations were based in part on the Icing Assessment. Likewise, the Most Wanted Lists were based in part on the Safety Recommendations and Icing Assessment.

-3-

reports containing the results of an investigator's investigation of the accident. Id.

Plaintiffs argue that the Safety Recommendations, Most Wanted Lists and Icing Assessment are not NTSB "reports" within the meaning of 49 U.S.C. § 1154(b). Indeed, the documents do not squarely qualify as either "board accident reports" or "factual accident reports" as defined by NTSB regulations. Even so, the Safety Recommendations appear to be reports of the Board as NTSB members approved them and the Chairman of the NTSB signed them. See Exhibits 2 and 3 to Index Of Exhibits To Cessna's Memorandum In Support Of Its Motion In Limine to Exclude NTSB Reports And Related Documents (Doc. #641-2). The Most Wanted Lists are power point presentations by NTSB staff members "to increase the public's awareness of, and support for, action to adopt safety steps that can help prevent accidents and save lives." See Exhibits 4, 5 and 6 to Doc. #641-2. The Most Wanted Lists refer to the Safety Recommendations which the NTSB issued in December of 2004 as well as proposed NTSB actions, and they reflect Board opinion on the most urgent safety improvements. See id. Though similar to Board reports, the Most Wanted Lists do not appear to qualify as "reports" within the meaning of 49 U.S.C. § 1154(b) because they do not reflect that the entire Board approved them. See id. Finally, the NTSB Icing Assessment is a power point presentation which is a compilation of data and assessments from the NTSB Office of Aviation Safety with input from the Federal Aviation Administration ("FAA") and Cessna. See Exhibit 7 to Doc. #641-2. The NTSB Office of Aviation Safety apparently presented the assessment at a meeting with FAA and Cessna employees on April 15, 2004. On its face, the Icing Assessment is not a report of the Board because the Board did not specifically approve it.

The characterization of the Safety Recommendations, Most Wanted Lists and Icing Assessment is not dispositive because large portions of the documents – whether or not labeled as

Board reports – are subject to exclusion under Rule 403, Fed. R. Evid., in part based on the very policy reasons behind the statute which excludes NTSB reports. In the Tenth Circuit, "factual portions" of an NTSB report are admissible in civil suits.[3] Mullan v. Quickie Aircraft Corp., 797 F.2d 845, 848 (10th Cir. 1986); see Keen v. Detroit Diesel Allison, 569 F.2d 547, 549-51 (10th Cir. 1978); In re Air Crash Disaster at Stapleton Int'l Airport, Denver Colo., On November 15, 1987, 720 F. Supp. 1493, 1496 (D. Colo. 1989); see also Thomas Brooks Chtd. v. Burnett, 920 F.2d 634, 647 (10th Cir. 1990) (only "factual aspects" of NTSB report may be used). In contrast, courts exclude the parts of NTSB reports which contain "agency conclusions on the probable cause of accidents." Mullan, 797 F.2d at 848.

In addition to the statutory exclusion of board accident reports from evidence in civil suits, NTSB employees may testify only about firsthand information which they obtained during an investigation that is not reasonably available elsewhere, including observations recorded in their own factual accident reports. 49 C.F.R. § 835.3(c). Current Board employees cannot testify about other employee reports, "or other types of Board documents, including but not limited to safety recommendations, safety studies, safety proposals, safety accomplishments, reports labeled studies,

---

[3] Some courts have suggested that the Tenth Circuit rule is erroneous in light of the plain meaning of the statute which precludes all use of the NTSB report. See Chiron Corp. & Perseptive Biosystems, Inc. v. NTSB, 198 F.3d 935, 940-41 (D.C. Cir. 1999) (explaining error in judicial "exception" to Section 1154(b) recognized in earlier decisions); Campbell v. Keystone Aerial Surveys, Inc., 138 F.3d 996, 1001 (5th Cir. 1998) (federal law flatly prohibits NTSB accident report from being admitted into evidence in suit for damages arising out of accidents investigated by NTSB); Benna v. Reeder Flying Serv., Inc., 578 F.2d 269, 271 (9th Cir. 1978) (unquestionable error for jury to view NTSB accident report because report inadmissible by statute); In re Lawrence W. Inlow Accident Litig., No. IP-99-0830-C, 2002 WL 970403, at *2 (S.D. Ind. Apr. 16, 2002), aff'd, 378 F.3d 682 (7th Cir. 2004). The Court need not address this apparent conflict because the NTSB documents should be excluded in any event under Rule 403, Fed. R. Evid. The Court merely notes the rule as to exclusion of NTSB reports to explain the policy reasons for excluding such reports and other NTSB opinion documents.

