IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| IN RE: CESSNA 208 SERIES AIRCRAFT  ) | |
| PRODUCTS LIABILITY LITIGATION  ) | MDL No: 1721 |
| ) | |
| ) | Case No: 05-md-1721-KHV |
| (This Document Relates To All Cases)  ) | |
| _____) | |

**MEMORANDUM AND ORDER**

This matter involves several air disasters involving the Cessna 208 Series aircraft. Plaintiffs filed suit against Cessna Aircraft Company and Goodrich Corporation seeking damages for personal injuries and wrongful death. The Judicial Panel on Multidistrict Litigation ("MDL Panel") later transferred the various actions to this Court for consolidated pretrial proceedings. This matter is before the Court on Cessna Aircraft Company's Motion In Limine To Exclude FAA Documents (Doc. #707) filed January 27, 2009. For reasons stated below, the Court sustains Cessna's motion in part.

**Factual Background**

Plaintiffs bring suit on behalf of themselves and the estates of decedents alleging product liability claims. In particular, plaintiffs allege that ice accumulation on the Cessna 208 Caravan aircraft was a factor in various crashes. Plaintiffs allege that Cessna and Goodrich negligently designed and/or manufactured the de-icing system on the aircraft. Plaintiffs also allege that Cessna breached express and implied warranties and that it fraudulently disclosed data about the aircraft certification. Cessna seeks to exclude certain FAA documents at trial.

**Analysis**

When civil actions involving one or more common questions of fact are pending in different districts, the MDL Panel may transfer such cases to any district for "coordinated or consolidated

pretrial proceedings." 28 U.S.C. § 1407(a). At or before the conclusion of such pretrial proceedings, the MDL Panel must remand each action so transferred to the district from which it was transferred unless it shall have been previously terminated. Id. The statute essentially charges that before the MDL Panel transfers the cases back to the original court, the transferee court must get the cases "trial-ready." Solis v. Lincoln Elec. Co., No. 04-cv-17363, 2006 WL 266530, at *3 (N.D. Ohio Feb. 1, 2006). The Supreme Court has emphasized that a district court conducting MDL pretrial proceedings has no authority to transfer the cases to itself under Section 1404(a), but instead – upon completion of consolidated pretrial proceedings – must remand any remaining actions to their originating courts for trial. Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 34-35 (1998).

Plaintiffs again argue that the Court should defer ruling on this motion "pending development of evidence at trial in a particular transferor court where it may (or may not) be sought to be admitted." Plaintiffs' Response In Opposition To Defendant Cessna Aircraft Company's Motion In Limine To Exclude Certain FAA Documents (Doc. #802) filed March 16, 2009 at 2. Part of this Court's duty to get cases "trial-ready" includes evidentiary rulings on common issues. The purpose of a motion in limine is to aid the trial process by enabling the Court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." United States v. Cline, 188 F. Supp.2d 1287, 1291 (D. Kan. 2002) (quoting Palmieri v. Defaria, 88 F.3d 136, 141 (2nd Cir. 1996)) (further citations omitted). Pretrial rulings often may save time at trial, as well as save the parties time, effort and cost in preparing their cases. See Cline, 188 F. Supp.2d at 1291. The Court recognizes that in many cases, evidentiary rulings should be deferred until trial so that questions of foundation,

relevancy and potential prejudice may be resolved in the proper context. See Sperberg v. Goodyear Tire & Rubber Co., 519 F.2d 708, 712 (6th Cir. 1975) (though in limine rulings can save time, cost, effort and preparation, court is usually better situated during trial to assess evidence); Rettiger v. IBP, Inc., 1999 WL 318153, at *2 (D. Kan. 1999) (court is almost always better situated during actual trial to assess value and utility of evidence).

Here, in all cases, plaintiffs may introduce as evidence or have witnesses rely on (1) FAA Airworthiness Concern Sheet dated December 5, 2008; (2) C208 Icing Presentation by Paul Pellicano dated February 4, 2005; (3) FAA Safety Recommendation 03.266 including all initial, interim and final responses to the safety recommendation; (4) a chart titled "U.S. Icing Accident per month since 1983" contained in FAA Airworthiness Directive, AD 2005-07-11; and (5) NPRM Docket No. 99-CE-45-AD dated October 12, 1999 regarding the activation of the pneumatic boots on the Cessna Caravan 208B. Several expert witnesses for plaintiffs have relied on these documents in their expert reports. In an effort to provide guidance before trial, the Court makes the following findings and rulings. These rulings are subject to evidence which the parties present at trial.

Cessna argues that the above FAA documents should be excluded as hearsay. Plaintiffs argue that the documents are admissible under the hearsay exception for government records under Rule 803(8)(C) of the Federal Rules of Evidence.[1] A document is admissible as a government report under Rule 803(8)(C) if (1) the government agency prepared the report pursuant to authority granted

---

[1] Rule 803(8)(C) provides that the hearsay rule does not exclude:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

by law; (2) the evidence constitutes factual findings; and (3) circumstances do not indicate the report is untrustworthy. Flannery Props. v. Byrne, 216 F.3d 1087, 2000 WL 781964, at *3 (10th Cir. May 30, 2000); Perrin v. Anderson, 784 F.2d 1040, 1046-47 (10th Cir. 1986). The term "factual findings" is construed broadly and includes "conclusions and opinions found in evaluative reports of public agencies." Perrin, 784 F.2d at 1047. In determining whether the report is trustworthy, the Advisory Committee Notes to Rule 803(8)(C) state the Court may consider several factors including (1) the timeliness of the investigation, (2) the special skill or experience of the official, (3) whether a hearing was held and the level at which it was conducted and (4) possible motivation problems in preparation of the report. See id. In addition, courts consider the overall completeness and finality of a report as factors which support a report's trustworthiness. Complaint of Nautilus Motor Tanker Co., Ltd., 862 F. Supp. 1251, 1255 (D.N.J. 1994); see Coleman v. Home Depot, Inc., 306 F.3d 1333, 1342 (3d Cir. 2002); Borough of Lansdale v. PP&L, Inc., No. 02-8012, 2007 WL 2597559, at *8 (E.D. Pa. Sept. 4, 2007).

**I.      Airworthiness Concern Sheet Dated December 22, 2004**

On December 22, 2004, the FAA issued an Airworthiness Concern Sheet ("ACS") concerning the operation of the Cessna 208B in icing conditions. See ACS, Exhibit 6 to Declaration Of Paul Pellicano dated December 5, 2008 ("Pellicano Decl."), attached as Exhibit A to Reply In Support Of Cessna's Motion in Limine To Exclude FAA Documents (Doc. #838) filed April 8, 2009. The ACS noted that the FAA was considering mandating certain changes and additions to the Airplane Flight Manual limitations and normal procedures in icing conditions, including certain equipment, in order for the airplane to remain approved for flight in icing conditions. See id.

Courts routinely exclude government documents or reports which are preliminary or subject

to revision and further review because such reports are not "factual findings" and are not trustworthy. See Toole v. McClintock, 999 F.2d 1430 (11th Cir. 1993); Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1140 (5th Cir. 1983); City of New York v. Pullman Inc., 662 F.2d 910, 915 (2d Cir. 1981); Am. Marine Corp. v. Gulf III, Nos. 95-2701, 95-2756, 95-2757, 1999 WL 370588, at *2 (E.D. La. June 4, 1999); see also Smith v. Isuzu Motors Ltd., 137 F.3d 859, 862 (5th Cir. 1998) (memoranda prepared by NHTSA staff members relating to petition requesting agency to establish stability standards for certain passenger vehicles did not satisfy Rule 803(8)); Toole, 999 F.2d at 1434-35 (excluding FDA report which contained proposed findings and invited public comment and forecasted issuance of final document after more study); United Air Lines, Inc. v. Austin Travel Corp., 867 F.2d 737, 742-43 (2d Cir. 1989) (government agency reports did not satisfy Rule 803(8)(C) based in part on interim or inconclusive nature of them); Koonce v. Quaker Safety Prods. & Mfg. Co., 798 F.2d 700, 720 (5th Cir. 1986) (memo outlining future inquiries into safety measures and offering opinions on expected results not admissible under Rule 803(8)(C)); Appleby v. Glaxo Wellcome, Inc., No. 04-0062-RBK, 2005 WL 3440440, at *3 (D.N.J. Dec. 13, 2005) (hearsay exception does not apply where findings are merely proposed, tentative or second-hand); Gentile v. County of Suffolk, 129 F.R.D. 435, 458 (E.D.N.Y. 1990) (finality is consideration favoring admission).[2]

---

[2] Plaintiffs argue that courts have admitted FAA Advisory Circulars which do not constitute final FAA rules. See Plaintiffs' Response (Doc. #802) at 10-11 (citing Reliant Airlines, Inc. v. Broome County, 122 F.3d 1057, 1997 WL 416912, at *3 (2d Cir. 1997) and Muncie Aviation Corp. v. Party Doll Fleet, Inc., 519 F.2d 1178, 1180 (5th Cir. 1975)). In both Reliant and Muncie, however, the district court admitted the Advisory Circular recommendations as evidence of the standard of care. Here, plaintiffs do not purport to offer the ACS as evidence of the standard of care. In any event, Reliant and Muncie did not involve use of FAA documents to establish a product defect and neither case involved a challenge to the finality of the recommendations in the Advisory
(continued...)

Cessna argues that the ACS is not a government report under Rule 803(8)(C) because it does not reflect final findings of the FAA. Plaintiff argues that the FAA itself treated the ACS as a final document by endorsing dissemination of the technical information in the ACS to all manufacturers. Even so, the ACS itself reflects that it is not a final determination. The ACS includes a disclaimer as follows:

> At this time, the FAA has not made a determination on what type of corrective action (if any) should be taken. The resolution of this airworthiness concern could involve an AD action or an SAIB, or the FAA could determine that no action is needed at this time. The FAA's final determination will depend in part on the information received in response to this ACS.

ACS at 1. In addition, Paul Pellicano, an aerospace engineer for the FAA and author of the ACS, states that the ACS is "not a final rule and does not record any determination made by the FAA." Pellicano Decl. ¶ 30. Pellicano notes that the ACS is intended to coordinate airworthiness concerns with aircraft owners and operators before regulatory action by the FAA. Id., ¶ 29. The ACS itself primarily solicits information from associations and operators about icing on the Cessna 208 and alternatives to the proposed mandated equipment. See ACS at 3. Because the ACS is subject to revision and further review, it does not reflect FAA "findings" and is not sufficiently trustworthy under Rule 803(8)(C), Fed. R. Evid.

The Court agrees substantially with the reasoning of the Second Circuit in addressing a similar issue as follows:

---

[2](...continued)
Circulars. See Reliant, 1997 WL 416912, at *3 (Advisory Circular on maintenance of runways during bad weather used to show that airport operator negligent in failing to treat or close runway); Muncie, 519 F.3d at 1180-81 (Advisory Circular that all pilots approaching uncontrolled air fields should broadcast approach to other pilots on certain radio frequency used to show that pilot was negligent in failing to do so and failing to familiarize himself with FAA advisory materials).

> By its own terms, the UMTA report was not the final report or finding of a government agency within the meaning of the Rule, but was an "interim" staff report in the form of a recommendation to the Administrator. As an interim report subject to revision and review, the report did not satisfy the express requirement of the Rule that the proffered evidence must constitute the "findings" of an agency or official. Zenith Radio Corp. v. Matsushita Electric Industrial Co., 505 F. Supp. 1125, 1145 (E.D. Pa. 1980). In so holding, we do not rely merely on the staff's use of the term "interim," but we attach substantial significance to the fact that the report expressly declined to state a conclusion on the most significant safety question-whether the retrofitted R-46 cars would provide long-term safety, although important static and fatigue tests requested by appellees never had been performed. Accordingly, while the UMTA report included broad conclusory language which might have been used to advantage at trial, as appellants claim, a close reading of the report makes it evident that the broad language did not embody the findings of an agency, but the tentative results of an incomplete staff investigation. We hold that it was properly excluded. Pollard v. Metropolitan Life Ins. Co., 598 F.2d 1284, 1286-87 (3 Cir.), cert. denied, 444 U.S. 917 (1979).

Pullman, 662 F.2d at 914-15 (footnote admitted).

For these reasons, the Court sustains Cessna's motion in limine as to the ACS dated December 22, 2004.

**II.    Documents Related To Pellicano Icing Presentation On February 4, 2005**

On February 4, 2005, in response to NTSB Safety Recommendations concerning the Cessna Caravan 208,[3] Pellicano made a presentation to NTSB, FAA and Cessna employees about icing on the C208. See Exhibit 10 to Pellicano Decl. Pellicano discussed the NTSB Safety Recommendations issued on December 15, 2004 and feedback which the FAA had received from operators on the ACS issued December 22, 2004. See id. The charts and handouts from the presentation quote the NTSB Safety Recommendations along with the FAA response. See id. Pellicano concluded the presentation with a schedule of FAA planned airworthiness actions and

---

[3] On December 15, 2004, the NTSB issued Safety Recommendations A-04-64 through A-04-67 which addressed safety recommendations concerning the operation of the Caravan 208B in icing conditions.

future airworthiness directives.  See id.

The handouts and charts from the Icing Presentation appear to be a status report of icing issues related to the C208 airplane and a summary of public feedback, but they do not appear to reflect any final factual findings by the FAA on the issue.  See Toole, 999 F.2d at 1433-34 (assumption that government report is trustworthy substantially undermined when investigative agency culled information from outside sources for its report); Brown v. Sierra Nevada Mem. Miners Hosp., 849 F.2d 1186, 118-90 (9th Cir. 1988) (same); Appleby, 2005 WL 3440440, at *3 (excluding government documents which contain compilations of information or recommendations from outside sources including adverse event reports).  Pellicano states that the handouts and charts are "not a final rule of the FAA" and they do "not record any determination made by the FAA." Pellicano Decl. ¶ 41.  Pellicano notes that he prepared the Icing Presentation to address NTSB Safety Recommendations and to address feedback which the FAA received related to the ACS.  Id., ¶ 40. In addition, the Icing Presentation documents refer extensively to documents which the Court has held are inadmissible.[4]  In sum, the Court finds that the handouts and charts from the Icing Presentation by Pellicano on February 4, 2005 do not reflect the "findings" of a government agency and are not trustworthy under Rule 803(8)(C), Fed. R. Evid.  Accordingly, the Court sustains Cessna's motion in limine as to these documents.

### III.   FAA Safety Recommendation 03.266 And Related Documents

In 2003, FAA employees conducted an internal review of the standards used to certify the C208B for flight in icing conditions.  In 2004, the FAA reviewed the certification data for the C208

---

[4]   In a prior order, the Court excluded the NTSB Safety Recommendations which are quoted throughout the Icing Presentation.  See Memorandum And Order (Doc. #856) filed April 27, 2009.  In addition, as explained above, the Court excludes the ACS.

for flight in known icing conditions and found that it had been properly certified under the standards that existed at the time of certification. See Pellicano Decl. ¶¶ 46-48; FAA Interim Response (January 13, 2004) to FAA Safety Recommendation 03.226, Exhibit 11 to Pellicano Decl.; FAA Final Response (April 14, 2005) to FAA Safety Recommendation 03.226, Exhibit 12 to Pellicano Decl. In the final response, the FAA noted that the agency's Small Airplane Directorate was in the process of finalizing an examination of the standards used to certify the Cessna Model 208 and 208B for inflight icing airworthiness approval. The Final Response also summarizes AD 2005-07-01 which the FAA Small Airplane Directorate issued some two weeks earlier and notes possible future airworthiness directives. The outcome of the FAA process and investigation of Safety Recommendation 03.266 was the issuance of several airworthiness directives, AD 2005-07-01, AD 2006-01-11, AD 2006-06-06 and AD 2007-07-01, all of which are final rules of the FAA. See Pellicano Decl. ¶ 51.

Plaintiffs argue that FAA Safety Recommendation 03.266 and related documents are admissible because the safety recommendation ultimately resulted in an airworthiness directive which reflects the FAA's "findings" under Rule 803(8)(C). While airworthiness directives reflect FAA "findings," Rule 803(8)(C) does not compel admission of all agency documents which ultimately result in a final agency rule because such documents do not reflect agency findings and are not trustworthy. See Waller v. Thames, 852 F.2d 569, 1988 WL 76532, at *2 (6th Cir. July 26, 1988) (excluding agency investigatory file which often represents mish-mash of self-serving and hearsay statements); Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1310 (5th Cir. 1991) (Rule 803(8)(C) exception applies only to agency report setting forth factual findings, not entire investigatory file). The Court therefore sustains Cessna's motion in limine as to FAA Safety

Recommendation 03.226 and related documents including the FAA interim and final responses to the recommendation.

**IV. Chart titled "U.S. Icing Accident per month since 1983" in FAA AD 2005-07-11**

On March 25, 2005 the FAA issued Airworthiness Directive ("AD") 2005-07-01 as a final rule of the FAA. Id., ¶¶ 3, 22; Ex. 1. This AD was not preceded by the publication of a Notice of Proposed Rule Making ("NPRM"), which gives potentially affected parties the opportunity for public comment. Id., ¶ 22. Because the FAA did not provide notice and opportunity for public comment, it was required to justify the urgency of the AD. Id. To do so, the FAA included an Icing Accident Chart which was intended to demonstrate that "icing accidents" for the months of March and April are just as prevalent as for the months of November, December, and January. Id., ¶ 23. The chart does not compare the total number of accidents or the accident rate of the C208B to that of all other aircraft. Id., ¶ 21.

Cessna concedes that the AD is a final government document but argues that the chart is nevertheless inadmissible as a government report. Cessna argues that the chart is not trustworthy because the underlying data is omitted, the methodology in selecting the data is unknown and the graph is misleading. Absent explanation, the chart by itself may be difficult for a jury to decipher, but Cessna has not shown that the chart is untrustworthy for purposes of Rule 803(8)(C) if introduced through a competent witness.[5]

Cessna also argues that the icing accident chart should be excluded under Rules 402 and 403 as irrelevant, unduly prejudicial and unnecessarily cumulative. At this stage and absent evidence of each aircraft accident and the specific defect which plaintiffs allege in each case, the Court cannot

---

[5] For example, in his declaration, Mr. Pellicano explains the underlying data and the methodology for selecting such data for the chart. See Pellicano Decl. ¶¶ 6-24.

adequately address Cessna's argument. Accordingly, the Court overrules without prejudice Cessna's motion on this ground.

**V.     NPRM Docket No. 99-CE-45-AD dated October 12, 1999**

On October 12, 1999, FAA staff published a Notice of Proposed Rulemaking ("1999 NPRM") concerning a proposed change to the Cessna 208 operational procedures to require "early and often" activation of the pneumatic deicing boots. Cessna responded that the proposed requirement was not appropriate for the Cessna Caravan 208 series aircraft. The FAA agreed and withdrew the proposed rule which was never implemented. Pellicano Decl. ¶ 73.

As explained above, courts routinely exclude government documents or reports which are preliminary or subject to revision and further review. See Toole, 999 F.2d at 1434-35; Plemer, 713 F.2d at 1140; Pullman, 662 F.2d at 915. In Toole, the Eleventh Circuit excluded a proposed FDA rule which was published in the Federal Register because of the tentative nature of the document and differences between the proposed rule and the final agency rule. See 999 F.2d at 1434-35; see also United Air Lines, 867 F.2d at 742-43 (excluding Congressional reports and Department of Justice proposed rulemaking because of interim and inconclusive nature).

Plaintiffs argue that the 1999 NPRM reflects an FAA determination that an unsafe condition existed in the 208B aircraft due to failure to activate pneumatic deicing boots and is notice to Cessna of the danger.[6] See Plaintiffs' Response (Doc. #802) at 13 (citing Johnston v. Deere & Co., 967 F.

---

[6] Even though the 1999 NPRM applied to Cessna Caravan 208 airplanes, the FAA issued similar proposals for some 38 other models or classes of airplanes. See 64 Fed. Reg. at 55183; see, e.g., Airworthiness Directives; Fairchild Aircraft Corporation SA226 and SA227 Series Airplanes, 64 Fed. Reg. 55177 (Oct. 12, 1999); Airworthiness Directives; Twin Commander Aircraft Corporation 600 Series Airplanes, 64 Fed. Reg. 55191 (Oct. 12, 1999). The 1999 NPRM does not reflect any specific findings on the Cessna Caravan 208 series. Indeed, the only accident mentioned in the 1999 NPRM involved an Empress Brazileria de Aeronautica airplane. See 64 Fed. Reg. at 55181.

Supp. 578, 579 (D. Me. 1997)). The Court declines to determine whether the 1999 NPRM is subject to the hearsay exception for government reports under Rule 803(8)(C) because in any event, under Rule 403, Fed. R. Evid., the probative value of the 1999 NPRM is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury. See Hall v. W. Production Co., 988 F.2d 1050, 1058 (10th Cir. 1993) (excluding government report based on Rule 403 considerations). The FAA prepared the 1999 NPRM to fulfill its statutory mission of quickly responding to potentially unsafe conditions dealing with pneumatic deicing boots on some 39 models of airplanes, see 49 U.S.C. § 44701(c) (FAA administrator charged with reducing or eliminating possibility or recurrence of accidents in air transportation), not to determine the legal liability of a particular party or the mechanical soundness of a particular airplane model. See Thomas Brooks v. Burnett, 920 F.2d 634, 646 (10th Cir. 1990) (NTSB "has no role in determining civil liability"). The 1999 NPRM appears to reflect an interim opinion of FAA staff members as to a large number of small airplanes with pneumatic deicing boots. Finally, the 1999 NPRM is based largely on reports of witnesses and other hearsay which the Court ordinarily would not admit at trial. To present the 1999 NPRM as an "official" or "government" report on the safety of pneumatic deicing boots would give it undue weight and tend to mislead the jury. See Thomas Brooks, 920 F.2d at 646 (NTSB investigation is forum for developing safety recommendations, not show for audience of silent note takers looking for someone to sue); In re Air Crash Near Roselawn, Ind. On October 31, 1994, No. 95-C-4593, 1997 WL 572896, at *1 (N.D. Ill. Sept. 10, 1997) (excluding FAA Airworthiness Directives and Flight Safety Information Bulletins and NTSB Safety Recommendations as each government agency subject to different agenda and fact-finding methodology which could undermine and confuse jury's distinct function).

The Court agrees substantially with the reasoning of the Second Circuit in addressing a similar issue as follows:

> [T]he district court did not abuse its discretion in holding, in the alternative, that the report [prepared by the staff of the Urban Mass Transit Administration ("UMTA")] should be excluded under Fed. R. Evid. 403 because the likelihood that it would confuse the jury and protract the proceedings outweighed its probative value. United States v. Robinson, 560 F.2d 507 (2 Cir. 1977), cert. denied, 435 U.S. 905 (1978). Judge Weinfeld's decision represented an eminently sound exercise of discretion. First, the report was prepared for very different purposes tha[n] those for which it was offered at trial. The UMTA staff was attempting to determine the quickest solution for an immediate safety problem, and not whether The City of New York and The Transit Authority would get what they bargained for - subway cars which would be safe and dependable for up to 35 years. Second, as a so-called government report which in fact was incomplete and based largely on hearsay, the report would have been presented to the jury in "an aura of special reliability and trustworthiness" which would not have been commensurate with its actual reliability. United States v. Fosher, 590 F.2d 381, 383 (1 Cir. 1979); see United States v. Costello, 221 F.2d 668, 674 (2 Cir. 1955), aff'd, 350 U.S. 359 (1956); Weinstein and Berger, 1 Weinstein's Evidence ¶ 403(04) (1980). Third, the admission of the report would have been likely to protract an already prolonged trial with an inquiry into collateral issues regarding the accuracy of the report and the methods used in its compilation. John McShain v. Cessna Aircraft Co., 563 F.2d 632, 636 (3 Cir. 1977).

Pullman, 662 F.2d at 915.

**IT IS THEREFORE ORDERED** that Cessna Aircraft Company's Motion In Limine To Exclude FAA Documents (Doc. #707) filed July 7, 2009 be and hereby is **SUSTAINED in part**. The Court sustains Cessna's motion as to (1) FAA Airworthiness Concern Sheet dated December 5, 2008; (2) C208 Icing Presentation by Paul Pellicano dated February 4, 2005; (3) FAA Safety Recommendation 03.266 including all initial, interim and final responses to the safety recommendation and (4) NPRM Docket No. 99-CE-45-AD dated October 12, 1999 regarding the activation of the pneumatic boots on the Cessna Caravan 208B. Cessna's motion is otherwise overruled.

Dated this 1st day of September, 2009 at Kansas City, Kansas.

             s/ Kathryn H. Vratil
             KATHRYN H. VRATIL
             United States District Judge