**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| IN RE: CESSNA 208 SERIES AIRCRAFT   ) <br> PRODUCTS LIABILITY LITIGATION        )    **MDL No: 1721** <br>                                                              ) <br>                                                              )    **Case No: 05-md-1721-KHV** <br> **(This Document Relates To All Cases)**   ) <br> _____) | |

## MEMORANDUM AND ORDER

This matter involves several air disasters involving the Cessna 208 Series aircraft. Plaintiffs filed suit against Cessna Aircraft Company and Goodrich Corporation seeking damages for personal injuries and wrongful death. The Judicial Panel on Multidistrict Litigation ("MDL Panel") later transferred the various actions to this Court for consolidated pretrial proceedings. This matter is before the court on Plaintiffs' Motion To Reconsider The September 9, 2009 Order Sustaining Defendant Cessna Aircraft Company's Motion In Limine to Exclude Testimony of Peter H. Hildebrand (Doc. #911) filed September 23, 2009. For substantially the reasons stated in the Court's Memorandum And Order (Doc. #910) filed September 9, 2009, Cessna's Memorandum Opposing Plaintiffs' Motion To Reconsider The Court's Order Excluding The Testimony Of Peter H. Hildebrand (Doc. #917) filed October 5, 2009 and for reasons stated below, the Court overrules plaintiffs' motion.[1]

## Factual Background

The Court incorporates by reference the factual background set forth in the order on Cessna's motion in limine to exclude the testimony of Peter H. Hildebrand. See Memorandum And Order

---

[1] Plaintiffs request oral argument and an evidentiary hearing on their motion. The Court finds that oral argument will not materially assist in the disposition of the motion and that an evidentiary hearing would not be helpful. The Court therefore overrules plaintiffs' request for oral argument.

(Doc. #910) at 2-5.

## Legal Standards

A court has discretion whether to grant a motion to reconsider. Brumark Corp. v. Samson Res. Corp., 57 F.3d 941, 944 (10th Cir. 1995). The Court may recognize any one of three grounds justifying reconsideration: an intervening change in controlling law, availability of new evidence, or the need to correct clear error or prevent manifest injustice. See Major v. Benton, 647 F.2d 110, 112 (10th Cir. 1981); Burnett v. W. Res., Inc., 929 F. Supp. 1349, 1360 (D. Kan. 1996); D. Kan. Rule 7.3(b). A motion to reconsider is not a second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed. See Voelkel v. Gen. Motors Corp., 846 F. Supp. 1482, 1483 (D. Kan.), aff'd, 43 F.3d 1484 (10th Cir. 1994). Such motions are not appropriate if movant only wants the Court to revisit issues already addressed or to hear new arguments or supporting facts that could have been presented originally. See Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991), cert. denied, 506 U.S. 828 (1992).

## Analysis

Plaintiffs argue that the Court committed "clear error" in finding that Dr. Hildebrand's testimony is not reliable and would not be helpful to the jury. In support of their motion, plaintiffs rely on arguments or evidence which could have been presented in their original response to Cessna's motion. The Court therefore overrules plaintiffs' motion to reconsider.

Plaintiffs' motion also lacks substantive merit. To properly analyze plaintiffs' motion to reconsider, the Court again starts with defining the scope of Dr. Hildebrand's testimony. In response to Cessna's motion in limine, plaintiffs noted that Dr. Hildebrand is not offering opinions on "safety" or "aerodynamics," but simply a "comparative analysis of aircraft." Plaintiffs' Response

In Opposition To Defendant Cessna Aircraft Company's Motion In Limine To Exclude The Expert Testimony Of Peter Hildebrand, Ph.D. (Doc. #739) filed February 4, 2009 at 16.  Likewise, in their motion to reconsider, plaintiffs argue that Dr. Hildebrand does not present any controversial or novel methodology, but simply plots data on a graph for comparison.  See Plaintiffs' Reply To Defendants' Opposition To Plaintiffs' Motion To Reconsider The September 9, 2009 Order (Doc. #922) filed October 23, 2009 at 4; see also Memorandum In Support Of Plaintiffs' Motion To Reconsider The September 9, 2009 Order Sustaining Defendant Cessna Aircraft Company's Motion In Limine to Exclude Testimony of Peter H. Hildebrand (Doc. #912) filed September 23, 2009 at 2 (Dr. Hildebrand merely compares basic aircraft attributes, plots that data on an x and y axis, and draws mean line where average points fall).  Dr. Hildebrand seeks to compare basic aircraft attributes, but such a comparison is not relevant in this case unless it somehow relates to the safety and aerodynamics of the C208B.  Indeed, plaintiffs acknowledge that they offer Dr. Hildebrand's testimony to help the jury determine whether the Cessna 208B is "defective and suitable for operation in its intended environment."  See Plaintiffs' Response (Doc. #739) at 21.  Dr. Hildebrand himself acknowledges that his report is a study of "aerodynamic performance" of the Cessna 208B and an attempt to determine whether the differences between the Cessna 208B and other aircraft could contribute to difficulties in flight into icing conditions.  See Hildebrand Report at 1.  In his report, Dr. Hildebrand opines that the Cessna 208B may have a "possible design problem" because it is relatively underpowered and has a high drag compared to the NAD and that "this issue would become more severe in icing conditions."  Id. at 5.  Again, the Court finds that notwithstanding plaintiffs' disclaimer, Dr. Hildebrand does express an opinion on the relative "safety" and

"aerodynamic" performance of the Cessna 208B compared to other aircraft.[2]  See Memorandum And Order (Doc. #910) at 6.

**I.     Reliability Of Dr. Hildebrand's Analysis**

As explained in the prior order, on the issues of relative "safety" and "aerodynamics," Dr. Hildebrand's testimony fails to satisfy the four Daubert factors including (1) whether the proffered theory can and has been tested; (2) whether the theory has been subject to peer review; (3) the known or potential rate of error; and (4) the general acceptance of a methodology in the relevant scientific community. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593-94 (1993). Although the test of reliability is flexible, plaintiffs did not show that Dr. Hildebrand engaged in "the same level of intellectual rigor" as an expert in aerodynamics, aircraft safety or statistics.[3]  See Daubert, 509 U.S. at 589-90, 593 (scientific knowledge implies grounding in methods and

---

[2] Plaintiffs argue that the Court incorrectly assumed that they offered Dr. Hildebrand's testimony to show product defect. See Plaintiffs' Memorandum (Doc. #912) at 3. Plaintiffs state that they anticipate utilizing Dr. Hildebrand's testimony to aid in establishing foreseeability, i.e. Cessna knew or should have known that the C208B was not reasonably safe when operated in icing conditions. See id. Initially, the Court overrules plaintiffs' argument because they did not raise it in response to Cessna's motion in limine. See Plaintiffs' Response (Doc. #739) at 16 (Dr. Hildebrand does not offer opinions on safety and aerodynamics); id. at 13 (Dr. Hildebrand offers opinions on hypothesis that characteristics of Cessna 208B deviate from other aircraft models used or marketed for similar purposes); id. at 7 (Dr. Hildebrand does not offer any statistical opinions about "the aircraft's operation or the safety of the aircraft"). In any event, to show that Cessna knew or should have known that the C208B was not reasonably safe based on the comparative chart, Dr. Hildebrand must necessarily express an opinion on the relative safety or aerodynamic performance of the aircraft. Whether plaintiffs offer Dr. Hildebrand's testimony to show product defect or foreseeability, the testimony is not reliable, relevant or helpful to the jury.

[3] Dr. Hildebrand readily admits that as it relates to aircraft safety, his hypothesis is untested and inconclusive and merely raises potential areas of concern. See Hildebrand Depo. at 110-11 (would raise area of concern to designer); id. at 149 (can only raise questions because analysis not "real aerodynamics . . . analysis;" analysis merely asks questions). Indeed, Dr. Hildebrand notes that an aircraft with a novel and unique aerodynamic design may be safe but not adhere to the norm. See Hildebrand Report at 2 n.1.

procedures of science; scientific method today based on generating hypotheses and testing them to see if they can be falsified); Mitchell v. Gencorp, Inc., 165 F.3d 778, 783 (10th Cir. 1999) (subject of expert testimony must be genuinely scientific as distinct from unscientific speculation offered by genuine scientist).

Plaintiffs argue that Cessna's experts have not tested Dr. Hildebrand's work for errors and have not shown that his "testing" is false. See Plaintiffs' Memorandum (Doc. #912) at 4, 6-7. Of course, on a Daubert motion, the relevant issue is not whether the expert's ultimate conclusion is true, but whether he used a reliable methodology in reaching that conclusion and whether the conclusion would be helpful to the trier of fact. Moreover, plaintiffs deny that Dr. Hildebrand conducted any "testing" and insist that he simply plotted data on a graph.[4] Finally, Cessna's experts do not claim that the data in Dr. Hildebrand's graphs is erroneous or false – they claim that his conclusions from that data are not grounded in the scientific method. See Declaration Of Michael Selig ¶ 8 (Dr. Hildebrand does not use scientific method to validate hypothesis); Declaration Of Arnold Barnett ¶ 17 (statistician would conclude that Dr. Hildebrand's analysis does not provide convincing evidence that Cessna 208/208B aircraft are more prone to accidents in icing or are otherwise unsafe in icing conditions). Hildebrand himself concedes as much. See Hildebrand Depo. at 147-48 (even though statistician would consider three standard deviations from norm to be

---

[4] Scatter plots may be excellent demonstrative aids to explain otherwise complex testing or results, but plotting data is not a "test." Likewise, "fairing a line to a graphed data set to identify trends and outliers" may be a well accepted scientific technique, Plaintiffs' Reply (Doc. #922) at 1-2, but Dr. Hildebrand goes beyond such a basic graphical presentation. Dr. Hildebrand suggests that the "average" line represents the norm for aircraft design and is related to the safety of an aircraft such that aircraft which have characteristics close to the line have a design which is "consistent with what has been learned over many years about how to design a safe aircraft." Hildebrand Report at 2. Dr. Hildebrand suggests that "if the aircraft's characteristics fall away from the NAD, then some aspects of the aircraft's design might be worthy of question." Id.

significant, he did not calculate deviations for any airplanes); id. at 149 (analysis can only raise questions and point out possible problems with Cessna aircraft).

For these reasons, the Court did not commit "clear error" in finding that Dr. Hildebrand's testimony is not reliable.[5]

## II.     Relevance Of Dr. Hildebrand's Testimony And Helpfulness To The Jury

The fact that Dr. Hildebrand's testimony is irrelevant and not helpful is demonstrated by the uncertainty of his ultimate conclusion, i.e. that C208B attributes deviate from the NAD, which suggests "possible design problems in the aircraft, *or differences between aircraft*." Hildebrand Report at 5 (emphasis added). Dr. Hildebrand does not attempt to opine that the C208B has a design defect, only that a design defect is possible. See id. (analysis can only raise questions and point out possible problems with Cessna aircraft). Because Dr. Hildebrand does not offer a scientific theory for analyzing the data on the graphs, a jury is left to speculate that the differences between the Cessna 208B and the NAD do not allow the Cessna 208B to operate safely in icing conditions.

Plaintiffs repeatedly argue that Dr. Hildebrand need not assemble the entire case against Cessna. In that respect, they are correct. Plaintiffs do not explain, however, how Dr. Hildebrand's testimony is even a relevant building block in any cohesive theory of liability. Plaintiffs maintain that other experts will "supplement the conclusions posed by Dr. Hildebrand's comparative analysis." Plaintiffs' Memorandum (Doc. #912) at 10. In essence, plaintiffs seek to have Dr. Hildebrand set the stage, i.e. raise questions about a possible design problem which other experts

---

[5]     Plaintiffs also argue that the Court overlooked the fact that "it is commonplace within the aircraft industry to compare aircraft for different purposes including accident investigation, pure research or purchasing decisions." Plaintiffs' Memorandum (Doc. #912) at 5. The fact that other individuals and organizations regularly compare aircraft for other purposes does not suggest that Dr. Hildebrand's methodology or analysis in this case is reliable, relevant or helpful to the jury.

will later confirm.  Even now, however, plaintiffs have not shown how Dr. Hildebrand's "questions" about safety and aerodynamics would be helpful to the jury.  If other experts will confirm a design defect, they do not need Dr. Hildebrand as a warm-up act; they should proceed directly to the point.

By himself, Dr. Hildebrand does not testify with sufficient certainty as to any particular issue in the case.  Although experts need not testify to a certainty, expert testimony cannot be based on mere speculation and conjecture.  See Daubert, 509 U.S. at 590 (unreasonable to conclude that subject of scientific testimony must be known to certainty because arguably no certainties in science).  Dr. Hildebrand acknowledges that further analysis of accident histories or testing of the aircraft is needed to determine the safety of the design of the Cessna 208B, but he did not conduct such analysis or testing.  See In re Breast Implant Litig., 11 F. Supp.2d 1217, 1231 (D. Colo. 1998) (studies recommending further studies inadequate to support expert conclusions).  Absent specific facts of the relevant accident histories of the various airplanes on the charts, or aerodynamic analysis of Dr. Hildebrand's conclusions, the Court must find that they are based on conjecture and speculation.  See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (court may conclude analytical gap between data and opinion too great); Mitchell, 165 F.3d at 780 (proponent of expert testimony must show grounding in methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation).

In sum, the Court did not commit "clear error" in finding that Dr. Hildebrand's testimony is not relevant or helpful to the jury.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion To Reconsider The September 9, 2009 Order Sustaining Defendant Cessna Aircraft Company's Motion In Limine to Exclude Testimony of Peter H. Hildebrand (Doc. #911) filed September 23, 2009 be and hereby is

**OVERRULED**.

Dated this 4th day of November, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge
