## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

PATRICK O'BRIEN,⠀⠀⠀⠀⠀⠀)
MARILYN O'BRIEN,⠀⠀⠀⠀⠀)
CATHERINE L. O'BRIEN,⠀⠀)
RACHEL O'BRIEN, and⠀⠀⠀)
AMY E. O'BRIEN,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀**8:09CV40**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
CESSNA AIRCRAFT COMPANY,⠀)⠀⠀⠀⠀⠀**FINDINGS AND**
GOODRICH AEROSPACE COMPANY,⠀)⠀⠀**RECOMMENDATION**
SUBURBAN AIR SERVICES, INC.,⠀⠀)
PRATT & WHITNEY CANADA CORP.,⠀)
f/k/a Pratt & Whitney Canada, Inc.,⠀)
and TEXTRON, INC.,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀)

⠀⠀⠀⠀This matter is before the court on the plaintiffs' Reinstatement of their Motion to Remand for Lack of Jurisdiction (Filing No. 81). The plaintiffs filed a brief (Filing No. 83) and an index of evidence (Filing No. 82) in support of their motion. A defendant, Cessna Aircraft Company (Cessna), filed an Opposition (Filing No. 88) and a supporting index of evidence (Filing No. 88-1). With leave of court, the plaintiffs filed supplemental authority (Filing No. 116) in support of their motion. Cessna filed a brief (Filing No. 147) in response to the plaintiffs' supplemental authority. No other party has participated in the briefing of the plaintiffs' motion to remand.

⠀⠀⠀⠀On January 28, 2009, Cessna removed this action from the District Court of Douglas County, Nebraska, to the United States District Court for the District of Nebraska. **See** Filing No. 1. Cessna alleges this court has jurisdiction over the case based on 28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute, which allows an officer of the United States to remove any civil action commenced in a state court to federal court if the action is based on any act under color of office. *Id.* ¶ 8. Specifically, Cessna contends certain claims in the Complaint are based on Cessna's performance of functions delegated by the Federal Aviation Administration (FAA). *Id.* ¶¶ 13, 16. On February 3, 2009, the plaintiffs

filed their first motion to remand arguing no federal jurisdiction exists because the parties are not fully diverse and the statute does not apply to the facts of this case. **See** Filing No. 11. Cessna argued the court need not rule on the motion to remand until after the Judicial Panel on Multidistrict Litigation (JPML) rendered a decision about whether this case would be consolidated with several other actions in the District of Kansas. **See** Filing No. 21 - Brief p. 1.

The pretrial proceedings of the case were transferred to the District of Kansas for inclusion in Multidistrict Litigation (MDL) No. 1721. **See** Filing No. 72 - Transfer Order; and Filing No. 77 - Certified Copy of Transfer Order. On April 7, 2009, the JPML entered a conditional remand order, ordering this action be transferred back for further resolution to the transferor court, the District of Nebraska. **See** Filing No. 79 - Conditional Remand Order. This court entered an Order dated April 28, 2010, directing the plaintiffs to file a reinstatement of the motion to remand which was previously filed. **See** Filing No. 80. For the reasons discussed herein, the undersigned magistrate judge recommends the plaintiffs' motion to remand be granted.[1]

---

[1] The undersigned is entering a Findings and Recommendation in this matter in light of the split in court decisions over whether a magistrate judge has authority to rule on a motion to remand. **Compare** *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 517 (6th Cir. 2001) (finding "remand motions are dispositive and, as such, can only be entered by district courts"), *Williams v. Beemiller, Inc.*, 527 F.3d 259 (2d Cir. 2008), *Stefanik v. City of Holyoke*, 597 F. Supp. 2d 184, 185 (D. Mass. 2009), and *Johnson v. Tyson Fresh Meats, Inc.*, No. C-06-1002, 2006 WL 1004970, at *1 (N.D. Iowa Apr. 17, 2006), **with** *White v. State Farm Mut. Auto. Ins. Co.*, 153 F.R.D. 639 (D. Neb. 1993) (concluding remand of a case to the state court was not an Article III function and could be ordered by a magistrate judge). In *Vogel*, the court concluded:

> [W]e apply a functional equivalency test to see if a particular motion has the same practical effect as a recognized dispositive motion. Applying that test, . . . we too find that a remand order is the functional equivalent of an order to dismiss. The practical effect of remand orders and orders to dismiss can be the same; in both, cases are permitted to proceed in state rather than federal court.

*Vogel*, 258 F.3d at 517. **Accord** *First Union Mortgage Corp. v. Smith*, 229 F.3d 992 (10th Cir. 2000); *In re U.S. Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998); **see also** *Meier v. Premier Wine & Spirits, Inc.*, 371 F. Supp. 2d 239, 241-42 (E.D.N.Y. 2005) (noting that "[m]ost district courts to have considered this issue have found remand to be within a magistrate judge's authority under 28 U.S.C. 636(b)(1)(A)). On the other hand, every appellate court that has weighed the issue has determined a remand to be the functional equivalent of a dispositive order, and therefore beyond a magistrate judge's authority.") (collecting cases). The undersigned magistrate judge finds a Findings and Recommendation is the most appropriate course of action in this matter.

## BACKGROUND

The plaintiffs' claims arise from the February 7, 2007, crash of a Cessna 208B Caravan aircraft operated by the plaintiff, Patrick O'Brien.  **See** Filing No. 1 - Ex. B Complaint ¶ 52.  The plaintiffs assert the aircraft crashed when the deicing equipment failed.  **Id.** ¶ 55.  As a result of the crash, Patrick O'Brien suffered permanent injuries stemming from multiple bone fractures, brain trauma, and other wounds.  **Id.** ¶¶ 55, 57.  Patrick O'Brien's wife and children are also plaintiffs based on the damages they have suffered by the loss of Patrick O'Brien's companionship and other services.  **Id.** ¶¶ 58-59.

This is the second time the litigation has been removed to federal court.  Previously, on November 7, 2008, the plaintiffs filed a complaint in the District Court of Douglas County, Nebraska, against Cessna, Goodrich Aerospace Company (Goodrich), and Suburban Air Services, Inc. (Suburban Air).  **See** Filing No. 1 - Ex. B Complaint in case number 8:08CV525.  On December 5, 2008, Cessna removed the case.  **See** Filing No. 1 - Notice of removal in case number 8:08CV525.  On December 22, 2008, the JPML entered an order conditionally transferring the 8:08CV525 case to the United States District Court for the District of Kansas as part of *In Re: Cessna 208 Series Aircraft Products Liability Litigation*, MDL No. 1721.  **See** Filing No. 29 - JPML Order in case number 8:08CV525.  The transfer was stayed based on a motion filed by the plaintiffs before the JPML.  **Id.**  On January 20, 2009, this court granted the plaintiffs leave for voluntary dismissal, without prejudice.[2]  **See** Filing No. 28 - Order in case number 8:08CV525.  Consequently, the JPML vacated its conditional transfer order.  **See** Filing No. 29 - MDL Order in case number 8:08CV525.

The plaintiffs filed a complaint on January 23, 2009, in the District Court of Douglas County, Nebraska, against Cessna, Goodrich, Suburban Air, Pratt & Whitney Canada Corp. (Pratt & Whitney), and Textron, Inc. (Textron).  **See** Filing No. 1 - Ex. B Complaint.  The plaintiffs assert claims against Cessna, a Delaware corporation with its principal place of business in Wichita, Kansas, as the manufacturer of the aircraft.  **Id.** ¶ 3.  The plaintiffs

---

[2] The plaintiffs requested an order voluntarily dismissing the first case without prejudice so as to add Pratt & Whitney as a party defendant through the filing of a new complaint in the District Court of Douglas County, Nebraska.  **See** Memorandum and Order in case 8:08CV525, attached as Exhibit C at Filing No. 82-4.

assert claims against Goodrich, a North Carolina corporation with its principal place of business in Uniontown, Ohio, as the manufacturer of the deicing equipment. *Id.* ¶ 4. The claims against Cessna and Goodrich are relevant to the instant motion and include: strict liability; negligence; fraud and deceit; breach of warranty; and willful, wanton and outrageous conduct. *Id.* ¶¶ 61-104. The plaintiffs assert claims against Suburban Air, a Nebraska corporation with its principal place of business in Omaha, Nebraska, for its conduct related to maintenance of the aircraft. *Id.* ¶¶ 5, 106-111. The plaintiffs assert claims against Pratt & Whitney, a Canadian corporation with its principal place of business in Longueuil, Quebec, Canada, as the manufacturer of small turbine aircraft engines. *Id.* ¶ 6. Finally, the plaintiffs assert a claim against Textron, a Delaware corporation, with principal places of business in Rhode Island and Pennsylvania, who is the parent corporation of Cessna. *Id.* ¶¶ 7, 132. Textron has moved to dismiss the plaintiffs' claim against it. **See** Filing No. 129.

In its Notice of Removal, Cessna claims it meets the requirements of the Federal Officer Removal Statute for the following reasons: 1) Cessna is a "person" within the meaning of the statute; 2) Cessna acted under the direction of federal officers by issuing a certificate for the Cessna 208B; 3) There is a causal nexus between the claims asserted in the complaint and Cessna's conduct delegated under the Delegation Option Authorization (DOA) program; and 4) The Federal Aviation Act of 1958 generally governs the aviation field and preempts state standards of care in aviation safety, providing a colorable federal defense. **See** Filing No. 1, p. 3-7.

In the instant motion, the plaintiffs' claim removal is improper because there is no basis for federal jurisdiction over this action. **See** Filing No. 81 - Motion ¶ 4. Namely, the plaintiffs claim Cessna fails to satisfy the test to warrant application of the Federal Officer Removal Statute, and, further, Cessna failed to raise a colorable defense. *Id.* ¶ 5. The plaintiffs argue Congress did not intend to afford federal officer status to Cessna through the mere delegation of duties from the FAA. *Id.* ¶ 6. Further, the plaintiffs argue there is no diversity as an alternative means to jurisdiction as the plaintiffs, and one of the defendants, Suburban Air, are both citizens of Nebraska. *Id.* ¶ 7. Finally, the plaintiffs seek an award of costs and fees associated with filing the motion to remand. *Id.* ¶ 9.

## ANALYSIS

The court must look to federal statute to determine if an action was properly removed to federal court. The federal statute governing removal provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "To remove a case as one falling within federal-question jurisdiction, the federal question ordinarily must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal." *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 430-31 (1999). Specifically, "[u]nder the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint." *Id.*; see *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001). However, "the federal-question element is met if the defense depends on federal law." *Jefferson County*, 527 U.S. at 431.

"The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction." *Arkansas Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009). "Federal courts are to 'resolve all doubts about federal jurisdiction in favor of remand' and are strictly to construe legislation permitting removal." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (citation omitted); *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997); *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). If a defendant proves that any claim within a plaintiff's complaint supports federal question jurisdiction, a defendant may remove the entire case to federal court, including any alleged state-law claims arising from the same core of operative facts. **See** 28 U.S.C. § 1367; *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997); *Exxon Mobil Corp. v. Allapattah Servs.,*

*Inc.*, 545 U.S. 546, 563 (2005).  However, all doubts as to the propriety of exercising federal jurisdiction over a removed case must be resolved in favor of remand.  *4:20 Commc'ns, Inc. v. Paradigm Co.*, 336 F.3d 775, 778-79 (8th Cir. 2003).

Here, there is no dispute the plaintiffs' complaint does not raise federal claims.  Cessna, however, contends the non-federal claims against it are based on Cessna's conduct as a federal officer.  Therefore, Cessna argues the Federal Officer Removal Statute, 28 U.S.C. § 1442, permits removal of the plaintiffs' case to federal court.  The plaintiffs deny their claims are based on Cessna's breach of duties as a federal officer under the Federal Officer Removal Statute.  In addition, the plaintiffs argue Cessna lacks a colorable preemption defense, which may otherwise absolve it of liability.

Accordingly, Cessna has the burden of establishing federal officer jurisdiction under 28 U.S.C. § 1442(a)(1).  The Federal Officer Removal Statute provides, in relevant part:

> A civil action . . . commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
> (1)    The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a).

Under this subsection, "[a] party seeking removal under section 1442 must demonstrate that (a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'"  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (**citing** *Jefferson County*, 527 U.S. at 430-31; *Mesa v. California*, 489 U.S. 121, 129 (1989)); **see** *Dahl*, 478 F.3d at 967 n.2.

6

## I.      Federal Question Jurisdiction

### A.      Is Cessna a Person?

The defendant must first demonstrate it is a "person" within the meaning of the statute.  Cessna is a civil aviation manufacturer.  **See** Filing No. 83 - Plaintiffs' Brief p. 3.  Corporate entities qualify as "persons" under § 1442(a)(1)*.  **Isaacson v. Dow Chem. Co.**, 517 F.3d 129, 135 (2d Cir. 2008); **Dunevant v. Healthcare USA of Mo., L.L.C.**, 2008 WL 4066384 (E.D. Mo. Aug. 27, 2008);  **In re Methyl Tertiary Butyl Esther ("MTBE") Prods. Liab. Litig.**, 488 F.3d 112, 124 (2d Cir. 2007); **Winters v. Diamond Shamrock Chem. Co.**, 149 F.3d 387, 398 (5th Cir. Tex. 1998); **Ryan v. Dow Chem. Co.**, 781 F. Supp. 934, 946 (E.D.N.Y.1992).  Accordingly, the court will now consider the second prong of the federal officer removal test.

### B.      Causal Nexus and Acting Under

The second factor necessary for § 1442 removal is a showing that the defendant acted pursuant to a federal officer's directions and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiffs' claims.  **Winters**, 149 F.3d at 398; **See Willingham v. Morgan**, 395 U.S. 402, 409 (1969) (**citing Maryland v. Soper (No. 1)**, 270 U.S. 9, 33(1926)).  The Supreme Court determined the statute's "color of federal office" requirement is neither "limited" nor "narrow," but should be afforded a broad reading so as not to frustrate the statute's underlying rationale.  **Murray v. Murray**, 621 F.2d 103, 107 (5th Cir. 1980).  On the other hand, the Court has clarified that the right to removal is not unbounded, and only arises when "a federal interest in the matter" exists.  **Mesa**, 489 U.S. at 139; **Willingham**, 395 U.S. at 406; **Winters**, 149 F.3d at 398. The "acting under" requirement is the crux of the parties' disagreement.  In order to determine if this standard is met, the court will provide a brief history of Cessna's role as a Designated Engineering Representative (DER) of the FAA, and the history of cases addressing the "acting under" requirement.

### *i.*   ***Cessna as a DER***

As a manufacturer, Cessna must satisfy minimum standards under the Federal Aviation Regulations by developing plans and specifications and performing tests and inspections necessary to design aircraft that comport with federal regulations.  **See** Filing No. 83, at 3-4.  In ***United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)***, the Supreme Court noted, "Congress directed the Secretary of Transportation to promote the safety of flight and civil aircraft in air commerce by establishing minimum standards for aircraft design, materials, workmanship, and performance" through the Federal Aviation Act of 1958.  ***Varig Airlines***, 467 U.S. 797, 804 (1984).  Congress also created a certification process to ensure compliance with the requirements developed by the FAA.  ***Id.***  As noted above, the FAA has created a comprehensive set of regulations which set forth the minimum standards aircraft designers and manufacturers must meet.  ***Id.*** at  805.  At each step in the certification process, FAA employees or their representatives review materials to determine whether the regulatory requirements have been met, and issue the appropriate certificate approving manufacture and production.  ***Id.***  To achieve type certification of a new aircraft, a manufacturer must first obtain FAA approval for the plane's basic design by obtaining a "type certificate."  The Supreme Court also described how the Federal Aviation Act provides for the FAA to delegate some inspection and certification responsibilities to private persons or corporations to assist in the certification process:

> By regulation, the FAA has made the applicant itself responsible for conducting all inspections and tests necessary to determine that the aircraft comports with FAA airworthiness requirements.  14 CFR §§ 21.33, 21.35 (1983).  The applicant submits to the FAA the designs, drawings, test reports, and computations necessary to show that the aircraft sought to be certificated satisfies FAA regulations.  §§ 21.17(a)(1), 21.21(a)(b).
>
> *  *  *
>
> With fewer than 400 engineers, the FAA obviously cannot complete this elaborate compliance review process alone.  Accordingly, 49 U.S.C. § 1355 authorizes the Secretary to delegate certain inspection and certification responsibilities to properly qualified private persons.  By regulation, the Secretary has provided for the appointment of private individuals to serve

8

> as designated engineering representatives to assist in the FAA certification process. 14 CFR § 183.29 (1984). These representatives are typically employees of aircraft manufacturers who possess detailed knowledge of an aircraft's design based upon their day-to-day involvement in its development. ***See generally*** Improving Aircraft Safety 29-30. The representatives act as surrogates of the FAA in examining, inspecting, and testing aircraft for purposes of certification. 14 CFR § 183.1 (1984). In determining whether an aircraft complies with FAA regulations, they are guided by the same requirements, instructions, and procedures as FAA employees. FAA Order 8110.4, p. 151; CAA Manual of Procedure §.70(b).

***Id.*** at 805, 807.

The federal government has used private persons to examine, test and inspect aircraft to manage aviation safety since at least 1927.[3] The FAA's predecessor agency established programs to appoint designees to perform certain tasks to include airman approvals, airworthiness approvals, and certification approvals beginning in the 1940s.[4] This includes the DER program.[5] The Code of Federal Regulations Final Rule summarized the history of the delegation program:

> In the 1950s, the rapid expansion of the aircraft industry led to the adoption of the Delegation Option Authorization (DOA) program to supplement the agency's limited resources for certification of small airplanes, engines and propellers. As the first program that delegated authority to an organization rather than an individual, DOA was intended to take advantage of the experience and knowledge inherent in a manufacturer's organization. Currently, DOAs are authorized for certification and airworthiness approvals for the products manufactured by the authorization holder.
>
> In the 1970s, the FAA reviewed its delegated organization programs, which then allowed the approval of major alteration data by a delegated organization, but not

---

[3] CFR Final Rule at:
http://rgl.faa.gov/Regulatory_and_Guidance_Library/rgFinalRule.nsf/0/853b21fd0d7b8f7a862570cf0060a9b4!OpenDocument

[4] ***Id.***

[5] ***Id.***

approval of major repair data. This review lead to the adoption of Special Federal Aviation Regulation (SFAR) 36 in 1978 to allow eligible air carriers, commercial operators, and domestic repair stations to develop and use major repair data without FAA approval of the data.

In the 1980s, the FAA established the Designation Airworthiness Representative (DAR) program to expand the airworthiness certification functions that individual designees may perform. At the same time, we allowed for organizations to serve as DARs, in a program known as Organizational Designated Airworthiness Representatives (ODARs).

Since the formation of the first organizational designee programs, organizational designees have gained significant experience in aircraft certification matters, and the FAA has gained significant experience in managing these designee programs. We have found that the quality of the approvals processed by these organizations equals those processed by the FAA. Delegation of tasks to these organizations has allowed the FAA to focus our limited resources on more critical areas.[6]

Currently DOAs are authorized for certification and airworthiness approvals for the products manufactured by the authorization holder.[7]

Cessna is one such DOA delegee, and under the program is entitled to issue aircraft type certificates and police compliance with minimum standards.[8]  **See** Filing No 83, p. 4. A designee is a representative of the FAA Administrator and there are various types of delegations and designation programs.[9]  As one such type of designee, a DER, Cessna can assist the FAA in the certification process.  **_Varig Airlines_**, 467 U.S. at 805-06. However, "[w]hen performing a delegated function, designees are legally distinct from and

---

[6]  *Id.*

[7]  *Id.*

[8]  A Memorandum of Understanding between Cessna and the FAA demonstrates Cessna is an authorized DOA holder.  **See** Filing No. 1 Notice of Removal ¶ 17 and attached Ex. D - Memorandum of Understanding.  The Memorandum provides, "(1) Subject to regulations, supervision, and review the FAA Administrator may prescribe, the Administrator may delegate to a qualified private person, or to an employee under the supervision of that person, a matter related to – (a) the examination, testing, and inspection necessary to the issuance of a certificate under this chapter; and (b) Issuing the certificate.

[9]  **See** http://www.faa.gov/other_visit/aviation_industry/designees_delegations/designee_types/ for list of Designee and Delegation types.

act independent of the organizations that employ them."  Establishment of Organization Designation Authorization Program, 70 Fed. Reg. 59,932 (Oct. 13, 2005).  The Designated Engineering Representative Guidance Handbook states,

> **DER Indemnification Status.**  A DER while acting pursuant to a DER appointment, is a representative of the Administrator for specified functions.  A DER is not an employee of the FAA, nor of the United States of America, and is not federally protected for the work performed or the decisions made as a DER.  As private individuals, DER's are subject to general tort law. . . . The FAA cannot shelter or protect the DER from the consequences of the DER's findings.

FAA Order 8110.37C at 500(c).  The FAA's website further states,

> A Designee is a representative of the FAA Administrator authorized by law to examine, test, and/or make inspections necessary to issue airman or aircraft certificates.  However, a designee is not considered an employee of the U.S. Government, and is not federally protected for the work performed or the decisions made as designee.[10]

The DOA Procedures Manual, FAA Order 8100.9A, provides that organizations authorized to act as representatives of the Administrator under the DOA program "are guided by the same regulations, directives, policies, guidance and procedures applicable to FAA personnel performing similar functions."  FAA Order 8100.9A § 5-3.  Under the DER program, the FAA sanctioned Cessna's representatives to preform the following functions (in relevant part):

- Make application for new type certificate, amendment to existing type certificates, or type design changes
- Issue Findings of Compliance with Airworthiness Regulations
- Approve certification data and compliance reports
- Issue Type Inspection Authorizations
- Complete FAA Conformity Inspection Records
- Make recommendations for changes to Type Certificate Data Sheet and Aircraft Specification
- Issue Statement of Compliance for new or amended type certificates and type design changes

---

[10] http://www.faa.gov/other_visit/aviation_industry/designees_delegations/designee_types/ (Updated: 4:56 pm ET July 18, 2007)

**See** Filing Nos. 22-9, 82-7 - Delegation Option Authorization, Memorandum of Understanding.[11]

### ii.      _Federal Officer Removal Statute_

The plaintiffs argue Cessna is not a federal officer and has misapplied the Federal Officer Removal Statute under 28 U.S.C. § 1442.  **See** Filing No. 83, p. 7.  The plaintiffs rely on **_Charlima, Inc. v. United States_** in which a plaintiff sued the United States under the Federal Tort Claims Act for the actions of a privately employed individual who held FAA DAR status.  **See** _id_. (**citing _Charlima, Inc. v. United States_**, 873 F.2d 1078 (8th Cir. 1989)).  In **_Charlima_**, the plaintiff claimed the named DAR individual failed to discover a defect in the aircraft when he issued an airworthiness certificate.  _Charlima_, 873 F.2d at 1079.  The DAR status allows a privately employed individual to act in the capacity of an FAA employee in performing examination, inspection, and testing as was necessary to the issuance of certificates in the areas of maintenance, manufacturing, and engineering.  _Id._ The Eighth Circuit granted the government's motion for summary judgment after holding the designated representative was an independent contractor, not an employee of the FAA.  _Id._ at 1080.  The **_Charlima_** court concluded,

> [T]he FAA does not control the day-to-day operations of designated airworthiness representatives. . . . Thus, while the FAA acts generally as an overseer, it does not manage the details of a designated representative's work or supervise him in his daily investigative duties.
>
> \* \* \*
>
> [T]he FAA has no customary contractual relationship with designated representatives, nor are they on the FAA payroll or otherwise compensated by the FAA.  Instead, a designated representative is paid by the certificate applicant. . . .  The FAA provided for the delegation of these inspection duties not only to reduce governmental costs, but also to ease "the burden of regulation on the aviation community by expediting the \* \* \* issuance of requested certifications."

_Id._ at 1081.

---

[11] **_See_** Memorandum for complete list of functions.

In **Watson v. Philip Morris Companies, Inc.**, the Supreme Court considered the question of "whether the fact that a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail brings that company within the scope of the italicized language ('*acting under*' an '*officer*' of the United States) and thereby permits removal" and held it does not. 551 U.S. 142 (2007). In **Watson**, the petitioners filed a state court suit alleging Philip Morris violated a state law prohibiting unfair business practice by advertising certain cigarette brands as "light" when, in fact, Philip Morris had manipulated the design and testing of its cigarettes to register lower tar levels than would actually be delivered to consumers. **Id.** at 146. Philip Morris removed the case to federal district court which held the complaint attacked Philip Morris' use of the Government's method of testing cigarettes and therefore qualified as acts taken "under" the Federal Trade Commission (FTC), a federal agency, staffed by federal "officers." **Id.** The Eighth Circuit affirmed. **Id.** at 147. The Supreme Court granted certiorari to consider the question and reversed the Eighth Circuit's holding. **Id.**

The **Watson** court undertook a thorough review of the history of the Federal Officer Removal Statute which was originally enacted near the end of the War of 1812. **Id.** at 147-49. The original statute was "an attempt to protect federal officers from interference by hostile state courts." **Id.** at 148 (**citing Willingham**, 395 U.S. at 406-07). The statute was revised again after the Civil War, and in 1948. **Id.** The court found earlier cases illustrated the basic purpose of the removal statute was to protect the federal government from bias resulting from local prejudice in state court proceedings. **Id.** at 150. The court then went on to consider the relationship between a private person "acting under" a federal "officer" or "agency" as required by 28 U.S.C. § 1442(a)(1). **Id.** at 151. The court stated precedent and statutory purpose make clear that "the private person's 'acting under' must involve an effort to *assist* or to help *carry out*, the duties or tasks of the federal superior." **Id.** at 152 (emphasis in original). Further,

> In our view, the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law. We recognize that sometimes an English speaker might say that one who complies with the law 'helps' or 'assists' governmental law enforcement. Taxpayers

13

who fill out complex federal tax forms, airline passengers who obey federal regulations prohibiting smoking, for that matter well-behaved federal prisoners, all 'help' or 'assist' federal law enforcement authorities in some sense of those words.  But that is not the sense of 'help' or 'assist' that can bring a private action within the scope of this statute.  That is in part a matter of language.  One would usually describe the behavior of the taxpayers, airline passengers, and prisoners we have described as *compliance* with the law (or acquiescence to an order), not as 'acting under' a federal official who is giving an order or enforcing the law.

Finally, it is a matter of statutory purpose.  When a company subject to a regulatory order (even a highly complex order) complies with the order, it does not ordinarily create a significant risk of state-court 'prejudice.'  *Maryland v. Soper*, 270 U.S. 9, 32 (1926); *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981).  Nor is a state-court lawsuit brought against such a company likely to disable federal officials from taking necessary action designed to enforce federal law.  **Cf**.  *Tennessee v. Davis*, 100 U.S. [257], at 262-263 [1879].  Nor is such a lawsuit likely to deny a federal forum to an individual entitled to assert a federal claim of immunity.  **See,** ***e.g.,*** *Willingham,* 395 U.S., at 407, 89 S.Ct. 1813.

The upshot is that a highly regulated firm cannot find a statutory basis for removal in the face of federal regulation alone.  A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'  And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.  A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.  Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion.

*Id.* at 152-53 (emphasis in original).

Philip Morris argued that its activities at issue did not consist merely of compliance with regulatory laws and orders.  *Id.* at 154.  Rather, it contended the FTC delegated authority for the task of testing the cigarettes and Philip Morris was acting pursuant to that delegation.  *Id.*  Therefore, Philip Morris argued it was "acting under" officers of the FTC

14

when it conducted cigarette testing.  *Id.*  The court rejected this argument noting it found no evidence of any delegation of legal authority from the FTC for the industry association to undertake testing on the government agency's behalf.  "Nor is there evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement."  *Id.* at 156.   Therefore, the court was "left with the FTC's detailed rules about advertising, specifications for testing, requirements about reporting results, and the like.  This sounds to us like regulation, not delegation," the court said.  *Id.* at 157.  Based on the foregoing, the court concluded Philip Morris was not brought within the terms of the Federal Officer Removal Statute.  *Id.*

Other cases in different industries have reached a similar result.  In *Jamison v. Purdue Pharma Co.*, the Southern District of Mississippi denied remand to the manufacturer of OxyContin on state claims of failure to warn.  251 F. Supp. 2d 1315 (S.D. Miss. 2003).  The manufacturer argued federal officer removal was proper based on the fact that the Food and Drug Administration (FDA) regulates the approval, labeling and marketing of prescription drugs.  *Id.* at 1325.  The court explained the defendants were "not government contractors, delivering either a product or service to the United States, or to beneficiaries designated by the government."  *Id.* at 1326.  Further, the court noted the FDA did not explicitly direct the defendant to avoid a clearer warning to consumers, but only found the warnings sufficient for purposes of federal law.   Acknowledging the defendant was highly regulated by the FDA, the court found that mere regulation was not sufficient to support federal officer removal.  *Id.* at 1326.

In *In Re Wireless Telephone Radio Frequency Emissions Products Liability Litigation*, wireless telephone manufacturers argued they deserved federal officer removal because the Federal Communications Commission (FCC) directed the defendants to manufacture, test, and sell phones emitting only approved radio frequency radiation.  216 F. Supp. 2d  474, 499-500 (D. Md. 2002).  The plaintiffs had alleged in state court that the radio frequencies of cellular telephones increased the chance of contracting brain cancer.  *Id.* at 479.  A Maryland district court found the FCC did not specifically instruct the defendants to add safety devices to their phones or to avoid warning consumers.  *Id.* at 500.  Rather, the defendants were simply regulated by the FCC, and, in that sense, were

not "acting under" the FCC when they allegedly violated the plaintiff's state law rights. *Id.* However, had the FCC directed the defendants to take the specific actions complained of, then removal under 28 U.S.C. §1442(a)(1) might have been available. *Id.*

Similarly, in *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, the Second Circuit reversed a district court's decision to allow 28 U.S.C. § 1442(a)(1) removal based on the Environmental Protection Agency's (EPA) approval of MTBE as a gasoline additive. 488 F.3d 112, 136 (2d Cir. 2007). Plaintiffs sued gasoline refiners, distributors, and retailers, claiming the MTBE leaked from storage tanks and contaminated their groundwater supplies. *Id.* at 114. The defendants removed on the basis that Congress' enactment of the Clean Air Act authorized the EPA to approve various additives to gasoline. *Id.* at 126. The Second Circuit found there was no evidence that any government agency directed the defendants to use MTBE. *Id.* at 126-27. The Second Circuit feared an alternative decision would federalize many state tort claims, and therefore found the cases were improperly removed to federal court. *Id.* at 132.

The plaintiffs also rely on other federal district court opinions rejecting aviation manufacturers' arguments that status as a DOA holder justified federal jurisdiction under the Federal Officer Removal Statute. **See** Filing No. 83, p. 10; *Swanstrom v. Teledyne Continental Motors, Inc.*, 531 F. Supp. 2d 1325 (S.D. Ala. 2008); *Britton v. Rolls Royce Engine Serv.*, 2005 WL 1562855 (N.D. Cal. 2005). In *Swanstrom*, the plaintiffs sued Teledyne Continental Motors, Inc. along with other defendants, for injuries arising from an airplane crash alleging negligence, breach of warranty, and product liability. 531 F. Supp. 2d at 1328. The defendant attempted to remove to federal court based on federal officer status. The *Swanstrom* court found the claims alleging negligent design, manufacture and testing of an aircraft were based on the defendant's status as a manufacturer and concluded removal was not appropriate. *Id.* at 1332-33. "[R]emoval is appropriate only where the FAA representative has been specifically named and the allegations relate to conduct of the FAA representative while acting in the capacity of an FAA representative." *Id.* at 1333.

In *Britton*, a defendant in a products liability case sought removal based on the Federal Officer Removal Statute claiming the FAA had designated private individuals,

including their employees, to serve as representatives of the FAA in certifying aircraft and engine maintenance according to FAA standards. *Britton*, 2005 WL 1562855 at *3-4. The case was remanded, in part, because the plaintiffs' complaint in *Britton* did not name any individual defendants under the statute. *Id.* The *Britton* court distinguished the case of *Magnin v. Teledyne Cont'l Motors* where the court did allow federal officer removal based on FAA delegated authority; however, in *Magnin*, individual delegees were sued and identified in the complaint. **See** *Magnin v. Teledyn Cont'l Motors*, 91 F.3d 1424 (11th Cir. 1996); Filing No. 83, p. 11. Further, the *Britton* court stated,

> The court declines to read *Magnin* so broadly as to consider all underlying conduct involved in airplane engine repair and maintenance in determining whether a defendant may raise a colorable federal officer defense. Assuming that every repair or maintenance inspection on an airplane engine is eventually followed by issuance of a certificate of airworthiness, then every airplane engine repair and maintenance mechanic could remove to federal court even the simplest of negligence claims. Such a result seems questionable and the court does not reach it.

*Britton*, 2005 WL 1562855 at *4, n3. In contrast to *Mangin*, the plaintiffs in the instant case argue since they did not sue individual DOA representatives for their conduct, federal officer removal is not appropriate and, if granted, would result in anointing the Cessna corporation, in its entirety, federal officer status giving them open access to federal courts based merely on administrative DOA delegation. **See** Filing No. 83, p. 12.

In contrast, two courts found removal proper under 28 U.S.C. § 1442(a)(1) when the degree of supervision and control was sufficient to find the defendant was "acting under" a federal officer. In *Winters v. Diamond Shamrock Chemical Co.*, the Fifth Circuit allowed removal of a state claim where a defendant manufactured Agent Orange under the direction of the United States military. 149 F.3d 387 (5th Cir. 1998). The government had specified the precise formula, as well as the packaging, labeling and shipping requirements. *Winters*, 149 F.3d at 399. Additionally, the government compelled the defendant to deliver Agent Orange under threat of criminal sanction. *Id.* at 398. The court found that such detailed supervision, specification, and control was sufficient to find the

17

defendant was "acting under" a federal officer when it manufactured the product. *Id.* at 399-400.

In *Fung v. Abex Corp.*, a California court similarly found the level of direction and control sufficient to satisfy the "acting under" requirement of 28 U.S.C. § 1442(a)(1) and allowed removal to federal court. 816 F. Supp. 569, 573 (N.D. Cal. 1992). In *Fung*, workers exposed to asbestos during construction of submarines sued the manufacturer. *Id.* at 570-71. The submarines were built pursuant to a federal contract where the government not only required the manufacturer to meet strict contract specifications but also had a contractual right to inspect and approve all supplies to ensure compliance with the contract. *Id.* at 573. The court concluded, "Given the fact that defendant has established that the government, under the direction of the Secretary of Navy, exercised 'direct and detailed' control over the construction of the vessels, the 'acting under' requirement of § 1442(a)(1) has been satisfied." *Id.*

Having reviewed the history of the FAA's delegation program and relevant court decisions, the court will now consider whether the second requirement of the federal officer removal test is met.

### iii.   *Causal Nexus and Acting Under*

To establish the causal nexus the defendant must show the action "has arisen out of the acts done by [the defendant] under color of federal authority and in enforcement of federal law." *Mesa*, 489 U.S. at 131-32 (**quoting** *Soper (No. 1)*, 270 U.S. at 33. "Critical under the statute is 'to what extent defendants acted under federal direction' at the time they were engaged in the conduct now being sued upon." *Ryan*, 781 F. Supp. at 946 (**quoting** *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F. Supp. 841, 844 (S.D.N.Y.1973)). To sustain this burden, the defendant must "by direct averment exclude the possibility that [the action] was based on acts or conduct of his not justified by his federal duty." *Mesa*, 489 U.S. at 132. In determining if a person "acted under" federal officer discretion, it "depends on the detail and specificity of the federal direction of the defendant's activities and whether the government exercises control over the defendant." *Watson*, 420 F.3d at 856-57. "Demanding an airtight case on the merits in order to show

18

the required causal connection" would "defeat the purpose of the removal statute." *Jefferson County, Ala., v. Acker*, 527 U.S. 423, 432 (1999).

The plaintiffs provide support for remand in the form of a recent decision from the District Court for the Eastern District of Pennsylvania, *Carey v. Dylan Aviation, L.LC*. **See** Filing No. 116-2 (case dated March 24, 2010). The *Carey* court granted the plaintiff's motion to remand. *Id*. at p. 2. The plaintiff in *Carey* was a passenger in a helicopter which crashed, and asserted causes of action for negligence, breach of warranty, and strict liability. *Id*. The defendants were the owner, lessor, and manufacturers of the helicopter and its parts. *Id*. The defendants invoked federal question jurisdiction (28 U.S.C. § 1331) arguing the plaintiff claimed the defendants failed to comply with FAA regulations and therefore the underlying action "arises under" federal law, and the plaintiff's state law claims turn on "substantial" questions of federal law and therefore the case was removable pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering and Manufacturing*, 545 U.S. 308, 314 (2005) (stating, "[T]he question is whether the state-law claim necessarily stated a federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."). In *Carey*, the court noted the "validity of the federal regulations has not been challenged; the parties simply dispute whether the defendants' conduct met the standard of care." **See** Filing No. 116-2 at 3. The *Carey* court stated the exercise of federal jurisdiction would not comport with the division of labor between the state and federal courts. With little explanation, the court then considered the defendants' argument that removal was proper under 28 U.S.C. § 1442(a)(1). *Id.* at 5. The defendants alleged that the manufacturers employed "DERs" and "Designated Manufacturing Inspection Representatives" who acted under the supervision of the FAA and certified the helicopter as airworthy. *Id*. Succinctly, the court stated, "However, neither of these individuals has been named as a defendant, and the statute does not provide a basis for removal." *Id*.

Because the plaintiffs have not sued a DOA designee, the court finds Cessna's argument unpersuasive it was "acting under" the direction of a federal officer by issuing an airworthiness certificate for the Cessna 208B. By regulation, the FAA has delegated

19

certain inspections and tests to aviation manufacturers, including Cessna.  The FAA provided for the delegation of inspection duties simply to ease the burden of regulation on the aviation community.  *Charlima*, 873 F.2d at 1081.  However, Cessna cannot claim removal is appropriate under 28 U.S.C. § 1442(a)(1) simply because Cessna is a DOA holder as designated by the FAA.  "Rather, removal is appropriate only where the FAA representative has been specifically named and the allegations relate to conduct of the FAA representative while acting in the capacity of an FAA representative."  ***Swanstrom***, 531 F. Supp. 2d at 1333.  The DER Guidebook supports this result stating, "A DER is not an employee of the FAA, nor of the United States of America, and is not federally protected for the work performed or the decisions made as a DER."  FAA Order 8110.37C at 500(c). Further, in *Watson*, the Supreme Court held that merely because a federal regulatory agency "directs, supervises, and monitors a company's activities in considerable detail" such actions do not bring that company squarely within the "acting under" an "officer" provision of the Federal Officer Removal Statute.  551 U.S. at 145.  As set forth above, *Jamison*, *In Re Wireless*, *MTBE*, *Swanstrom*, and *Britton* all reached a similar result. The level of supervision here does not rise to that of *Winters* or *Fung*, and therefore the court finds Cessna did not meet its burden of showing it "acted under" the direction of a federal officer as required by 28 U.S.C § 1442(a)(1).  "Assuming that every repair or maintenance inspection on an airplane engine is eventually followed by issuance of a certificate of airworthiness, then every airplane engine. . . mechanic could remove to federal court even the simplest of negligence claims."  ***Britton***, 2005 WL 1562855 at *4, n3.  The court declines to reach such a result and finds the Federal Officer Removal Statute does not provide Cessna a basis for removal.

### C.    Colorable Federal Defense

Finally, the third and final factor necessary for removal pursuant to § 1442 is the assertion of a "colorable federal defense."  ***Manypenny***, 451 U.S. at 241; ***Willingham***, 395 U.S. at 406-07; ***Winters***, 149 F.3d at 400.  The plaintiffs argue Cessna's Federal Officer Removal also fails because it does not have a colorable federal defense.  **See** Filing No. 83, p. 15 (**citing** *Mesa*, 489 U.S. at 139, "Federal officer removal under 28 U.S.C. §

1442(a) must be predicated upon averment of a federal defense."). "There must be a bona fide federal defense to the claim based on state law." *Venezia v. Robinson*, 16 F.3d 209, 211 (7th Cir. 1994) **citing *Mesa,*** 489 U.S. 121. The plaintiffs assert that tort liability in aviation cases has traditionally been guided by state law. **See** Filing No. 83, p. 17. Further, the plaintiffs point to a series of cases in which the Supreme Court rejected the idea that the entire field of aviation law preempts state law. **See *Miree v. DeKalb County, Ga.*, 433 U.S. 25 (1977)** (holding third party beneficiary's lawsuit against a party to a contract with the FAA would "unquestionably be governed by Georgia law"); and *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) (Airline Deregulation Act did not preempt state law breach of contract action). In *Abdullah v. American Airlines*, the court noted that although the United States has a substantial interest in aviation safety, state tort remedies are not preempted in the field of aviation as Congress did not intend to do so. *Abdullah*, 969 F. Supp. 337, 353-54 (D. V.I. 1997) (**citing *Rombom v. United Air Lines, Inc.*, 867 F.Supp. 214, 218 (S.D.N.Y. 1994)**); *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990).

"In construing the colorable federal defense requirement, we have rejected a 'narrow, grudging interpretation' of the statute, recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'" *Jefferson County*, 527 U.S. at 431 (citation omitted); **see *Magnin*, 91 F.3d at 1427** (noting "defense need only be plausible; its ultimate validity is not to be determined at the time of removal"). Additionally, the court must credit the removing party's theory of the case for purposes of the elements of the jurisdictional inquiry. *Jefferson County*, 527 U.S. at 431. Otherwise, the court may decide the merits of the case by requiring a "clearly sustainable defense," which is not the standard for removal. *Id.*

In *Miree*, the Supreme Court considered whether federal or state law should be applied to petitioner's breach of contract claim against the county. *Miree*, 433 U.S. at 26. Petitioners sought to impose liability on respondent as a third-party beneficiary of contracts between it and the FAA. *Id.* The court concluded, "[A]ny federal interest in the outcome of the question before us "is far too speculative, far too remote a possibility to justify the application of federal law to transactions essentially of local concern." *Id.* at 32-33

21

(quoting *Bank of America Nat. Trust & Sav. Ass'n v. Parnell*, 352 U.S. 29, 33-34 (1956)).  Here, the court agrees.

The court also finds persuasive *Bennett v. Southwest Airlines Co.* in which the United States Court of Appeals for the Seventh Circuit considered whether federal aviation law should preempt Illinois state tort law.  484 F.3d 907 (7th Cir. 2007).  In *Bennett*, the defendant airlines and the City of Chicago (as airport operator) argued federal court was the proper forum because of the dominant role federal law plays in aviation and air transport.  *Id.* at 908.  However, the defendants failed to identify any particular federal law that would apply to the resolution of the suit.  *Id.* at 909.  Rather, the defendants argued, "*[A]ll* suits about commercial air travel belong in federal court because the national government is the principal source of rules about safe air transportation, and uniform application of these norms is desirable." *Id.* (emphasis in original).

The *Bennett* court considered *Grable*, 545 U.S. at 314, in which the Supreme Court held that a claim nominally resting on state law may "arise under" federal law, permitting removal under § 1441(a).  *Bennett*, 484 F.3d at 909.  However, the *Bennett* court distinguished *Grable*, noting, "there was *nothing* in it but federal law, with the potential to affect the national government's revenues." *Id.* at 910 (federal tax law issue in *Grable;* emphasis in original).  The court noted it has held many times that claims related to air transport may be litigated in state court.  *Id.* at 912 (citations omitted).  Further, "No court of appeals has held either before or after *Grable* that the national regulation of many aspects of air travel means that a tort claim in the wake of a crash 'arises under' federal law." *Id.*

In light of the case law supporting the litigation of aviation claims in state court when federal law is only tangentially implicated, and the absence of any congressional intent or expressed language to preempt the state standard of care, this court finds the Federal Aviation Act does not preempt the state standard of care.  Because the Federal Aviation Act does not preempt the state standard of care, Cessna has failed to establish a colorable federal defense.

## II.    Diversity Jurisdiction

Cessna also argues removal is proper under 28 U.S.C. § 1441(b)'s so-called forum defendant rule.  The rule states:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties.  Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Cessna argues that because no other defendant had been served when Cessna removed this action, removal was proper pursuant to 28 U.S.C. § 1441(b).  **See** Filing No. 21 p. 30. Cessna argues that because the forum defendant, Suburban Air, a Nebraska corporation, had not yet been served when the Cessna removed the action, removal was proper even though Cessna removed the action based on federal question rather than diversity jurisdiction.   The plaintiffs and Suburban Air are both Nebraska residents, therefore diversity jurisdiction is defeated.  Diversity of citizenship among the parties is determined from the face of the complaint, regardless of whether each party has been served at the time of removal.  *Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38 (1939); *Pecherski v. General Motors Corp.*, 636 F.2d 1156, 1160-61 (8th Cir. 1981); *Crosby v. Paul Hardeman, Inc.*, 414 F.2d 1, 3 (8th Cir. 1969).  One of the defendants, Suburban Air, is a citizen of the State in which the action was brought, therefore the case is not removable on the basis of diversity jurisdiction.  **See** § 1441(b); *Horton v. Conklin*, 431 F.3d 602, 605 (8th Cir. 2005); *Pecherski*, 636 F.2d at 1160.

## III.    Fees and Costs

The plaintiffs seek an award of attorney's fees and expenses pursuant to 28 U.S.C. §1447(c),which provides that an order of remand may require payment of "just costs and actual expenses" incurred as a result of removal.  However, "[a]ttorney's fees, costs and expenses may be awarded on a motion to remand 'only where the removing party lacked an objectively reasonable basis for seeking removal.'"   *Swanstrom*, 531 F. Supp. 2d at

1333 (**citing** *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005)).  The *Martin* court stated,

> [T]he standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied. *See*, *e.g.*, *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004); *Valdes v. Wal-Mart Stores, Inc*., 199 F.3d 290, 293 (5th Cir. 2000). In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

*Martin*, 546 U.S. at 141.

Under the application of the standards set forth in *Martin*, the court finds this is not a case where Cessna's basis for removal was objectively unreasonable.  The basis is unsuccessful, but not unreasonable.  Therefore, the undersigned magistrate judge recommends no attorney's fees be assessed or awarded against the removing defendant under 28 U.S.C. § 1447(c).

It appears based on the facts of this case and the attending case law, jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. § 1442 would not be proper in the United States District Court.  Therefore, the undersigned magistrate judge recommends the plaintiffs' motion to remand be granted.  Further, the undersigned magistrate judge recommends that no attorney's fees be assessed against Cessna under 28 U.S.C. § 1447(c).  Upon consideration,

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

1.     The plaintiffs' Reinstated Motion to Remand for Lack of Jurisdiction (Filing No. 81) be granted.

2.     The portion of the motion seeking attorney's fees, costs and expenses be denied.

24

**ADMONITION**

Pursuant to NECivR 72.2 any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) calendar days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 21st day of July, 2010.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

25