and analysis reports, as they contain staff analysis and/or Board conclusions." Id.; see 49 C.F.R. § 835.3(b) (Board employees shall decline to testify beyond scope of their investigation and shall not give expert or opinion testimony). The purpose of the statutory and regulatory limitations on judicial use of Board documents and testimony of Board employees is to "ensure that the time of Board employees is used only for official purposes, to avoid embroiling the Board in controversial issues that are not related to its duties, to avoid spending public funds for non-Board purposes, to preserve the impartiality of the Board, and to prohibit the discovery of opinion testimony." 49 C.F.R. § 835.1.

Several courts have excluded NTSB Safety Recommendations as reports of the Board under Section 1154(b).[4] Even if the Court assumes that Section 1154(b) permits use of NTSB documents at trial and that plaintiffs can satisfy the hearsay exception for public records under Rule 803(c), Fed. R. Evid., the Court finds under Rule 403, Fed. R. Evid., the probative value of the NTSB Safety Recommendations, as well as the Most Wanted Lists and Icing Assessment, is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. The NTSB prepared these documents to fulfill its statutory mission of formulating safety recommendations in a neutral, calm and scientific atmosphere, not to determine the legal liability

---

[4] See In re Air Crash at Lexington, Ky., Aug. 27, 2006, No. 5:06-CV-316, 2008 WL 2796875, at *4-5 (E.D. Ky. July 18, 2008) (excluding all Safety Recommendations, even those pre-dating accident, as reports of Board); In re Air Crash Near Peixoto de Azeveda, Brazil, on Sept. 29, 2006, No. 07-MD-1844 (MBC), 2008 WL 4093568, at *4 (E.D.N.Y. July 2, 2008) (refusing to admit NTSB Safety Recommendations under "plain language" of Section 1154(b)); In re Jacoby Airplane Crash Litig., No. 99-6073 (HAA), 2007 WL 2746833, at *9-10 (D.N.J. Sept. 19, 2007) (NTSB Safety Recommendation subject to categorical bar of Section 1154(b)); Petroleum Helicopters, Inc. v. Rolls-Royce Corp., No. 1:05-CV-0410-LJM-WTL, 2007 WL 2249118, at *8 (S.D. Ind. Aug. 2, 2007) (NTSB Safety Recommendation is opinion of NTSB, which by regulation, is type of information Section 1154(b) designed to keep out of trial).

of a particular party. See Thomas Brooks, 920 F.2d at 646 (NTSB "has no role in determining civil liability"). The NTSB itself attempts to avoid embroiling itself in private legal controversies and seeks to maintain impartiality. See 49 C.F.R. § 835.1. The NTSB documents are largely staff opinions about how to address icing on the Cessna 208 Series aircraft. The Icing Assessment appears to reflect an interim opinion of NTSB staff members. NTSB regulations prohibit NTSB employees from testifying about these opinions so it would make little sense for the Court to admit documents containing staff opinions under the guise that they also contain some factual matters. Moreover, under NTSB regulations, Cessna could not examine NTSB employees about any opinions expressed in the documents. Finally, the NTSB documents are based largely on reports of witnesses and other hearsay which the Court ordinarily would not admit at trial. To present the NTSB documents as "official" or "government" reports on various accidents would give them undue weight and tend to mislead the jury. See Thomas Brooks, 920 F.2d at 646 (NTSB investigation is forum for developing safety recommendations, not show for audience of silent note takers looking for someone to sue). The Court therefore finds that the NTSB Safety Recommendations, Most Wanted Lists and Icing Assessment should be excluded at trial.[5] See In re Air Crash Near Roselawn, Ind. On October 31, 1994, No. 95-C-4593, 1997 WL 572896, at *1 (N.D. Ill. Sept. 10, 1997) (excluding FAA Airworthiness Directives and Flight Safety Information Bulletins and NTSB Safety Recommendations as each government agency subject to different agenda and fact-finding methodology which could undermine and confuse jury's distinct function).

The Court agrees substantially with the reasoning of the Second Circuit in addressing a

---

[5] The Court notes that ten Cessna employees attended the presentation of the Icing Assessment along with FAA and NTSB employees. Cessna has not sought to exclude testimony of Cessna employees about the Icing Assessment presentation.

similar issue as follows:

> [T]he district court did not abuse its discretion in holding, in the alternative, that the report [prepared by the staff of the Urban Mass Transit Administration ("UMTA")] should be excluded under Fed. R. Evid. 403 because the likelihood that it would confuse the jury and protract the proceedings outweighed its probative value. United States v. Robinson, 560 F.2d 507 (2 Cir. 1977), cert. denied, 435 U.S. 905 (1978). Judge Weinfeld's decision represented an eminently sound exercise of discretion. First, the report was prepared for very different purposes tha[n] those for which it was offered at trial. The UMTA staff was attempting to determine the quickest solution for an immediate safety problem, and not whether The City of New York and The Transit Authority would get what they bargained for - subway cars which would be safe and dependable for up to 35 years. Second, as a so-called government report which in fact was incomplete and based largely on hearsay, the report would have been presented to the jury in "an aura of special reliability and trustworthiness" which would not have been commensurate with its actual reliability. United States v. Fosher, 590 F.2d 381, 383 (1 Cir. 1979); see United States v. Costello, 221 F.2d 668, 674 (2 Cir. 1955), aff'd, 350 U.S. 359 (1956); Weinstein and Berger, 1 Weinstein's Evidence ¶ 403(04) (1980). Third, the admission of the report would have been likely to protract an already prolonged trial with an inquiry into collateral issues regarding the accuracy of the report and the methods used in its compilation. John McShain v. Cessna Aircraft Co., 563 F.2d 632, 636 (3 Cir. 1977).

City of New York v. Pullman Inc., 662 F.2d 910, 915 (2d Cir. 1981).

Plaintiffs argue that the Court should admit factual information from the Safety Recommendations, Most Wanted Lists and Icing Assessment. To the extent that such factual information is not reasonably available elsewhere,[6] the Court agrees. See Thomas Brooks, 920 F.2d at 647; Mullan, 797 F.2d at 848; Keen, 797 F.2d at 551 (trial court did not err in permitting NTSB

---

[6] The NTSB prepared a factual accident report on each accident. Cessna has not sought to exclude the NTSB factual reports. Plaintiffs largely concede that all necessary factual information is available in these factual reports. See Plaintiffs' Memorandum In Opposition To Cessna Aircraft Company's Motion In Limine To Exclude NTSB Reports And Related Documents (Doc. #666) filed December 30, 1998 at 6 (Most Wanted Lists and Safety Recommendations contain "very same factual data contained in factual investigative reports pertaining to each individual accident in the MDL"). Therefore the Court would likely find at trial that the factual portions of the Safety Recommendations, Most Wanted Lists and Icing Assessment are cumulative and should be excluded under Rule 403, Fed. R. Evid., for that additional reason.

accident investigator and FAA maintenance supervisor to testify about observations at accident scene and manner in which they conducted investigations). At this point, however, plaintiffs have not specified what (if any) factual information they intend to offer from NTSB documents. The Court therefore excludes the NTSB documents unless and until a party can show at trial a specific need to present particular "factual portions" of the documents.

**IT IS THEREFORE ORDERED** that Cessna Aircraft Company's Motion In Limine To Exclude NTSB Reports And Related Documents (Doc. #640) filed December 3, 2008 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion To Strike National Transportation Safety Board General Counsel's Letter Dated October 14, 2008 (Doc. #664) filed December 30, 2008 be and hereby is **OVERRULED as moot**.

Dated this 27th day of April, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge